# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

---

Case No. CV 14-1681-DOC
C.D. Cal. Bankr. Case No. 9:13-bk-10313-PC

---

IN RE: LOREN MILLER AND SARAH MILLER

Debtors.

---

LOREN MILLER,

Appellant,

*-against-*

JEREMY W. FAITH, CHAPTER 7 TRUSTEE,

Appellees.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

---

## APPENDIX (EXCERPTS OF THE RECORD) SUBMITTED BY APPELLEE JEREMY W. FAITH, CHAPTER 7 TRUSTEE

---

MARGULIES FAITH, LLP
Meghann Triplett, SBN 268005
16030 Ventura Blvd, Suite 470
Encino, California 91436
Telephone: (818) 705-2777
Facsimile: (818) 705-3777

Attorneys for Appellee Jeremy W. Faith, Chapter 7 Trustee

---

## <u>APPENDIX (EXCERPTS OF THE RECORD)</u>

Attached hereto are the excerpts of the record identified by Appellee Jeremy

W. Faith, pursuant to F. R. Bankr. P. 8009 and F. R. Appellate P. 30.

| TAB | DATE | DOCUMENT | Page |
|---|---|---|---|
| 1 | 11/26/2013 | Debtors' Motion to Transfer Venue – Rule 1014; 28 U.S.C. § 1412 [Bankruptcy Case No. 9:13-bk-10313, Docket No. 78] | 1-4 |
| 2 | 11/26/2013 | Debtors' Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a) [Bankruptcy Case No. 9:13-bk-10313, Docket No. 79] | 5-8 |
| 3 | 12/10/2013 | Opposition of Jeremy W. Faith, Chapter 7 Trustee, to Debtor Loren Miller's Motions to Transfer Venue to Southern District of Texas; Request for Hearing; and Declarations in Support Thereof [Bankruptcy Case No. 9:13-bk-10313, Docket No. 85] | 9-72 |
| 4 | 12/10/2013 | Opposition of Jeremy W. Faith, Chapter 7 Trustee, to Debtor Loren Miller's Motion to Convert Case to Chapter 11; Request for Hearing; and Declarations in Support Thereof [Bankruptcy Case No. 9:13-bk-10313, Docket No. 86] | 73-133 |
| 5 | 12/9/2013 | Preliminary Opposition to Debtor's Motion to Convert Case; Hearing Requested Pursuant to Local Bankruptcy Rule 9013-1(o) [Bankruptcy Case No. 9:13-bk-10313, Docket No. 82] | 134-138 |
| 6 | 12/9/2013 | Preliminary Opposition to Debtor's Motion to Transfer Venue; Hearing Requested Pursuant to Local Bankruptcy Rule 9013-1(o) [Bankruptcy Case No. 9:13-bk-10313, Docket No. 81] | 139-146 |
| 7 | | Relevant Portion of California Central District Local Bankruptcy Rule 9013-1(o) | 147-148 |
| 8 | 12/12/2013 | Order Denying Motion to Transfer Venue [Bankruptcy Case No. 9:13-bk-10313, Docket No. 88] | 149-152 |
| 9 | 12/12/2013 | Order Denying Motion to Convert Case to Chapter 11 [Bankruptcy Case No. 9:13-bk-10313, Docket No. 87] | 153-155 |

| TAB | DATE | DOCUMENT | Page |
|---|---|---|---|
| 10 | 1/14/2014 | Debtor's Motion and Declaration for Extension of Time to File Appeal – Rule 8002(c) [Bankruptcy Case No. 9:13-bk-10313, Docket No. 99] | 156-167 |
| 11 | 1/28/2014 | Opposition of Jeremy W. Faith, Chapter 7 Trustee, to Debtor Loren Miller's Motion to Extend Time to File a Notice of Appeal Pursuant to Fed. R. Bank. P. 8002(c); Declaration in Support [Bankruptcy Case No. 9:13-bk-10313, Docket No. 105] | 168-175 |
| 12 | 1/15/2014 | Amended Debtor's Motion to Convert Case Under 11 U.S.C. §§ 706(a) or 1112(a) [Bankruptcy Case No. 9:13-bk-10313, Docket No. 102] | 176-180 |
| 13 | 1/29/2014 | Opposition of Jeremy W. Faith, Chapter 7 Trustee, to Debtor Loren Miller's Amended Motion to Convert Case to Chapter 11; Request for Hearing; and Declarations in Support Thereof [Bankruptcy Case No. 9:13-bk-10313, Docket No. 106] | 181-257 |
| 14 | 1/14/2014 | Preliminary Opposition to Debtor's Amended Motion to Convert Case; Hearing Requested Pursuant to Local Bankruptcy Rule 9013-1(o) [Bankruptcy Case No. 9:13-bk-10313, Docket No. 98] | 258-263 |
| 15 | 3/5/2014 | Debtor's Notice of Appeal – 28 U.S.C. § 158; FRBP 8001 [Bankruptcy Case No. 9:13-bk-10313, Docket No. 116] | 264 |
| 16 | 2/18/2014 | Notice of Lodgment of Order Denying Debtor Loren Miller's Amended Motion to Convert Case Under 11 U.S.C. §706(a) [Bankruptcy Case No. 9:13-bk-10313, Docket No. 110] | 265-269 |
| 17 | 2/18/2014 | Notice of Lodgment of Order Denying Debtor Loren Miller's Motion to Extend Time to File a Notice of Appeal Pursuant to Fed. R. Bank. P. 8002(c) [Bankruptcy Case No. 9:13-bk-10313, Docket No. 111] | 270-273 |
| 18 | 3/7/2014 | Appeal Deficiency Notice [Bankruptcy Case No. 9:13-bk-10313, Docket No. 121] | 274 |
| 19 | 3/21/2014 | Debtor's Amended Notice of Appeal [Bankruptcy Case No. 9:13-bk-10313, Docket No. 129] | 275-281 |

| TAB | DATE | DOCUMENT | Page |
|-----|------|----------|------|
| 20 | 3/26/2014 | Order Denying Amended Motion to Convert Case to Chapter 11 [Bankruptcy Case No. 9:13-bk-10313, Docket No. 131] | 282-287 |
| 21 | 3/26/2014 | Order Granting Motion for Extension of Time to File Appeal [Bankruptcy Case No. 9:13-bk-10313, Docket No. 132] | 288-296 |
| 22 | 4/10/2014 | Debtor-Appellant's Second Amended Notice of Appeal [Bankruptcy Case No. 9:13-bk-10313, Docket No 138] | 297-318 |
| 23 | 1/22/2015 | Debtor-Appellant's Motion to Transfer Venue – Rule 1014; 28 U.S.C. § 1412 [District Case No. 2:14-cv-01681-DOC, Docket No. 10] | 319-324 |
| 24 | 1/28/2015 | Order to Show Cause Why Case Should Not Be Dismissed for Lack of Prosecution [District Case No. 2:14-cv-01681-DOC, Docket No. 11] | 325-326 |
| 25 | 2/10/2015 | Debtor-Appellant's Cause Shown [District Case No. 2:14-cv-01681-DOC, Docket No. 12] | 327-331 |
| 26 | 4/9/2015 | Order Re: Dismissal for Failure to Prosecute [District Case No. 2:14-cv-01681-DOC, Docket No. 16] | 332-333 |
| 27 | 4/24/2015 | Debtor-Appellant's Motion to Extend Times to File Brief – FRBP 8011(a) [District Case No. 2:14-cv-01681-DOC, Docket No. 17] | 334-346 |
| 28 | 5/13/2015 | Debtor-Appellant's Motion for Relief from Order – FRCP 60 [District Case No. 2:14-cv-01681-DOC, Docket No. 19] | 347-351 |
| 29 | 6/18/2013 | Order Granting Chapter 7 Trustee's Motion for Turnover of Property of the Estate and Order Directing Debtors to Appear at Continued 11 U.S.C. § 341(a) Meetings of Creditors [Bankruptcy Case No. 9:13-bk-10313, Docket No. 54] | 352-355 |
| 30 | 3/19/2014 | Order Granting Chapter 7 Trustee's Motion for Turnover of Property of the Estate [Bankruptcy Case No. 9:13-bk-10313, Docket No. 124] | 356-357 |

| TAB | DATE | DOCUMENT | Page |
|-----|------|----------|------|
| 31 | 6/12/2015 | Order Granting Plaintiff's Motion for Summary Judgment Against Defendant Loren Miller Under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(4)(A), and (a)(6)(A) [Adversary Case No. 9:13-ap-01133, Docket No 71] | 358 |

DATED:  June 29, 2015                    MARGULIES FAITH, LLP


_____/s/ Meghann Triplett_____
Meghann Triplett, Esq.
Attorneys for Jeremy W. Faith,
Chapter 7 Trustee

4

# TAB 1

Loren Miller, Debtor *pro se*[1]
600 E. Medical Center Blvd. #1509
Webster, TX 77598
281-467-8226
Sarah Miller, Debtor *pro se*
702 Whitecap Drive
Seabrook, TX 77586
281-339-7244



FILED

NOV 26 2013

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No.: 9:13-bk-10313-RR |
| LOREN MILLER, | Chapter 7 |
|                 Debtor. | *Conversion to Chapter 11 pending* |
| SARAH MILLER, | DEBTORS' MOTION TO TRANSFER |
|                 Debtor. | VENUE - RULE 1014; 28 U.S.C.A. § 1412 |
| | *No Oral Argument Requested* |

We move this court to transfer venue from this court to the United States

Bankruptcy Court for the Southern District of Texas, Houston Division.  This motion is

based on the case record and:

    1.  Rule 1014(a) gives this court authority to "transfer the case to any other district

**if the court determines that the transfer is in the interest of justice or for the**

**convenience of the parties."**[2]

---

1  Mr. Taus has been terminated as our attorney as of Friday, November 22; *see also* 28
   U.S.C.A. § 1654.  Also please note our updated contact information

2  The bankruptcy court "in the interests of justice" may even *sua sponte* transfer an
   action related to a bankruptcy proceeding. *See In re Donald*, 328 B.R. 192, 198 (B.A.P.
   9th Cir. 2005); please note our added emphasis in all quoted text is in boldface unless
   we state otherwise

Page 1 of 4 - MOTION TO TRANSFER VENUE

TAB 1                                    Page 1

**2.** 28 U.S.C.A. § 1412 provides "A district court may transfer a case or proceeding under title 11 to a district court for another district, **in the interest of justice or for the convenience of the parties.**" The Ninth Circuit has said:

> "**the ultimate § 1412 analysis, which entails a balancing of due process concerns** of assuring appropriate access to the court for all parties in interest against the economic and efficient administration of the case. While it may be economically efficient for those in control of a bankruptcy case to administer it in a location that handicaps parties in interest, **the integrity of the bankruptcy process requires that the natural enemies have reasonable access to the court.**"[3]

**3.** We have previously informed this court and the other parties we have been forced by necessity to move to Seabrook, Texas, a distance of nearly 1,600 miles from this court, and that it is a substantial hardship on us every time we are required to personally attend any proceeding, including the creditors' meetings and hearings, in Los Angeles.[4]

**4.** The only qualification for the transfer is this court's determination according to Rule 1014, or the district court's ruling this transfer is justified "in the interest of justice **or** for the convenience of the parties." We are not aware of any other party in interest with either domicile or principal place of business within this court's district. There is sure to be a U.S. Trustee in the United States Bankruptcy Court for the Southern District of Texas. All other parties are participating by attorney, not in person. We are certain the Houston area attorneys are as eager for their business as Los Angeles area

---

3  *See In re Donald*, 328 B.R. 192, 204 (B.A.P. 9th Cir. 2005)

4  *See* docket #41, our notice we have changed our domicile; *see also* PACER, beginning @ *Case 9:13-bk-10313-RR Doc 65 Filed 08/15/13 Entered 08/15/13 13:17:52 Desc Main Document Page 25 of 65* through *Page 60 of 65*

Page 2 of 4 - MOTION TO TRANSFER VENUE

TAB 1                                                        Page 2

attorneys.

5. Because we seek transfer only to another bankruptcy court there could not be any law favoring any party over any other in the Texas court.[5]

6. Another consideration for transferring venue "for the convenience of the parties" is the common-law doctrine of *forum non conveniens*.[6] The Ninth Circuit has said in considering a motion to transfer for *forum non conveniens*, courts have broad discretion to adjudicate "according to an individualized, **case-by-case consideration of convenience and fairness**."[7] The U.S. Supreme Court described "the interests which bear on *forum non conveniens* decision" as "**most notably the convenience to the parties** and the practical difficulties that can attend the adjudication of a dispute in a certain locality."[8]

*IN CONCLUSION*, we submit this court should transfer venue first "for the convenience of the parties," with "in the interest of justice" as the alternative basis for ordering this transfer.[9]

---

5  *See* our federal Constitution, Article I, § 8, clause 4, which provides that Congress shall have power "To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."

6  "[Latin "an unsuitable court"] *Civil procedure*. The doctrine that an appropriate forum — even though competent under the law — may divest itself of jurisdiction **if, for the convenience of the litigants and the witnesses, it appears that the action should proceed in another forum** in which the action might also have been properly brought in the first place." - Black's Law Dictionary, Eighth Edition, page 680

7  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)

8  *Quackenbush v. Allstate Ins. Co.*, 517 US 706, 723 (1996)

9  Another authority for doing so is found in Rule 1001: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."

Page 3 of 4 - MOTION TO TRANSFER VENUE

TAB 1                                    Page 3

### RELIEF SOUGHT

This court's finding our domicile is in Texas and this court is an inconvenient forum for the purposes of transfer, then an order transferring this case to the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

We make this motion in good faith and not for any improper purposes, such as needless delay or extraordinary expense for the other parties in interest.

We expressly reserve the right to amend or supplement this Motion if we believe it is necessary, including adequate notice to reply to all other parties' in interest responses to this motion. We also expressly invoke FRBP 1001 to apply to this and all our written submissions to this court.

*Submitted with all rights reserved on November 25, 2013*

Loren Miller, Debtor *pro se*

Sarah Miller, Debtor *pro se*

Page 4 of 4 - MOTION TO TRANSFER VENUE

TAB 1                                      Page 4

TAB 2

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Loren Miller, Debtor pro se<br>600 E. Medical Center Blvd. #1509<br>Webster, TX 77598<br>281-467-8226<br>Sarah Miller, Debtor pro se<br>702 Whitecap Drive<br>Seabrook, TX 77586<br>281-339-7244 | **FILED**<br>**NOV 2 6 2013**<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:            Deputy Clerk |
| ☒ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

| In re:<br>Loren Miller<br>Sarah Miller | CASE NO.: 9:13-bk-10313-RR<br>CHAPTER: 7 |
|---|---|
| | **DEBTOR'S MOTION TO CONVERT CASE UNDER 11 U.S.C. §§ 706(a) OR 1112(a)** |
| Debtor(s). | |

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

1.  Debtor hereby moves this court for an Order converting the above chapter 7    case to a case under chapter 11    on the grounds set forth below:

2.  **Filing Information:**

    a.  ☒ A Voluntary Petition under chapter    ☒ 7   ☐ 11   ☐ 12   ☐ 13   was filed on: 02/07/2013

    b.  ☐ An Involuntary Petition under chapter    ☐ 7   ☐ 11   was filed on: _____
        ☐ An Order of Relief under chapter    ☐ 7   ☐ 11   was entered on: _____

    c.  ☐ An Order of Conversion to chapter    ☐ 7   ☐ 11   ☐ 12   ☐ 13   was entered on: _____

    d.  ☐ Other *(specify):* _____
        _____
        _____

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1           **F 1017-1.1.MOTION.DEBTOR.CONVERT**

TAB 2                                    Page 5

3. **Procedural Status**

    a.  Name of trustee appointed *(if any)*: __Jeremy W. Faith__

    b.  Name of attorney of record for trustee *(if any)*: __The Margulies Law Firm__

4. Debtor alleges that this case has not been previously converted.

5. Debtor alleges that the motion is filed in good faith, and that Debtor is eligible for relief under the chapter for which conversion is requested.

WHEREFORE, Debtor prays that this court issue an Order (the form of which is submitted herewith and has been served) converting this case from one under chapter _7_ to a case under chapter _11_.

Date: __11/25/2013__

                                    Respectfully submitted,

                                      Printed name of law firm

                                      Signature          *pro se*

                                        Printed name of Debtor/trustee

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                         Page 2            **F 1017-1.1.MOTION.DEBTOR.CONVERT**

TAB 2                                               Page 6

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

600 E, Medical Center Blvd., 1509
Webster, TX , TX 77598

A true and correct copy of the foregoing document entitled: **DEBTOR'S MOTION TO CONVERT CASE UNDER 11 U.S.C. §§ 706(a) OR 1112(a)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On *(date)* _11/25/2013_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Robin Riblet
United States Bankruptcy Court
1415 State Street - Courtroom 201
Santa Barbara, CA 93101

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/25/2013 | Loren Miller | *(signature)* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                     Page 3          **F 1017-1.1.MOTION.DEBTOR.CONVERT**

TAB 2                                    Page 7

Loren Miller
702 Whitecap Drive
Seabrook, TX 77586

Allen B Cooper
Ervin Cohen & Jessup LLP
9401 Wilshire Blvd
9th Floor
Beverly Hills, CA 90212

Andrew D. Geller
3297 Woodbine Street
Los Angeles, CA 90060

Cam Farenbach, Ketan D Hhirod
Lionel, Sawyer and Collins
300 South Fourth Street, Ste 1700
Las Vegas, NV 89101

Eric R Olson, ESQ.
Kenneth E Hogan, ESQ.
3960 Howard Hughes Parkway
9th Floor
Las Vegas, NV 89109

GULF NATIONAL, 6 LLC,
A Louisiana Limited Liability Co.
300 South Fourth Street, Ste 1700
Las Vegas, NV 89101

HILLS CENTER OFFICE 1, LLC
MOLINOS Prop, LLC, Andrew D Geller
an Ind, Loren Miller, Geller Trust
1510 Higuerra
San Luis Obispo, CA 93401

IndyMac Mortgage
6900 Beatrice Drive
Kalamazoo, MI 49009

San Luis Ambulance
PO Box 954
San Luis Obispo, CA 93406

Sierra Vista Regional Med Ctr.
1010 Murray St.
San Luis Obispo, CA 93401

SLO County Sheriff
Civil Enforcement Division
1050 Monterey Street
Room 236
San Luis Obispo, CA 93408

TAB 2                    Page 8

TAB 3

1  CRAIG MARGULIES (State Bar No. 185925)
   MEGHANN TRIPLETT (State Bar No. 268005)
2  **MARGULIES FAITH, LLP**
   16030 Ventura Blvd., Suite 470
3  Encino California 91436
   Telephone: (818) 705-2777
4  Facsimile:  (818) 705-3777
   Email:  Craig@MarguliesFaithLaw.com
5  Email:  Meghann@MarguliesFaithLaw.com

6  Attorneys for Jeremy W. Faith, Chapter 7 Trustee

7

8              **UNITED STATES BANKRUPTCY COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
9              **NORTHERN DIVISION**

10

| 11 | In re | Case No.:  9:13-bk-10313-RR |
|----|-------|------------------------------|
| 12 | LOREN MILLER and SARAH MILLER, | Chapter:  7 |
| 13 | Debtors. | Adv. No.: 9:13-ap-01133-RR |
| 14 | | **OPPOSITION OF JEREMY W. FATIH, CHAPTER 7 TRUSTEE, TO DEBTOR** |
| 15 | | **LOREN MILLER'S MOTIONS TO TRANSFER VENUE TO SOUTHERN** |
| 16 | | **DISTRICT OF TEXAS; REQUEST FOR HEARING; AND DECLARATIONS IN** |
| 17 | JEREMY W. FAITH, Chapter 7 Trustee, | **SUPPORT THEREOF** |
| 18 | Plaintiff, | **Hearing** |
| 19 | vs. | Date:      TBD |
| 20 | LOREN MILLER AND SARAH MILLER, | Time:      TBD |
| 21 | Defendants. | Place:     Courtroom 201 |
| | | 1415 State Street |
| | | Santa Barbara, CA 93101 |

22

23

24

25

26

27

28

TAB 3                                                                    Page 9

## TABLE OF CONTENTS                                              Page

I.    SUMMARY OF ARGUMENT ..................................................................1

II.   RELEVANT BACKGROUND ................................................................2

    A.   341(a) Meeting of Creditors.............................................................3

    B.   Debtor's First Conversion Motion (Chapter 13) ............................4

    C.   Trustee's Turn Over Motion ...........................................................4

    D.   Trustee's Complaint to Deny Debtor's Discharge..........................6

    E.   Turn Over of Undisclosed Stock ....................................................7

III.  LEGAL ANALYSIS ...........................................................................9

    A.   The Transfer Motion is Untimely ...................................................10

    B.   The Transfer Motion is Not in the Interests of Justice ..................11

    C.   The Transfer Motion is Not in the Convenience of the Parties .....................12

V.    CONCLUSION ................................................................................13

    DECLARATION OF JEREMY W. FAITH.................................................14

i

TAB 3                                                  Page 10

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                                  **Page**

3  Blagg v. Miller (In re Blagg),
     223 B.R. 795, 802 (10th Cir. BAP 1998) ........................................................10

4  Commonwealth Oil Refining,
     596 F.2d at 1247 ...............................................................................................12

5

6  In re Consolidated Equity Properties,
     136 B.R. 261, 267 (D.Nev.1991) ......................................................................12

7  In re Custom Builders of Steamboat, Inc.,
     349 B.R. 39, 42 (Bankr.D.Idaho 2005) ..........................................................9, 10

8

9  In re Deabel, Inc.,
     193 B.R. 739, 743 (Bankr.E.D.Pa.1996) .........................................................11

10  In re Donald,
     328 B.R. 192, 204 (9th Cir.BAP 2005) .............................................................10

11

12  In re Enron,
     274 B.R. 327, 342 (Bankr.S.D.N.Y. 2002) .......................................................10

13  In re Enron Corp.,
     284 B.R. 376, 403 (Bankr.S.D.N.Y.2002) ........................................................10

14

15  In re Lebbos,
     439 BR 154, 163 (E.D. Cal. 2001) .................................................................1, 11

16  In re Kona Joint Venture I, Ltd.,
     62 B.R. 169, 172 (Bankr.D.Haw.1986) .............................................................10

17

18  In re Pickett,
     330 B.R. 866, 871 (Bankr.M.D.Ga.2005) .........................................................10

19  In re Pinehaven Assoc.,
     132 B.R. 982, 990 (Bankr.E.D.N.Y.1991) ........................................................11

20

21  In re Slentz,
     94 B.R. 446, 449 (Bankr.N.D.Ohio 1988) ........................................................13

22  In re Thomasson,
     60 B.R. 629 (Bankr.M.D.Tenn.1985) ...............................................................13

23

24  Manville Forest Prods.,
     896 F.2d at 1391 .........................................................................................11, 12

25  Sudbury, Inc. v. Dlott,
     149 B.R. 489, 492 (Bankr.N.D.Ohio 1993) .......................................................12

26

27

28

**STATUES**                                                                          **Page**

11 U.S.C. § 101 *et seq.* .................................................................................2, 14

11 U.S.C. § 109(e).........................................................................................4, 16

11 U.S.C. § 341(a).....................................................................................3, 12, 15

11 U.S.C. § 727 *et seq.* ...............................................................................6, 18

11 U.S.C. § 1112(a)........................................................................................9, 20

28 U.S.C. § 1406(b).............................................................................................11

28 U.S.C. § 1408(1)...............................................................................................9

28 U.S.C. § 1409(a).............................................................................................11

28 U.S.C. § 1412.......................................................................9, 10, 11, 12, 20

Federal Rule of Bankruptcy Procedure 1014...............................................9, 10, 20

Federal Rule of Bankruptcy Procedure 1014(a)(1) .........................................9

TAB 3                                                             Page 12

1   **TO THE HONORABLE ROBIN L. RIBLET, UNITED STATES BANKRUPTCY JUDGE,**

2   **THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTORS; AND ALL**

3   **PARTIES IN INTEREST:**

4         Jeremy W. Faith, Chapter 7 Trustee herein (the "Trustee") hereby submits this

5   omnibus opposition to the motions of Loren Miller, Chapter 7 debtor[1] (the "Debtor") in the

6   above-captioned case (the "Case") to transfer venue to the Southern District of Texas,

7   Houston Division (the "BK Transfer Motion," Dkt. No. 78) and the identical motion filed by

8   Debtor in the pending adversary proceeding no. 9:13-ap-01133-RR ("Adv. Transfer

9   Motion," Adv. Dkt. No. 16) (collectively referred to herein as the "Transfer Motion").

10                                          I.

11                          <u>**SUMMARY OF ARGUMENT**</u>

12         In this Case, the Debtor, as the moving party, must show by a preponderance of

13   the evidence that another venue is more convenient to all the parties or that the transfer

14   would be in the interest of justice.  Mr. Miller cannot meet this burden and the Transfer

15   Motion should be denied on the following grounds:

16         First, Debtors have engaged in a pattern of delay, interference, and bad faith in

17   this Case and transfer of this Case to Texas would only cause further expense and delay

18   to the Estate's creditors.  There are orders of this Court requiring turnover of assets

19   reflecting the pattern of delay, intentional interference and bad faith.  The Trustee has a

20   pending Adversary Proceeding against the Debtors seeking to deny the Debtors'

21   discharge due to such pre- and post-petition bad faith actions.[2]

22         Second, Debtors elected to file their voluntary bankruptcy petition in the Central

23   District of California and filing in their chosen venue operates as a waiver of Debtors'

24   right to object to venue in the bankruptcy proceeding.  *In re Lebbos*, 439 BR 154, 163

25   ///

26   _____

[1] Co-Debtor Sarah Miller is not a signatory to the Motion.

27   [2] See the Court's order requiring the turnover of $182,000 (Dkt. No.54).  Just this week, the Trustee
received bank documents reflecting, among other things, a 2012 tax refund that is property of the estate
that has not disclosed nor turned over and other undisclosed income that conflicts with Debtors' prior

28   testimony that such income was not being received.

1   (E.D. Cal. 2001) (finding that by voluntarily filing a bankruptcy petition in a chosen venue,

2   a debtor waives the right object to that venue).

3          Third, the Transfer Motion is untimely as it was brought more than ten months

4   after the Petition Date and after substantial work has been incurred by the Trustee and

5   his counsel to recover significant assets on behalf of the Estate against the total lack of

6   cooperation of the Debtors.

7          Fourth, co-Debtor Sarah Miller has retained new bankruptcy counsel solely for

8   herself, and not with co-Debtor Loren Miller.  Her new bankruptcy counsel is Robert E.

9   Hurlbett, Esq., of Hurlbett & Olmstead, located in this Court's jurisdiction at 3324 State

10  Street, Suite O, Santa Barbara, California 93105.  Mrs. Miller did not join in the Transfer

11  Motion, and the Trustee is informed, based upon communications with Mr. Hurlbett, that

12  Sarah Miller opposes this Transfer Motion.

13         Finally, transfer of the Case is not in the interests of justice and will prejudice

14  unsecured creditors who stand to receive a dividend from the administration of assets by

15  the Trustee.

16         Based upon the foregoing and as further detailed below, the Debtor's Transfer

17  Motion to transfer venue should be denied, and the Court should issue any other and

18  further relief that the Court deems just and proper.  In the alternative that the Court does

19  not simply deny the Transfer Motion, the Trustee requests a hearing thereon.

20                                              II.

21                              **RELEVANT BACKGROUND**

22         The Debtors commenced their bankruptcy case by filing a voluntary petition for

23  relief under Chapter 7 of 11 U.S.C. § 101 *et seq.* of the United States Code (the

24  "Bankruptcy Code") on February 7, 2013 ("Petition Date").  Jeremy W. Faith was

25  subsequently appointed as the duly qualified and acting trustee of the Debtors'

26  bankruptcy estate in which capacity he continues to serve.

27  ///

28  ///

1    The Case has been pending for more than ten months before this Court and the

2    Trustee has engaged in significant work to recover assets on behalf of the Estate

3    including the recovery of over $212,268.59 in cash for the benefit of creditors.

4    The Trustee continues, through the assistance of counsel, to recover additional

5    assets on behalf of the Estate, including but not limited to, the continued investigation of

6    undisclosed personal property assets, recovery of transferred cash, and the liquidation of

7    the Debtors' non-exempt interest in certain life insurance policies held by Principal

8    Financial Life Insurance.

9    On the Petition Date, Debtors only filed a "Skeletal Petition" and failed to file any

10    schedules or other documents.  On February 21, 2013, Debtors filed their Summary of

11    Schedules, Statistical Summary of Certain Liabilities, Schedules A-J, Small Business

12    Monthly Operating Report for filing period, Declaration concerning debtors' schedules,

13    Statement of Financial Affairs, Disclosure of Compensation of Attorney for Debtor,

14    Declaration of attorneys limited scope of appearance, Debtor's Certification of

15    Employment Income, Chapter 7 Statement of Current Monthly Income and Means Test

16    Calculation - Form 22A, Statement of Intent, verification of creditor matrix and Statement

17    of related cases (Dkt. No. 11).

18    The Debtors' Original Schedule B disclosed $182,000 in cash on hand held by the

19    Debtors as of the Petition Date (the "Cash").

20    **A. 341(a) Meeting of Creditors**

21    Debtors' initial Section 341(a) meeting of creditors was held on March 18, 2013.

22    Debtors failed to appear for their examination.  Debtors failed to appear at four additional

23    continued Section 341(a) meetings on April 8, 2013, April 29, 2013, May 20, 2013, and

24    June 10, 2013.  In fact, Debtors have never voluntarily appeared for a single Section

25    341(a) meeting of creditors, or produce any documents to the Trustee.

26    Ultimately, the Court issued an Order requiring the appearances of the Debtors at

27    the July 20, 2013 meeting of creditors and all further continued meetings of creditors

28    (Dkt. No. 54).  Debtors appeared and were examined at the July 20, 2013 meeting ("July

1   20 Meeting"). However, Debtor Loren Miller has again failed to appear at a required

2   meeting of creditors on November 18, 2013 in violation of this Court's Order.[3]

3       **B. Debtor's First Conversion Motion (Chapter 13)**

4          On April 4, 2013, the Trustee sent Debtors a letter demanding turnover of the

5   nonexempt Cash in the Debtors' possession.  In response, on April 5, 2013, the Debtors

6   filed a Motion to Convert the Chapter 7 Case to a Chapter 13 Case ("Motion to Convert

7   to Chapter 13").  On April 10, 2013, the Trustee filed his *Opposition and Request for*

8   *Hearing on Debtors' Motion to Convert Case to Chapter 13; Declaration of Jeremy W.*

9   *Faith in Support Thereof* ("Opposition," Dkt. No. 18).  The Debtors were not ineligible for

10  relief under Chapter 13 pursuant to 11 U.S.C. § 109(e).  The Trustee also highlighted the

11  fact that the Motion to Convert to Chapter 13 was filed in bad faith as a delay tactic.  The

12  Trustee was forced to file the Opposition, and on June 4, 2013, less than one week prior

13  to the scheduled hearing date, the Debtors filed a Notice of Withdrawal of the Motion to

14  Convert to Chapter 13 (Dkt. No. 40).

15      **C. Trustee's Turn Over Motion**

16         On May 9, 2013, Trustee's counsel sent another letter requesting turnover of the

17  Cash but again received no response.  On May 15, 2013, the Trustee was forced to file

18  a Motion for Turnover of the Cash; and Directing Debtors to Appear at the Meeting of

19  Creditors (the "Turnover Motion," Dkt No. 31).  A hearing on the Turnover Motion was

20  held on June 11, 2013.  On June 18, 2013, the Court entered an Order granting the

21  Turnover Motion in its entirety (the "Turnover Order," Dkt No. 54).  A true and correct

22  copy of the Turnover Order is attached hereto as **Exhibit A** and incorporated herein by

23  this reference.

24         The Turnover Order required that the Debtors on or before June 23, 2013, turn

25  over to the Trustee the $182,000 in Cash as listed on Schedule B.  Although specifically

26  *///*

27

28  [3] Co-Debtor Sarah Miller reached an agreement with the Trustee prior to the continued November 18, 2013 meeting and her appearance was excused by the Trustee.

1   directed by the Court to comply with the Trustee's requests pursuant to the Turnover

2   Order, Debtors refused for many months to fully comply with the turnover.

3         On July 12, 2013, eighteen days after the deadline set forth in the Turnover Order

4   and numerous demands[4] for turnover by Trustee's counsel, the Trustee received a

5   cashier's check in the amount of $101,731.00 from the Debtors along with a one page

6   accounting (the "Accounting") of how they used up $68,000 of the Cash in the

7   approximate five months since the Petition Date.  A true and correct copy of the letter

8   from Mr. Taus on behalf of Debtors dated July 11, 2013 and attached one-page

9   Accounting is attached hereto as **Exhibit B** and incorporated herein by this reference.

10        The Accounting reflects payments for the following during the period of January

11  2013 through March 2013 from the $182,000 in Cash ordered to be turned over by the

12  Court:

13
- $12,040 – Mortgage payments on Debtors' Las Vegas home
- $7,200 – Rent for their home in California
14
- $5,025 – Rent and Deposit for Debtors' new home in Texas
- $13,984.00 – Paid to Moving Company for move from California to Texas
15
- $3,000 – Moving travel expenses
- $2,232 – Medical insurance premiums
16
- $2,000 – Food and gas
- $145 – Car registration California
17
- $207 – Car registration Texas
- $976 – Cell phones
18
- $949 – Replace water heater in Las Vegas Home
- $440 – Replace refrigerator module
19
- $585 – Car insurance
- $800 – Utilities (average $200 month)
20
- $5,800 – payments to Lawyer Taus
- $3,800 – payments to Lawyer Sachs
21
- $10,000 – Car purchase (daughter)

22        <u>Subtotal: $68,863.00</u>

23  *See* <u>Exhibit B</u>.   Other than the "Accounting," the Debtors failed to provide any bank

24  records or documentary evidence to support these unauthorized expenditures from the

25  Cash.  These expenditures were unauthorized and do not excuse the Debtors from

26  ///

27  _____

28  [4] True and correct copies of the demand letters relating to the turnover sent by Trustee's counsel to the Debtors are attached hereto as **Exhibit C** and incorporated herein by this reference.

1   complying with this Court's Turnover Order in its entirety and returning the full $182,000

2   to the Estate.

3          On August 9, 2013, Debtors filed Amended Schedules B, C and Statement of

4   Financial Affairs ("Amended SOFA") (Dkt. No. 64).  The Amended SOFA at paragraph

5   18, listed the Debtors' interest in three previously undisclosed limited liability companies.

6          On August 26, 2013, counsel for the Trustee sent Debtors, through their counsel

7   Vaughn C. Taus, a renewed demand for full compliance with the Turnover Order and

8   requiring turnover of the remaining $80,269 from the Debtors.  A true and correct copy of

9   the August 26, 2013 letter is attached hereto as **Exhibit C** and incorporated herein by

10  this reference.

11         As detailed below, just recently in November 2013, Co-Debtor Sarah Miller, by

12  and through communications with her new counsel, has sought to cooperate with the

13  Trustee and she has turned over certain cash items.  Co-Debtor Loren Miller still remains

14  recalcitrant and refusing to comply with Court orders, duties under the Bankruptcy Code,

15  or any requests by the Trustee and his counsel.

16     **D.  Trustee's Complaint to Deny Debtors' Discharge**

17         On or about August 15, 2013, the Trustee filed a Complaint against Debtors for

18  Denial of Discharge under 11 U.S.C. § 727 *et seq.*, Adversary Proceeding No. 9:13-ap-

19  01133-RR (the "Discharge Adversary Proceeding").

20         On October 16, 2013, Debtors filed an Answer to the Discharge Adversary

21  Proceeding denying the allegations therein.  The Discharge Adversary Proceeding is set

22  for a pre-trial conference on February 25, 2014 at 11:00 a.m.

23         As provided above, on or about November 5, 2013, Co-Debtor Sarah Miller

24  retained new counsel in the Discharge Adversary Proceeding and entered into

25  discussions regarding cooperation with the Trustee in the administration of this Case and

26  possible settlement of outstanding issues in the Case and Discharge Adversary

27  Proceeding as to Sarah Miller.

28  ///

**E. Turn Over of Undisclosed Stock**

On or about November 15, 2013, Sarah Miller disclosed to the Trustee (through her new counsel) a stock account not previously disclosed by the Debtors. The Trustee and Sarah Miller (by and through counsel) arranged for the liquidation and turnover of this undisclosed stock holdings account at the Bank of Montreal, Quebec (the "Stock Holdings"). The value of the Stock Holdings as of November 12, 2013 was $31,269.35. Sarah Miller agreed to and has now liquidated and turned over the liquidated balance of the Stock Holdings account to the Trustee.

Co-Debtor Sarah Miller also holds a joint bank account with Debtors' minor daughter Zoe Miller at JSC Federal Credit Union, Account No. Ending in 5193 ("Zoe Miller Bank Account"). The balance of the Zoe Miller Bank Account as of November 13, 2013 was $76,145.45. The funds in the Zoe Miller Bank Account were transferred from a pre-petition bank account at Wells Fargo and were listed on Debtors Original Schedule B. The funds in the Zoe Miller Bank Account were also ordered by the Court to be turned over to the Trustee as part of the Cash pursuant to the Turnover Order. On or about November 18, 2013, pursuant to the Trustee's communications with Sarah Miller through her new counsel in the Discharge Adversary Proceeding, the Trustee received a wire transfer of $76,145.45.[5]

The Trustee's investigation has also revealed that the Debtors knowingly significantly undervalued their personal property on their bankruptcy schedules in an apparent attempt to "sneak by" in a Chapter 7 and discharge their debts while avoiding the liquidation of their assets for the benefit of creditors. Notably, the Debtors failed to disclose all entities in which they have an ownership interest in, including but not limited to First Star Associates, Inc ("First Star").

---

[5] Although the recent turnover of the approximate $76,145.45 by co-debtor Sarah Miller from the Zoe Miller Bank Account technically provides the remaining Cash disclosed on Debtors' Original Schedule B and required to be turned over by this Court's Turnover Order, there is no explanation for the additional $68,863.00 in pre-petition Cash spent by the Debtors as detailed above which was never turned over to the Trustee. Furthermore, the Trustee is still in the process of obtaining all of Debtors bank records to confirm all pre-petition cash and bank accounts were disclosed and accounted for.

7

TAB 3                                    Page 19

1    On July 29, 2013, in response to the Trustee's request for documents and

2  additional information on First Star which was brought to light at the July 20 Meeting, Mr.

3  Taus, on behalf of Debtors, sent a letter to the Trustee, detailing the Debtors' interest in

4  First Star among other allegedly defunct corporate entities of the Debtors.  A true and

5  correct copy of the July 29, 2013 letter is attached hereto as **Exhibit D** and is

6  incorporated herein by this reference.  The July 29th letter provides as follows:

7        d.  First Star Associates, Inc.  – Status Revoked – Owned
        50% -- Services only corporation that never owned anything.
8        Closed after Las Vegas real estate collapse.  No tax returns
        (more than 5 years old).

9    First Star is not listed as an asset on the Debtors' amended bankruptcy schedules

10

11  (Dkt. No. 64).

12    On or about October 17, 2013, the Trustee received copies of the First Star bank

13  statements and cancelled checks from Bank West of Nevada in response to a subpoena

14  issued by the Trustee after it was discovered that an active bank account existed for

15  First Star and that Debtor Loren Miller was writing checks from this account for his own

16  personal benefit.  True and correct copies of the First Star bank records received by the

17  Trustee pursuant to his subpoena are attached hereto as **Exhibit E** (the "First Star Bank

18  Records").

19    The First Star Bank Records reflect that Mr. Miller has been using a bank account

20  in the name of First Star solely for his own personal benefit for at least the two years

21  preceding the Petition Date.  Furthermore, the First Star Bank Records show that the

22  account had at least $24,612.63 in it as of the Petition Date and had as much as

23  $44,086.94 in September 2012.  The Trustee believes that these funds are additional

24  undisclosed monies, which are separate from the Cash disclosed on Schedule B and

25  ordered by the Court to be turned over to the Trustee.  The First Star Bank Records also

26  reflect that the Debtors changed the address on the bank account to their new personal

27  address in Texas.  This is directly at odds with the Debtors' testimony at the July 20

28  Meeting that Debtors did not have knowledge of any monies in the First Star Bank

1   Account and did not control the account.  Furthermore, the Nevada corporate records for

2   First Star do not show any other members or offices and reflect that the capital amount

3   for the corporation's 25,000 shares was $0.00.  A true and correct copy of the First Star

4   business entity detail from the Nevada Secretary of State Website is attached hereto as

5   **Exhibit F.**

6          On November 26, 2013, Debtor Loren Miller (pro se) filed the a form Notice of

7   Motion and Motion to Convert Case to Chapter 11 pursuant to 11 U.S.C. § 1112(a)

8   ("Motion to Convert," Dkt. Nos. 79 and 80).  The Trustee is concurrently filing an

9   opposition to the Motion to Convert.

10         Mr. Miller also filed Motions to Transfer Venue – Rule 1014; 28 U.S.C. § 1412 to

11  the Southern District of Texas, Houston Division in both the Case ("BK Transfer Motion,"

12  Dkt. No. 78) and a Motion to Transfer Venue to the Southern District of Texas, Houston

13  Division in the Discharge Adversary Proceeding ("Adv. Transfer Motion," Adv. Dkt. No.

14  16) (collectively, referred to herein as the "Transfer Motion").

15         Co-Debtor Sarah Miller is not a signatory to the instant Transfer Motion or the

16  Motion to Convert.  The Trustee is informed and believes that Sara Miller opposes both

17  of these motions.

18                                            III.

19                                **LEGAL ANALYSIS**

20         It is undisputed that Venue is proper before this Court.[6]  Nevertheless, section

21  1412 of title 28 allows the transfer of a case properly filed in one district to another

22  district if, upon a "timely motion" and after notice and a hearing, the Court determines

23  that the transfer "is in the interest of justice or for the convenience of the parties."  28

24  U.S.C. § 1412; Fed. R. Bankr.P. 1014(a)(1); *In re Custom Builders of Steamboat, Inc.*,

25  ─────────────
       [6] Venue for a bankruptcy case is proper in the district court for the district-
26          (1) in which the domicile, residence, principal place of business in the
            United States, or principal assets in the United States, of the person or
            entity that is the subject of such case have been located for the one
27          hundred and eighty days immediately preceding such commencement . . .
       28 U.S.C. § 1408(1).  There is no dispute that Venue is proper before this Court.

28

1   349 B.R. 39, 42 (Bankr.D.Idaho 2005).  The analysis of the combination of "interest of

2   justice" and "convenience of parties" under § 1412 and Rule 1014 is fact specific to each

3   case and necessarily requires the exercise of discretion based on the totality of the

4   circumstances.  *In re Donald*, 328 B.R. 192, 204 (9th Cir.BAP 2005).  The party that

5   seeks to transfer venue bears the burden of showing by a preponderance of evidence

6   that the transfer is appropriate.  In re Enron, 274 B.R. 327, 342 (Bankr.S.D.N.Y. 2002);

7   *In re Kona Joint Venture I, Ltd.*, 62 B.R. 169, 172 (Bankr.D.Haw.1986).  The resolution of

8   an issue of venue is left to the sound discretion of the trial court, but the power of the

9   court to transfer venue should be exercised cautiously.  *Id.* (Citations omitted).  Several

10   non-exclusive factors, which generally amounts to a totality-of-circumstances analysis,

11   are to be considered: (1) proximity of creditors to Court; (2) proximity of debtor to Court;

12   (3) proximity of witnesses necessary to administration of the estate; (4) location of

13   assets; (5) economic and efficient administration of the case; (6) need for further

14   administration if liquidation ensues.  *In re Donald*, 328 B.R. at 204. *See also Custom*

15   *Builders of Steamboat, Inc.*, 349 B.R. at 42; *In re Kona Joint Venture I, Ltd.*, 62 B.R. at

16   172.

17   **A.  <u>The Transfer Motion is Untimely</u>**

18       The Transfer Motion is untimely as this Case has been pending for more than ten

19   months and he Trustee and his counsel have undertaken a substantial amount of work

20   to recover assets on behalf of creditors of the Estate despite Debtors' lack of

21   cooperation.[7]  Transfer of the Case at this juncture would only cause further delay and

22   administrative expense.  *Blagg v. Miller (In re Blagg),* 223 B.R. 795, 802 (10th Cir. BAP

23   1998) ("If the transfer would result in fragmentation or duplication of administration,

24   increase expense, or delay closing of the estate, such a factor would bear on the

25   timeliness of the motion.") (citation omitted); *In re Pickett*, 330 B.R. 866, 871

26   (Bankr.M.D.Ga.2005) (finding that United States Trustee's motions to transfer or dismiss

---

27   [7]  "What constitutes timely filing of such a motion is not governed by a statutory or rule definition; whether
a motion to change venue has been timely filed depends on the facts and circumstances presented in the
28   particular case."  *Blagg v. Miller (In re Blagg),* 223 B.R. 795, 802 (10th Cir. BAP 1998) (citations omitted).

1   debtors' bankruptcy cases for improper venue were untimely where there were

2   sufficiently substantial developments in the cases); *In re Deabel, Inc.,* 193 B.R. 739, 743

3   (Bankr.E.D.Pa.1996)(finding that if "a party has submitted itself to the jurisdiction of the

4   court by litigating a matter of substance, or if substantial developments have transpired

5   in the case in general, ... waiver of an objection to venue could be found.").

6       Moreover, notwithstanding the bad faith of the Debtors in this Case and the

7   untimeliness of the Transfer Motion, at least one court has determined that by voluntarily

8   filing a bankruptcy petition in a chosen venue, a debtor waives the right object to that

9   venue. *In re Lebbos, supra,* 439 B.R. 154 at 163.  Debtors voluntarily filed their initial

10  bankruptcy petition in the Central District of California. The filing of the petition in the

11  chosen venue operates as a waiver of Debtors' right to object to alleged improper venue

12  in the bankruptcy proceeding. *See* 28 U.S.C. § 1406(b). Further, proceedings related to

13  the initial bankruptcy case are proper in the district court in which the bankruptcy case is

14  proceeding.  28 U.S.C. § 1409(a).  Therefore, adjudication of the Discharge Adversary

15  Proceeding before this Court is also proper.

16  **B.  The Transfer Motion is Not in the Interests of Justice**

17      Transfer of this Case is not in the "interest of justice" as it would cause additional

18  expense, delay, and harm to the Estate's creditors.  The "interest of justice" component

19  of § 1412 is a broad and flexible standard, requiring a case-by-case analysis and

20  contemplating a consideration of whether transferring venue would promote the efficient

21  administration of the bankruptcy estate, judicial economy, timeliness, and fairness.

22  *Manville Forest Prods.,* 896 F.2d at 1391; *In re Enron Corp.,* 284 B.R. 376, 403

23  (Bankr.S.D.N.Y.2002).  This factor "encompasses, among other things, inquiry as to the

24  forum which facilitates the efficient, proper and expeditious functioning of the courts.

25  Although vague, this inquiry would include looking into the desirability of having a judge

26  familiar with applicable law hear and determine issues arising in the case." *In re*

27  *Pinehaven Assoc.,* 132 B.R. 982, 990 (Bankr.E.D.N.Y.1991).  One court has noted, "so

28  far as appears, nearly every case that has considered transfer of a bankruptcy

1   proceeding has construed this phrase in section 1412 to give primacy to administrative

2   matters affecting the estate." *Sudbury, Inc. v. Dlott*, 149 B.R. 489, 492 (Bankr.N.D.Ohio

3   1993) (*citing Manville Forest Prods.*, 896 F.2d at 1384)).

4        As outlined above, for more than ten months, Debtors have engaged in a pattern of

5   delay, interference, and bad faith in this Case, including a prior attempt at conversion of

6   the Case to Chapter 13 and the pending Motion to Convert the Case to Chapter 11.  The

7   Trustee has substantial evidence that the Debtors have concealed, depleted, and

8   intentionally undervalued assets of the Estate and are not eligible to be debtors in

9   possession.  To date, among other things, the Debtors have failed to fully comply with

10  the Court's Order on the Trustee's Motion for Turnover ("Turnover Order," Dkt. No. 54).

11  The Trustee was also forced to obtain a court order compelling the Debtors to appear at

12  their section 341(a) meeting of creditors and recently Debtor improperly failed to appear

13  at a continued 341(a) meeting, failed to file complete and accurate bankruptcy

14  schedules, failed to provide the Trustee with certain requested documents, and

15  intentionally concealed property of the Estate.  Moreover, the Trustee is informed that

16  the Debtors are now separated and that co-debtor Sarah Miller is not a signatory to the

17  Transfer Motion in this Case or the Discharge Adversary Proceeding and that she

18  opposes both motions and requests that they be denied.

19       **C. The Transfer Motion Is Not In the Convenience of the Parties**

20        In considering the convenience of the parties, courts may take into account: (1)

21  the proximity of creditors of every kind to the court; (2) the proximity of the bankrupt

22  (debtor) to the court; (3) the proximity of the witnesses necessary to the administration of

23  the estate; (4) the location of the assets; (5) the economic administration of the estate;

24  and (6) the necessity for ancillary administration if bankruptcy should result.

25  *Commonwealth Oil Refining*, 596 F.2d at 1247.  However, "the most important

26  consideration is whether the requested transfer would promote the economic and

27  efficient administration of the estate." *Id.*; *see also In re Consolidated Equity Properties*,

28  136 B.R. 261, 267 (D.Nev.1991).  Additionally, the Court should consider any local

1   interests which argue in favor of retaining jurisdiction. *In re Slentz*, 94 B.R. 446, 449

2   (Bankr.N.D.Ohio 1988) (*citing In re Thomasson*, 60 B.R. 629 (Bankr.M.D.Tenn.1985)).

3        The economic administration of the estate weighs heavily in favor of denying the

4   Transfer Motion and retaining the Case because of the Trustee's substantial work and

5   substantial administrative expenditures.  Bringing a new trustee up to speed would be

6   expensive and duplicative for the Estate.  Moreover, none of the factors considered by

7   the courts weigh in favor of the Debtor who has acted in extreme bad faith and appears

8   to be motivated by causing further delay and expense in this Case.

9        Co-Debtor Sarah Miller's new counsel is in fact located in this jurisdiction, Santa

10   Barbara, California.

11                                    **IV.**

12                               **CONCLUSION**

13        Based upon the foregoing, the Trustee respectfully requests that this Court deny

14   the Motion to Transfer Venue to the Southern District of Texas, and enter any other and

15   further relief that the Court deems just and proper.

16

17   DATED: December 10, 2013          MARGULIES FAITH, LLP

18

19                                    By:   */s/ Meghann Triplett*
                                            Craig G. Margulies
                                            Meghann Triplett
20                                    Attorneys for Jeremy W. Faith, Chapter 7
                                      Trustee

21

22

23

24

25

26

27

28

## DECLARATION OF JEREMY W. FAITH

I, Jeremy W. Faith, declare as follows:

1.      I am the duly appointed, qualified and acting Chapter 7 trustee for the bankruptcy estate of Loren Miller and Sarah Miller (the "Debtors").  I have personal knowledge of the matters set forth herein and if called as a witness could and would testify competently thereto.  This declaration is submitted in support of the foregoing *Omnibus Opposition to Debtor Loren Miller's Motions to Transfer Venue to the Southern District of Texas, Houston Division; Request for Hearing; and Declarations in Support Thereof* (the "Opposition").  Defined terms in the Opposition shall have the same meaning herein.

2.      I believe that Debtor's request to Transfer Venue in this Case and the Discharge Adversary Proceeding to Texas is yet another bad faith tactic by the Debtor in a misguided attempt to avoid complying with his statutory duties under the bankruptcy code.

3.      The Debtors commenced their bankruptcy case by filing a voluntary petition for relief under Chapter 7 of 11 U.S.C. § 101 *et seq.* of the United States Code (the "Bankruptcy Code") on February 7, 2013 ("Petition Date").  Thereafter, I was appointed as the duly qualified and acting trustee of the Debtors' bankruptcy estate in which capacity I continue to serve.

4.      The Case has been pending for more than ten months before this Court and my counsel and I have engaged in significant work to recover assets on behalf of the Estate including the recovery of over $212,286.59 in cash for the benefit of creditors.

5.      I continue, to investigate and recover additional assets on behalf of the Estate, including but not limited to, the continued investigation of undisclosed personal property assets, recovery of transferred cash, and the liquidation of the Debtors' non-exempt interest in certain life insurance policies held by Principal Financial Life Insurance.

///

6.    On the Petition Date, Debtors only filed a "Skeletal Petition" and failed to file any schedules or other documents.  On February 21, 2013, Debtors filed their Summary of Schedules, Statistical Summary of Certain Liabilities, Schedules A-J, Small Business Monthly Operating Report for filing period, Declaration concerning debtors' schedules, Statement of Financial Affairs, Disclosure of Compensation of Attorney for Debtor, Declaration of attorneys limited scope of appearance, Debtor's Certification of Employment Income, Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A, Statement of Intent, verification of creditor matrix and Statement of related cases (Dkt. No. 11).

7.    The Debtors' Original Schedule B disclosed $182,000 in cash on hand held by the Debtors as of the Petition Date (the "Cash").

8.    Debtors' initial Section 341(a) meeting of creditors was held on March 18, 2013.  Debtors failed to appear for their examination.  Debtors failed to appear at four additional continued Section 341(a) meetings on April 8, 2013, April 29, 2013, May 20, 2013, and June 10, 2013.  In fact, Debtors have never voluntarily appeared for a single Section 341(a) meeting of creditors, or produce any documents to me or my counsel.

9.    Ultimately, the Court issued an Order requiring the appearances of the Debtors at the July 20, 2013 meeting of creditors and all further continued meetings of creditors (Dkt. No. 54).  Debtors appeared and were examined at the July 20, 2013 meeting ("July 20 Meeting").  However, Debtor Loren Miller has again failed to appear at a required meeting of creditors on November 18, 2013 in violation of this Court's Order.  Prior to the continued November 18 meeting, I reached an agreement with Co-Debtor Sarah Miller in exchange for turnover of certain assets as detailed in the Opposition and I excused her appearance.

10.    On April 4, 2013, I sent Debtors a letter demanding turnover of the nonexempt Cash in their possession.  In response, on April 5, 2013, the Debtors filed a Motion to Convert the Chapter 7 Case to a Chapter 13 Case ("Motion to Convert to Chapter 13").  On April 10, 2013, through counsel, I filed an *Opposition and Request for*

1   *Hearing on Debtors' Motion to Convert Case to Chapter 13; Declaration of Jeremy W.*

2   *Faith in Support Thereof* ("Opposition," Dkt. No. 18).  The Debtors were not ineligible for

3   relief under Chapter 13 pursuant to 11 U.S.C. § 109(e).  The Opposition also highlighted

4   the fact that the Motion to Convert to Chapter 13 was filed in bad faith as a delay tactic.  I

5   was forced to file the Opposition, and on June 4, 2013, less than one week prior to the

6   scheduled hearing date, the Debtors filed a Notice of Withdrawal of the Motion to

7   Convert to Chapter 13 (Dkt. No. 40).

8       11.    On May 9, 2013, my counsel sent another letter requesting turnover of the

9   Cash but again received no response.  On May 15, 2013, I was forced to file a Motion for

10  Turnover of the Cash; and Directing Debtors to Appear at the Meeting of Creditors (the

11  "Turnover Motion," Dkt No. 31).  A hearing on the Turnover Motion was held on June 11,

12  2013.  On June 18, 2013, the Court entered an Order granting the Turnover Motion in its

13  entirety (the "Turnover Order," Dkt No. 54).  A true and correct copy of the Turnover

14  Order is attached hereto as **Exhibit A** and incorporated herein by this reference.

15      12.    The Turnover Order required that the Debtors on or before June 23, 2013,

16  turn over to the Trustee the $182,000 in Cash as listed on Schedule B.  Although

17  specifically directed by the Court to comply with my requests pursuant to the Turnover

18  Order, Debtors refused for many months to fully comply with the turnover.

19      13.    On July 12, 2013, eighteen days after the deadline set forth in the Turnover

20  Order and numerous demands for turnover by my counsel, I received a cashier's check

21  in the amount of $101,731.00 from the Debtors along with a one page accounting (the

22  "Accounting") of how they used up $68,000 of the Cash in the approximate five months

23  since the Petition Date.  A true and correct copy of the letter from Mr. Taus on behalf of

24  Debtors dated July 11, 2013 and attached one-page Accounting is attached hereto as

25  **Exhibit B** and incorporated herein by this reference.

26      14.    The Accounting reflects payments for the following during the period of

27  January 2013 through March 2013 from the $182,000 in Cash ordered to be turned over

28  by the Court:

1
- $12,040 – Mortgage payments on Debtors' Las Vegas home
- $7,200 – Rent for their home in California
2
- $5,025 – Rent and Deposit for Debtors' new home in Texas
- $13,984.00 – Paid to Moving Company for move from California to Texas
3
- $3,000 – Moving travel expenses
- $2,232 – Medical insurance premiums
4
- $2,000 – Food and gas
- $145 – Car registration California
5
- $207 – Car registration Texas
- $976 – Cell phones
6
- $949 – Replace water heater in Las Vegas Home
- $440 – Replace refrigerator module
7
- $585 – Car insurance
- $800 – Utilities (average $200 month)
8
- $5,800 – payments to Lawyer Taus
- $3,800 – payments to Lawyer Sachs
9
- $10,000 – Car purchase (daughter)

10      <u>Subtotal: $68,863.00</u>

11     *See* <u>Exhibit B</u>.   Other than the "Accounting," the Debtors failed to provide any bank

12     records or documentary evidence to support these unauthorized expenditures from the

13     Cash.   These expenditures were unauthorized and do not excuse the Debtors from

14     complying with this Court's Turnover Order in its entirety and returning the full $182,000

15     to the Estate.

16          15.    On August 9, 2013, Debtors filed Amended Schedules B, C and Statement

17     of Financial Affairs ("Amended SOFA") (Dkt. No. 64).  The Amended SOFA at paragraph

18     18, listed the Debtors' interest in three previously undisclosed limited liability companies.

19          16.    On August 26, 2013, my counsel sent Debtors, through their counsel

20     Vaughn C. Taus, a renewed demand for full compliance with the Turnover Order and

21     requiring turnover of the remaining $80,269 from the Debtors.  A true and correct copy of

22     the August 26, 2013 letter is attached hereto as **<u>Exhibit C</u>** and incorporated herein by

23     this reference.

24          17.    As detailed below, just recently in November 2013, Co-Debtor Sarah Miller,

25     by and through communications with her new counsel, has sought to cooperate with me

26     and she has turned over certain cash items.   Co-Debtor Loren Miller still remains

27     recalcitrant and refusing to comply with Court orders, duties under the Bankruptcy Code,

28     or any requests by me or my counsel.

1    18.    On or about August 15, 2013, I filed a Complaint against Debtors for Denial

2    of Discharge under 11 U.S.C. § 727 *et seq.*, Adversary Proceeding No. 9:13-ap-01133-

3    RR (the "Discharge Adversary Proceeding").

4    19.    On October 16, 2013, Debtors filed an Answer to the Discharge Adversary

5    Proceeding denying the allegations therein.  The Discharge Adversary Proceeding is set

6    for a pre-trial conference on February 25, 2014 at 11:00 a.m.

7    20.    As provided above, on or about November 5, 2013, Co-Debtor Sarah Miller

8    retained new counsel in the Discharge Adversary Proceeding and entered into

9    discussions regarding cooperation with me in the administration of this Case and

10   possible settlement of outstanding issues in the Case and Discharge Adversary

11   Proceeding as to Sarah Miller.

12   21.    On or about November 15, 2013, Sarah Miller disclosed to me (through her

13   new counsel) a stock account not previously disclosed by the Debtors.  Sarah Miller and

14   I (by and through counsel) arranged for the liquidation and turnover of this undisclosed

15   stock holdings account at the Bank of Montreal, Quebec (the "Stock Holdings").   The

16   value of the Stock Holdings as of November 12, 2013 was $31,269.35.   Sarah Miller

17   agreed to and has now liquidated and turned over the liquidated balance of the Stock

18   Holdings account to me.

19   22.    Co-Debtor Sarah Miller also holds a joint bank account with Debtors' minor

20   daughter Zoe Miller at JSC Federal Credit Union, Account No. Ending in 5193 ("Zoe

21   Miller Bank Account").  The balance of the Zoe Miller Bank Account as of November 13,

22   2013 was $76,145.45. The funds in the Zoe Miller Bank Account were transferred from a

23   pre-petition bank account at Wells Fargo and were listed on Debtors Original Schedule

24   B.   The funds in the Zoe Miller Bank Account were also ordered by the Court to be

25   turned over to me as part of the Cash pursuant to the Turnover Order.  On or about

26   November 18, 2013, pursuant to my counsel's communications with Sarah Miller through

27   her new counsel in the Discharge Adversary Proceeding, I received a wire transfer of

28   $76,145.45.

23.     Although the recent turnover of the approximate $76,145.45 by co-debtor Sarah Miller from the Zoe Miller Bank Account technically provides the remaining Cash disclosed on Debtors' Original Schedule B and required to be turned over by this Court's Turnover Order, there is no explanation for the additional $68,863.00 in pre-petition Cash spent by the Debtors as detailed above which was never turned over to the Trustee. Furthermore, I am still in the process of obtaining all of Debtors bank records to confirm all pre-petition cash and bank accounts were disclosed and accounted for.

24.     My investigation has also revealed that the Debtors knowingly significantly undervalued their personal property on their bankruptcy schedules in an apparent attempt to "sneak by" in a Chapter 7 and discharge their debts while avoiding the liquidation of their assets for the benefit of creditors. Notably, the Debtors failed to disclose all entities in which they have an ownership interest in, including but not limited to First Star Associates, Inc ("First Star").

25.     On July 29, 2013, in response to my request for documents and additional information on First Star which was brought to light at the July 20 Meeting, Mr. Taus, on behalf of Debtors, sent a letter to me, detailing the Debtors' interest in First Star among other allegedly defunct corporate entities of the Debtors. A true and correct copy of the July 29, 2013 letter is attached hereto as **Exhibit D** and is incorporated herein by this reference. The July 29th letter provides as follows:

> d. First Star Associates, Inc. – Status Revoked – Owned 50% -- Services only corporation that never owned anything. Closed after Las Vegas real estate collapse. No tax returns (more than 5 years old).

26.     First Star is not listed as an asset on the Debtors' amended bankruptcy schedules (Dkt. No. 64).

27.     On or about October 17, 2013, I received copies of the First Star bank statements and cancelled checks from Bank West of Nevada in response to a subpoena issued by my office after it was discovered that an active bank account existed for First Star and that Debtor Loren Miller was writing checks from this account for his own

1   personal benefit.  True and correct copies of the First Star bank records received by the

2   Trustee pursuant to his subpoena are attached hereto as **Exhibit E** (the "First Star Bank

3   Records").

4         28.   The First Star Bank Records reflect that Mr. Miller has been using a bank

5   account in the name of First Star solely for his own personal benefit for at least the two

6   years preceding the Petition Date.  Furthermore, the First Star Bank Records show that

7   the account had at least $24,612.63 in it as of the Petition Date and had as much as

8   $44,086.94 in September 2012.  I believe that these funds are additional undisclosed

9   monies, which are separate from the Cash disclosed on Schedule B and ordered by the

10  Court to be turned over to me.

11        29.   The First Star Bank Records also reflect that the Debtors changed the

12  address on the bank account to their new personal address in Texas.  This is directly at

13  odds with the Debtors' testimony at the July 20 Meeting that Debtors did not have

14  knowledge of any monies in the First Star Bank Account and did not control the account.

15  Furthermore, the Nevada corporate records for First Star do not show any other

16  members or offices and reflect that the capital amount for the corporation's 25,000

17  shares was $0.00.  A true and correct copy of the First Star business entity detail from

18  the Nevada Secretary of State Website is attached hereto as **Exhibit F.**

19        30.   On November 26, 2013, Debtor Loren Miller (pro se) filed a form Notice of

20  Motion and Motion to Convert Case to Chapter 11 pursuant to 11 U.S.C. § 1112(a)

21  ("Motion to Convert," Dkt. Nos. 79 and 80).  I am concurrently filing an opposition to the

22  Motion to Convert.

23        31.   Mr. Miller also filed the instant Motions to Transfer Venue – Rule 1014; 28

24  U.S.C. § 1412 to the Southern District of Texas, Houston Division in both the Case ("BK

25  Transfer Motion," Dkt. No. 78) and a Motion to Transfer Venue to the Southern District of

26  Texas, Houston Division in the Discharge Adversary Proceeding ("Adv. Transfer Motion,"

27  Adv. Dkt. No. 16) (collectively, referred to herein as the "Transfer Motion").

28  ///

1       32.     Co-Debtor Sarah Miller is not a signatory to the instant Transfer Motion or

2   the Motion to Convert.  I am informed and believe that Sara Miller opposes both of these

3   motions.

4       33.     Based upon the foregoing and as for the reasons detailed in the foregoing

5   Opposition, the Debtor Loren Miller's Motion to transfer venue to Texas in this Case and

6   the Discharge Adversary Proceeding should be denied.

7       I declare under penalty of perjury under the laws of the United States of America

8   that the foregoing is true and correct and that this declaration was executed on

9   December 10, 2013 at Encino, California.

10

11                                                        _____

12                                                              JEREMY W. FAITH

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

TAB 3                                                          Page 33

# Exhibit A

TAB 3                                    Page 34

1  CRAIG G. MARGULIES (State Bar No. 185925)
   MEGHANN TRIPLETT (State Bar No. 268005)
2  **MARGULIES FAITH, LLP**
   16030 Ventura Blvd., Suite 470
3  Encino, California 91436
   Telephone: (818) 705-2777
4  Facsimile: (818) 705-3777
   Email: Craig@MarguliesFaithLaw.com
5  Email: Meghann@MarguliesFaithlaw.com

6  Attorney for Jeremy W. Faith, Chapter 7 Trustee

7

8                  **UNITED STATES BANKRUPTCY COURT**
9                  **CENTRAL DISTRICT OF CALIFORNIA**
                        **NORTHERN DIVISION**
10

11  In re                              Case No.: 9:13-bk-10313-RR

12  LOREN MILLER AND SARAH MILLER,     Chapter: 7

13                         Debtor.     **ORDER GRANTING CHAPTER 7**
14                                     **TRUSTEE'S MOTION FOR TURNOVER**
                                       **OF PROPERTY OF THE ESTATE AND**
15                                     **ORDER DIRECTING DEBTORS TO**
                                       **APPEAR AT CONTINUED 11 U.S.C. §**
16                                     **341(a) MEETINGS OF CREDITORS**

17
                                       Hearing Date:
18                                     Date:    June 11, 2013
                                       Time:    10:00 am
19                                     Place:   Courtroom 201

20

21

22

23

24

25

26

27

28

FILED & ENTERED

JUN 18 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY RUST        DEPUTY CLERK

Case 9:13-bk-10313-RR    Doc 54    Filed 06/18/13    Entered 06/18/13 15:10:23    Desc
Main Document    Page 2 of 4

1      At the above date and time, the hearing on the Trustee's Motion for order

2   compelling the above-captioned debtors Loren Miller And Sarah Miller (collectively, the

3   "Debtors") to turn over property of the Bankruptcy Estate pursuant to 11 U.S.C. §§ 521,

4   541, and 542, and for an order directing the Debtors to appear at their 11 U.S.C. §

5   341(a) Meetings of Creditors (the "Motion," Dkt. No. 31) was held before the Honorable

6   Robin L. Riblet, United States Bankruptcy Judge, in Courtroom 201of the United States

7   Bankruptcy Court, 1415 State Street, Santa Barbara, California.  Meghann Triplett, Esq.

8   of Margulies Faith, LLP appeared on behalf of the Trustee, and all other appearances

9   were as stated on the record at the hearing.

10      The Court, having read and considered the moving papers, no opposition having

11   been filed, and the Court finding that Notice of the Motion was proper, and for the

12   reasons stated on the record at the hearing on the Motion and good cause appearing,

13      **IT IS HEREBY ORDERED THAT:**

14      1.      The Motion is granted;

15      2.      The Debtors are directed to immediately, but no later than five (5) days

16   after entry of this Order, turn over to the Trustee, by and through his counsel Margulies

17   Faith, LLP ("MF"), $182,000, the amount listed in the Debtors' Schedule B filed on

18   February 21, 2013 (Dkt. No.11) by way of a Cashier's Check made payable to "Jeremy

19   W. Faith, Chapter 7 Trustee."

20      3.      The Debtors are directed to immediately, but no later than five (5) days

21   after entry of this Order, turn over to the Trustee by and through his counsel MF, copies

22   of all monthly bank statements and canceled checks (front and back sides), including

23   documentation for all bank records and financial statements, for the two years preceding

24   the Petition Date through the date of the hearing on the Motion (i.e., June 11, 2013) for

25   all bank accounts existing in the Debtors' name, including all individual and joint-

26   accounts.  Specifically, the Debtors are required to provide monthly bank statements and

27   cancelled checks (front and back sides) for the time period described in this paragraph

28   above.

1   4.  The Debtors are directed to immediately, but in no event later than five (5)

2 days after entry of this Order, turn over to the Trustee by and through his counsel MF,

3 copies of Debtors' 2010, 2011, and 2012 State and Federal Tax Returns.

4   **IT IS FURTHER ORDERED** that:

5   5.  The Debtors are ordered to appear and testify under oath at their 11 U.S.C.

6 § 341(a) Meeting of Creditors on July 15, 2013, at 2:30 p.m. at the Office of the United

7 States Trustee, 128 E. Carrillo Street, Santa Barbara, California and are also required to

8 appear at any and all additional continued § 341(a) Meeting of Creditors until the Trustee

9 has concluded the Section 341(a) Meeting of Creditors in this Case.

10

11

12

13 ###

14

15

16

17

18

19

20

21

22

23                _Robin Riblet_

24 Date: June 18, 2013      Robin L. Riblet
               United States Bankruptcy Judge

25

26

27

28

2

Exhibit A             Page 24
TAB 3             Page 37

## NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR TURNOVER OF PROPERTY OF THE ESTATE AND ORDER DIRECTING DEBTORS TO APPEAR AT CONTINUED 11 U.S.C. § 341(A) MEETINGS OF CREDITORS** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of <u>June 13, 2013</u>, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Howard Camhi    hcamhi@ecjlaw.com, kanthony@ecjlaw.com
Jeremy W. Faith (TR)    jfaith@7trustee.net, C118@ecfcbis.com;Helen@MarguliesFaithLaw.com;leedowding@gmail.com
Craig G Margulies    craig@marguliesfaithlaw.com,
staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
Faye C Rasch    frasch@ecjlaw.com, kanthony@ecjlaw.com
Vaughn C Taus    tauslawyer@gmail.com
Meghann A Triplett    Meghann@MarguliesFaithLaw.com, Helen@MarguliesFaithlaw.com;MF_ecf@ecf.inforuptcy.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2.   SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Debtors: Loren and Sarah Miller, 702 Whitecap Drive, Seabrook, TX 77586

☐ Service information continued on attached page

**3.   TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9021-1.1.NOTICE.ENTERED.ORDER**

Exhibit A
TAB 3

Page 25
Page 38

# Exhibit B

TAB 3                              Page 39

# VAUGHN C. TAUS
### ATTORNEY AT LAW

Telephone 805-542-0155

1042 Pacific Street, Suite D
San Luis Obispo, CA 93401
tauslawyer@gmail.com

Facsimile 805-542-0234

July 11, 2013

Craig Margulies
Margulies Faith LLP
16030 Ventura Boulevard, Suite 470
Encino, CA 91436

Re: Loren and Sarah Miller 9:13-bk-10313-RR

Dear Mr. Margulies:

I attach a variety of documents responsive to Mr. Faith's request.  My clients have purchased airplane tickets from their home in Texas to appear at the §341a meeting in Santa Barbara on July 15, 2013.

I attach my clients' cashier's check in the sum of $101,731.00, which is the balance of money in my clients' accounts.  I also attach an accounting created by my clients reflecting their expenditures since the filing of the bankruptcy case.  Mr. Miller was unemployed and had no income through April, 2013.  The Millers had to move to Texas for Mr. Miller to start his new job.

The accounting reflects initial balances totaling $170,594.  These were the actual balances at the time the emergency petition was filed in this case.  I am having my clients obtain documentation evidencing the accurate balance in accounts at the time the case was filed.  Once I have that evidence I will provide it to you and I will file amended schedules on my clients' behalf.

My clients' banking was conducted exclusively on line for the two years preceding the filing of the bankruptcy case.  They do not have statements.  However, they are attempting to obtain information concerning the accounts that is responsive to the court's order and the trustee's inquiry.

I also include complete state and federal tax returns for Mr. and Mrs. Miller, for the years 2010, 2011 and 2012.

If additional responsive information becomes available before the hearing, I will provide that information, either in advance or at the hearing, itself.

Craig Margulies
Re: Loren and Sarah Miller
July 11, 2013
Page 2 of 2

If you have any questions or comments, please do not hesitate to communicate with me.

Yours Very Truly,

Vaughn C. Taus

Enclosures
CC: Clients

| Date | Description | Amount | |
|------|-------------|--------|---|
| Jan-13 | Sarah Account | $ 100,000.00 | |
| Jan-13 | Zoe Account | $ 70,594.00 | |
| | Subtotal | $ 170,594.00 | |
| | | | |
| Jan - Apr | Mortgage – LV Home | $ 12,040.00 | |
| Jan - Apr | Rent - CA | $ 7,200.00 | |
| Mar - Apr | Rent & Deposit - TX | $ 5,025.00 | |
| Mar | Moving - CA to TX | $ 13,984.00 | Moving company |
| Mar | Moving - Travel | $ 3,000.00 | Personal Moving Costs |
| Jan - Apr | Medical Insurance Premiums | $ 2,332.00 | |
| Jan - Apr | Food & Gas | $ 2,000.00 | |
| Feb | Car Registration - CA | $ 145.00 | |
| Mar | Car Registration - TX | $ 207.00 | |
| Jan - Apr | Cell Phones | $ 976.00 | |
| Mar | Replace Water Heater - LV | $ 949.00 | |
| Mar | Replace Refrigerator Module | $ 440.00 | |
| Jan - Apr | Car Insurance | $ 585.00 | |
| Jan - Apr | Utilities (Average $200 Month) | $ 800.00 | |
| Feb | Lawyer (Taus) | $ 2,880.00 | |
| Mar | Lawyer (Taus) | $ 2,500.00 | |
| Mar | Lawyer (Sachs) | $ 3,800.00 | |
| Mar | Car Purchase (Daughter) | $ 10,000.00 | |
| | Subtotal | $ 68,863.00 | |
| | | | |
| | Total | $ 101,731.00 | Balance |

**NOTE: Unemployed from September 2012
through April 2013. No Income during this period.**

# Exhibit C

TAB 3                                    Page 43



MARGULIES FAITH LLP

AUGUST 26, 2013
Meghann@MarguliesFaithlaw.com

**Sent VIA U.S. Mail & Email**
Vaughn C. Taus
Law Offices of Vaughn C. Taus
1042 Pacific Street, Suite D
San Luis Obispo, CA 93401
Email: tauslawyer@gmail.com
Fax: (805) 542-0234

 Re: <u>In re Loren Miller and Sarah Miller, Case No. 9:13-bk-10313-RR</u>

Dear Mr. Taus:

As you know, this firm is counsel to Jeremy W. Faith, Chapter 7 Trustee ("Trustee"), in regard to the above-referenced bankruptcy case (the "Case") of Loren and Sarah Miller ("Debtors").

This letter constitutes a demand for turnover of the remaining $68,863 from the Debtors pursuant to the Turnover Order entered by the Court on June 18, 2013. As you are aware, the Debtors were required to turn over to my office on behalf of the Trustee <u>$182,000</u> in cash, the amount listed on original Schedule B no later than five (5) days after entry of the Turnover Order or on or before <u>June 23, 2013</u>.

On July 11, 2013, we received a cashier's check from your office on behalf of the Debtors in the amount of $101,731 along with a one page accounting prepared by the Debtors for their improper use of pre-petition Cash ordered to be turned over to the Trustee. The accounting includes various unauthorized expenditures from Estate funds including payments to your office in the total amount of $5,300, which were specifically ordered to be returned to the Trustee as set forth in a separate letter sent concurrently with this correspondence; $3,800 to an attorney "Sachs"; $10,000 for the purchase of a vehicle as well as other purported living and moving expenses totaling $68,863. These funds are assets of the Bankruptcy Estate and were required to be returned to the Trustee pursuant to the Court's Turnover Order.

To date, your clients have failed to make any effort and/or arrangements to turnover the remaining $68,863 pursuant to the Court's Turnover Order. Debtors must return the $68,863 <u>immediately</u> to the bankruptcy estate pursuant to their obligations under the Turnover Order or the Trustee will be left with no alternative but to move the Court to hold the Debtors in contempt.

Please contact me immediately in response to the above compliance. Thank you.

    Very truly yours,

    *Meghann Triplett*

    Meghann Triplett

cc: Jeremy W. Faith, Chapter 7 Trustee

16030 Ventura Boulevard, Suite 470, Encino, California 91436
T: 818-705-2777 | F: 818-705-3777 | www.marguliesfaithlaw.com
Exhibit C      Page 29
TAB 3       Page 44

# Exhibit D

TAB 3                                    Page 45

# VAUGHN C. TAUS
ATTORNEY AT LAW

Telephone 805-542-0155

1042 Pacific Street, Suite D
San Luis Obispo, CA 93401
tauslawyer@gmail.com

Facsimile 805-542-0234

July 29, 2013

Jeremy Faith
21550 Oxnard Street
Woodland Hills, Ca 91367

Re: Loren and Sarah Miller: Case No. 13-10313

Dear Mr. Faith:

At the Miller's §341 meeting of creditors you requested substantial additional
information from the debtors. This letter responds to those requests. Mr. Miller has
diligently attempted to gather whatever responsive documents he could. The
documents you requested often had to do with entities that have been out of business
for quite a while. For example, Mr. Miller testified about his involvment with a number
of corporate entities. These companies have, in many cases, been defunct for many
years.

Additionally, the debtors testified about their recent move to Texas so that Mr. Miller
could be re-employed, after many months of un-employment. As necessitated by such
a move, documents were either packed or if the documents were old, thrown out.

With respect to the corporate entities, Mr. Miller performed a search for information at
the office of the Nevada Secretary of State and was able to obtain the information for
each company reflected on the first attachment to this letter. In addition, Mr. Miller
provides the following narrative with respect the various entities:

a. Molinos Properties, LLC – Status Default – Owned 100% by debtor-Entity owned a
portion of Hills Center Office 1, LLC that was bankrupted by Andrew Geller in 2008.
The final tax return is attached;

b. Winmill Development, Inc. –Status Revoked – Owned 100% by debtor-Services only
corporation that never owned anything. Closed after Las Vegas real estate collapse.
The final tax return is attached;

c. Hills Center Office 1, LLC – Status Dissolved – Molinos Properties owned 21% - Hills
Center Office 1, LLC was bankrupted by Andrew Geller in 2008. Geller would have tax
returns;

Jeremy Faith
Re: Loren and Sarah Miller
July 29, 2013
Page 2 of 3

d. First Star Associates, Inc. – Status Revoked – Owned 50% - Services only
corporation that never owned anything.  Closed after Las Vegas real estate collapse.
No Tax returns (more than 5 years old);

e. Mohave Minerals & Mining, LLC – Status Permanently Revoked – Mining company
closed over 9 years ago.  No Tax returns (more than 5 years old);

F. Flamingo Cambridge, LLC – Status Permanently Revoked – Owned 33% - Sold real
estate back in 2004 and closed permanently – No Tax returns (more than 5 years old)

g. Luxin Limited – Status Revoked – Resident Agent only – Did not own any position.

Next, I forward documents from Mr. Miller that refer to six Wells Fargo accounts and
three Bank of America accounts.  The statement for Mr. Miller's Nevada Wells Fargo
Bank account ending in 0403 is separated out.

Next, I attach, as a group, statements for: Mrs. Miller's Wells Fargo Bank accounts
ending in 4710 and 8753; and Zoe Miller's Wells Fargo Bank account ending in 2685.
Next in the group, Mr. Miller only had correspondence from Wells Fargo Bank that I
attach, for the California accounts in his name ending in 9591 and 8548.  In addition, I
provide correspondence for Mr. Miller's Bank of America accounts ending in 5983, 3794
and 0765.  As indicated on the letters, these accounts were drained by Mr. Geller and
were closed after the levy.

I next attach as a packet the complete application by debtors for re-imbursement for
damages caused by Mayflower Moving Company.

I next attach policy summaries for three Principal Life Insurance Policies insuring the
lives of Mr. Miller, Mrs. Miller and Zoe Miller.

The information in this letter and the attachments provide the most complete response
the Millers are able to provide to your inquiries, at this time.  Mr. Miller will continue to
search for additional responsive material, as they continue to unpack.

In the mean time, now that I have this additional information, I am preparing amended
schedules, statement of financial affairs and a business income and expense statement
for the Nevada house rented out by the Millers.

As Mrs. Miller made emotionally clear, it is a very substantial hardship both financially
and in their lives, for the Millers to come out to California.  This is particularly so on
relatively short notice.  Therefore, it is my hope that once you have reviewed this

Jeremy Faith
Re: Loren and Sarah Miller
July 29, 2013
Page 3 of 3

response, you will be able to excuse the Millers from a further appearance.  If this is not
possible, I urge you to continue the next scheduled meeting for more than thirty days,
to at least allow the Millers to purchase airplane tickets at a reasonable price.

Thank you in advance for your consideration in this matter.

If you have any questions or comments please do not hesitate to communicate with
me.

Yours Very Truly,

Vaughn C. Taus

Enclosures

CC: Clients.

# Exhibit E

TAB 3                                          Page 49

```
                                                        PAGE:      1
                                    ACCOUNT:        120061872  09/30/2013
                                    DOCUMENTS:              0
```

```
     FIRST STAR ASSOCIATES INC                         30
     702 WHITECAP DR                                    0
     EL LAGO TX  77586-5918                             0
```

Effective December 2, 2013, the Wire Transfer fee for outbound
international wires will decrease to $40.00 per transaction.
For questions, please contact your customer service representative.

BUSINESS MONEY MARKET ACCOUNT 120061872

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ........................... | | | 08/30/13 | 3,010.96 |
| INTEREST | | .13 | 09/30/13 | 3,011.09 |
| BALANCE THIS STATEMENT ........................... | | | 09/30/13 | 3,011.09 |

```
TOTAL CREDITS      (1)           .13
TOTAL DEBITS       (0)           .00
```

- - - - - - - - - I N T E R E S T - - - - - - - - -

```
AVERAGE LEDGER BALANCE:      3,010.96  INTEREST EARNED:                    .13
AVERAGE AVAILABLE BALANCE:   3,010.96  DAYS IN PERIOD:                      31
INTEREST PAID THIS PERIOD:        .13  ANNUAL PERCENTAGE YIELD EARNED:   .05%
INTEREST PAID 2013:              6.49
```

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
**************************************************************
*                    |    TOTAL FOR   |      TOTAL         *
*                    |   THIS PERIOD  |   YEAR TO DATE     *
*-----------------------------------------------------------*
* TOTAL OVERDRAFT FEES:      |     $.00    |       $.00     *
*-----------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:  |     $.00    |       $.00     *
**************************************************************
```

```
                                       SEQ 000                          PAGE:       1
                                       ACCOUNT:        120061872  08/30/2013
                                       DOCUMENTS:              1




     FIRST STAR ASSOCIATES INC                             30
     702 WHITECAP DR                                        0
     EL LAGO TX  77586-5918                                 1


========================================================================
               BUSINESS MONEY MARKET ACCOUNT 120061872
========================================================================
       DESCRIPTION        DEBITS      CREDITS    DATE        BALANCE

BALANCE LAST STATEMENT ......................... 07/31/13    18,010.53
CHECK # 350             15,000.00                08/16/13     3,010.53
INTEREST                                    .43  08/30/13     3,010.96
BALANCE THIS STATEMENT ......................... 08/30/13     3,010.96

TOTAL CREDITS      (1)          .43
TOTAL DEBITS       (1)    15,000.00

========================================================================
                    YOUR CHECKS SEQUENCED
========================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

08/16     350   15,000.00

       - - - - - - - - I N T E R E S T - - - - - - - - -

AVERAGE LEDGER BALANCE:        10,510.53  INTEREST EARNED:             .43
AVERAGE AVAILABLE BALANCE:     10,510.53  DAYS IN PERIOD:               30
INTEREST PAID THIS PERIOD:           .43  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2013:                 6.36

      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

  ***************************************************************
  *                       |   TOTAL FOR    |     TOTAL        *
  *                       |  THIS PERIOD   |  YEAR TO DATE    *
  *-----------------------------------------------------------*
  * TOTAL OVERDRAFT FEES:  |     $.00       |     $.00         *
  *-----------------------------------------------------------*
  * TOTAL RETURNED ITEM FEES:  |  $.00       |     $.00        *
  ***************************************************************
```

```
                           REAL 000 PP           PAGE:      1
                           ACCOUNT:        120061872  07/31/2013
                           DOCUMENTS:              0
```

```
     FIRST STAR ASSOCIATES INC                       30
     702 WHITECAP DR                                  0
     EL LAGO TX  77586-5918                           0
```

```
==================================================================
            BUSINESS MONEY MARKET ACCOUNT 120061872
==================================================================
       DESCRIPTION       DEBITS      CREDITS   DATE       BALANCE

BALANCE LAST STATEMENT ............................. 06/28/13     18,009.72
INTEREST                              .81 07/31/13     18,010.53
BALANCE THIS STATEMENT ............................. 07/31/13     18,010.53

TOTAL CREDITS      (1)          .81
TOTAL DEBITS       (0)          .00

       - - - - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:      18,009.72  INTEREST EARNED:           .81
AVERAGE AVAILABLE BALANCE:   18,009.72  DAYS IN PERIOD:             33
INTEREST PAID THIS PERIOD:         .81  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2013:              5.93

       - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

*************************************************************
*                     |   TOTAL FOR   |     TOTAL         *
*                     |  THIS PERIOD  |  YEAR TO DATE      *
*---------------------------------------------------------*
* TOTAL OVERDRAFT FEES:    |     $.00      |      $.00      *
*---------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:   |     $.00      |      $.00      *
*************************************************************
```

```
                                                         PAGE:      1
                    ACCOUNT:        120061872   06/28/2013
                    DOCUMENTS:              0
```

```
      FIRST STAR ASSOCIATES INC                        30
      702 WHITECAP DR                                   0
      EL LAGO TX  77586-5918                            0
```

```
=======================================================================
                BUSINESS MONEY MARKET ACCOUNT 120061872
=======================================================================
        DESCRIPTION        DEBITS      CREDITS    DATE          BALANCE

BALANCE LAST STATEMENT ............................. 05/31/13    18,009.03
INTEREST                                 .69 06/28/13           18,009.72
BALANCE THIS STATEMENT ............................. 06/28/13    18,009.72

TOTAL CREDITS      (1)         .69
TOTAL DEBITS       (0)         .00

        - - - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:     18,009.03  INTEREST EARNED:            .69
AVERAGE AVAILABLE BALANCE:  18,009.03  DAYS IN PERIOD:              28
INTEREST PAID THIS PERIOD:        .69  ANNUAL PERCENTAGE YIELD EARNED:   .05%
INTEREST PAID 2013:              5.12

        - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

    *******************************************************************
    *                     |    TOTAL FOR   |      TOTAL          *
    *                     |   THIS PERIOD  |   YEAR TO DATE      *
    *--------------------------------------------------------------*
    * TOTAL OVERDRAFT FEES:    |      $.00      |       $.00       *
    *--------------------------------------------------------------*
    * TOTAL RETURNED ITEM FEES:    |      $.00      |       $.00   *
    *******************************************************************
```

```
                                    000           PAGE:       1
                                ACCOUNT:       120061872  05/31/2013
                                DOCUMENTS:              1
```

```
     FIRST STAR ASSOCIATES INC                          30
     702 WHITECAP DR                                      1
     EL LAGO TX  77586-5918                               0
```

```
========================================================================
    Effective June 1, 2013, the following fee change will apply to
    Business Accounts: The Non-Sufficient Funds (NSF) paid/returned
    item fee will increase to $35 from $32.50. Also the daily overdraft
    fee will apply only on business days (weekends and state/federal
    holidays are not considered business days).

========================================================================
             BUSINESS MONEY MARKET ACCOUNT 120061872
========================================================================
        DESCRIPTION        DEBITS      CREDITS    DATE       BALANCE

BALANCE LAST STATEMENT ............................. 04/30/13    17,615.03
DEPOSIT                            393.25  05/20/13    18,008.28
INTEREST                              .75  05/31/13    18,009.03
BALANCE THIS STATEMENT ............................. 05/31/13    18,009.03

TOTAL CREDITS      (2)      394.00
TOTAL DEBITS       (0)         .00

      - - - - - - - - - I N T E R E S T - - - - - - - - -

AVERAGE LEDGER BALANCE:      17,767.25  INTEREST EARNED:             .75
AVERAGE AVAILABLE BALANCE:   17,767.25  DAYS IN PERIOD:               31
INTEREST PAID THIS PERIOD:        .75  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2013:              4.43

      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

    ************************************************************
    *                     |   TOTAL FOR   |     TOTAL       *
    *                     |  THIS PERIOD  |  YEAR TO DATE   *
    *--------------------------------------------------------*
    * TOTAL OVERDRAFT FEES:  |    $.00       |    $.00        *
    *--------------------------------------------------------*
    * TOTAL RETURNED ITEM FEES:  |  $.00     |    $.00        *
    ************************************************************
```

```
                                              STATEMENT           PAGE:     1
                                              ACCOUNT:      120061872  04/30/2013
                                              DOCUMENTS:            0
```

```
     FIRST STAR ASSOCIATES INC                          30
     702 WHITECAP DR                                     0
     EL LAGO TX  77586-5918                              0
```

```
=====================================================================
     Effective June 1, 2013, the following fee change will apply to
     Business Accounts: The Non-Sufficient Funds (NSF) paid/returned
     item fee will increase to $35 from $32.50. Also the daily overdraft
     fee will apply only on business days (weekends and state/federal
     holidays are not considered business days).
=====================================================================
```

```
             BUSINESS MONEY MARKET ACCOUNT 120061872
=====================================================================
        DESCRIPTION        DEBITS      CREDITS    DATE        BALANCE

  BALANCE LAST STATEMENT ............................ 03/29/13    17,614.26
  INTEREST                              .77 04/30/13    17,615.03
  BALANCE THIS STATEMENT ............................ 04/30/13    17,615.03

  TOTAL CREDITS      (1)        .77
  TOTAL DEBITS       (0)        .00
```

```
        - - - - - - - - I N T E R E S T - - - - - - - - - -

  AVERAGE LEDGER BALANCE:      17,614.26  INTEREST EARNED:              .77
  AVERAGE AVAILABLE BALANCE:   17,614.26  DAYS IN PERIOD:                32
  INTEREST PAID THIS PERIOD:         .77  ANNUAL PERCENTAGE YIELD EARNED:  .05%
  INTEREST PAID 2013:               3.68
```

```
      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

    ***********************************************************
    *                   |    TOTAL FOR    |     TOTAL      *
    *                   |   THIS PERIOD   |  YEAR TO DATE  *
    *-------------------------------------------------------*
    * TOTAL OVERDRAFT FEES:    |     $.00     |     $.00     *
    *-------------------------------------------------------*
    * TOTAL RETURNED ITEM FEES:  |    $.00     |     $.00     *
    ***********************************************************
```

```
                                                                 PAGE:      1
                                          ACCOUNT:       120061872  03/29/2013
                                          DOCUMENTS:              1
```

```
        FIRST STAR ASSOCIATES INC                           30
        702 WHITECAP DR                                      0
        EL LAGO TX  77586-5918                               1
```

NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
transaction account ( including an IOLTA/IOLA ) will no longer receive
unlimited deposit insurance coverage, but will be FDIC-insured to the
legal maximum of $250,000 for each ownership category.
For more information, visit:
       http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                          BANK OF NEVADA
Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.

### BUSINESS MONEY MARKET ACCOUNT 120061872

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................ | | | 02/28/13 | 20,113.51 |
| CHECK # 349 | 2,500.00 | | 03/15/13 | 17,613.51 |
| INTEREST | | .75 | 03/29/13 | 17,614.26 |
| BALANCE THIS STATEMENT ............................ | | | 03/29/13 | 17,614.26 |
| TOTAL CREDITS | (1) | .75 | | |
| TOTAL DEBITS | (1) | 2,500.00 | | |

### YOUR CHECKS SEQUENCED

| DATE...CHECK #......AMOUNT | DATE...CHECK #......AMOUNT | DATE...CHECK #......AMOUNT |
|---|---|---|
| 03/15     349     2,500.00 | | |

                    * * *  C O N T I N U E D  * * *

```
                                                                  PAGE:     2
                                  ACCOUNT:        120061872  03/29/2013
                                  DOCUMENTS:               1




      FIRST STAR ASSOCIATES INC

======================================================================
            BUSINESS MONEY MARKET ACCOUNT 120061872
======================================================================

      - - - - - - - - - I N T E R E S T - - - - - - - - -

AVERAGE LEDGER BALANCE:        18,820.40  INTEREST EARNED:                 .75
AVERAGE AVAILABLE BALANCE:     18,820.40  DAYS IN PERIOD:                   29
INTEREST PAID THIS PERIOD:          .75   ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2013:               2.91

      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

***********************************************************************
*                        |     TOTAL FOR    |       TOTAL         *
*                        |    THIS PERIOD   |    YEAR TO DATE      *
*------------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:   |       $.00       |       $.00          *
*------------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:|      $.00       |       $.00          *
***********************************************************************
```

```
                                                                 PAGE:      1
                                         ACCOUNT:      120061872 02/28/2013
                                         DOCUMENTS:              4




         FIRST STAR ASSOCIATES INC                          30
         239 ESPARTO AVE                                     0
         PISMO BEACH CA  93449-1916                          4


=================================================================================
         NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
         transaction account ( including an IOLTA/IOLA ) will no longer receive
         unlimited deposit insurance coverage, but will be FDIC-insured to the
         legal maximum of $250,000 for each ownership category.
         For more information, visit:
             http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                            BANK OF NEVADA
         Effective 3/28/11, our funds availability policy has changed. Our policy
         to make funds from deposits available to you generally on the first
         business day after the date we receive your deposit has not changed.
         However, if we must postpone availability of funds you deposit by check,
         we have increased the amount that may be made available to you on the
         first business day after your deposit date from $100 to $200.

=================================================================================
             BUSINESS MONEY MARKET ACCOUNT 120061872
=================================================================================
         DESCRIPTION              DEBITS      CREDITS   DATE        BALANCE

BALANCE LAST STATEMENT ...........................  01/31/13     29,012.63
CHECK # 345                     2,400.00            02/05/13     26,612.63
CHECK # 346                     2,000.00            02/07/13     24,612.63
CHECK # 347                     3,000.00            02/07/13     21,612.63
CHECK # 348                     1,500.00            02/26/13     20,112.63
INTEREST                                      .88  02/28/13     20,113.51
BALANCE THIS STATEMENT ...........................  02/28/13     20,113.51

TOTAL CREDITS      (1)              .88
TOTAL DEBITS       (4)         8,900.00


=================================================================================
             YOUR CHECKS SEQUENCED
=================================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

02/05     345    2,400.00 02/07      347    3,000.00
02/07     346    2,000.00 02/26      348    1,500.00
                         * * * C O N T I N U E D * * *
```

```
                                                              PAGE:       2
                                   ACCOUNT:       120061872   02/28/2013
                                   DOCUMENTS:           4
```

FIRST STAR ASSOCIATES INC

```
================================================================
           BUSINESS MONEY MARKET ACCOUNT 120061872
================================================================
```

```
- - - - - - - - - - - I N T E R E S T - - - - - - - - - -
```

```
AVERAGE LEDGER BALANCE:       22,866.20  INTEREST EARNED:                   .88
AVERAGE AVAILABLE BALANCE:    22,866.20  DAYS IN PERIOD:                     28
INTEREST PAID THIS PERIOD:         .88   ANNUAL PERCENTAGE YIELD EARNED:   .05%
INTEREST PAID 2013:               2.16
INTEREST PAID 2012:              17.71
```

```
     - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -
```

```
  ********************************************************************
  *                       |   TOTAL FOR   |      TOTAL           *
  *                       |  THIS PERIOD  |   YEAR TO DATE       *
  *----------------------------------------------------------------*
  * TOTAL OVERDRAFT FEES:  |     $.00      |     $.00            *
  *----------------------------------------------------------------*
  * TOTAL RETURNED ITEM FEES: |  $.00      |     $.00            *
  ********************************************************************
```

```
                                                000         PAGE:      1
                                ACCOUNT:         120061872  01/31/2013
                                DOCUMENTS:               1




       FIRST STAR ASSOCIATES INC                        30
       239 ESPARTO AVE                                   0
       PISMO BEACH CA  93449-1916                        1


===================================================================
       NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
       transaction account ( including an IOLTA/IOLA ) will no longer receive
       unlimited deposit insurance coverage, but will be FDIC-insured to the
       legal maximum of $250,000 for each ownership category.
       For more information, visit:
           http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                           BANK OF NEVADA
       Effective 3/28/11, our funds availability policy has changed. Our policy
       to make funds from deposits available to you generally on the first
       business day after the date we receive your deposit has not changed.
       However, if we must postpone availability of funds you deposit by check,
       we have increased the amount that may be made available to you on the
       first business day after your deposit date from $100 to $200.

===================================================================
                 BUSINESS MONEY MARKET ACCOUNT 120061872
===================================================================
         DESCRIPTION          DEBITS       CREDITS   DATE        BALANCE

BALANCE LAST STATEMENT ...........................  12/31/12    30,511.35
CHECK # 344                   1,500.00              01/25/13    29,011.35
INTEREST                                     1.28   01/31/13    29,012.63
BALANCE THIS STATEMENT ...........................  01/31/13    29,012.63

TOTAL CREDITS       (1)          1.28
TOTAL DEBITS        (1)      1,500.00

===================================================================
                      YOUR CHECKS SEQUENCED
===================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

01/25    344    1,500.00
                 * * *  C O N T I N U E D  * * *
```

```
                                                          PAGE:      2
                                        ACCOUNT:       120061872  01/31/2013
                                        DOCUMENTS:            1
```

FIRST STAR ASSOCIATES INC

```
=====================================================================
                BUSINESS MONEY MARKET ACCOUNT 120061872
=====================================================================
```

- - - - - - - - - - I N T E R E S T - - - - - - - - - - -

```
AVERAGE LEDGER BALANCE:         30,172.64  INTEREST EARNED:                   1.28
AVERAGE AVAILABLE BALANCE:      30,172.64  DAYS IN PERIOD:                      31
INTEREST PAID THIS PERIOD:           1.28  ANNUAL PERCENTAGE YIELD EARNED:    .05%
INTEREST PAID 2013:                  1.28
INTEREST PAID 2012:                 17.71
```

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
*******************************************************************
*                     | TOTAL FOR  |    TOTAL    |  PREVIOUS    *
*                     | THIS PERIOD | YEAR TO DATE | YEAR TOTAL  *
*---------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:    |      $.00 |      $.00 |      $.00 *
*---------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES: |      $.00 |      $.00 |      $.00 *
*******************************************************************
```

```
            000              PAGE:     1
            ACCOUNT:    120061872  12/31/2012
            DOCUMENTS:          0
```

```
      FIRST STAR ASSOCIATES INC                    30
      239 ESPARTO AVE                               0
      PISMO BEACH CA  93449-1916                    0
```

=================================================================================
NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
transaction account ( including an IOLTA/IOLA ) will no longer receive
unlimited deposit insurance coverage, but will be FDIC-insured to the
legal maximum of $250,000 for each ownership category.
For more information, visit:
     http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                      BANK OF NEVADA
Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.

=================================================================================
                 BUSINESS MONEY MARKET ACCOUNT 120061872
=================================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................ | | | 11/30/12 | 31,510.02 |
| TELEPHONE TRANSFER REQUEST C/S | 1,000.00 | | 12/28/12 | 30,510.02 |
| INTEREST | | 1.33 | 12/31/12 | 30,511.35 |
| BALANCE THIS STATEMENT ............................ | | | 12/31/12 | 30,511.35 |
| | | | | |
| TOTAL CREDITS | (1) | 1.33 | | |
| TOTAL DEBITS | (1) | 1,000.00 | | |

          - - - - - - - - - - I N T E R E S T - - - - - - - - - - -

AVERAGE LEDGER BALANCE:         31,380.98  INTEREST EARNED:                 1.33
AVERAGE AVAILABLE BALANCE:      31,380.98  DAYS IN PERIOD:                    31
INTEREST PAID THIS PERIOD:           1.33  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2012:                 17.71
                    * * *  C O N T I N U E D  * * *

Exhibit E                                            Page 45
TAB 3                                                Page 62

PAGE:      2
ACCOUNT:       120061872   12/31/2012
DOCUMENTS:               0

FIRST STAR ASSOCIATES INC

===================================================================
                BUSINESS MONEY MARKET ACCOUNT 120061872
===================================================================

        - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

****************************************************************
*                          |   TOTAL FOR   |     TOTAL        *
*                          |  THIS PERIOD  |  YEAR TO DATE     *
*-------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:     |    $.00       |     $.00         *
*-------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES: |    $.00       |     $.00         *
****************************************************************

```
                                                            PAGE:        1
                                         ACCOUNT:     120061872  11/30/2012
                                         DOCUMENTS:           1
```

```
        FIRST STAR ASSOCIATES INC                             30
        239 ESPARTO AVE                                        0
        PISMO BEACH CA  93449-1916                             1
```

===============================================================================

NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
transaction account ( including an IOLTA/IOLA ) will no longer receive
unlimited deposit insurance coverage, but will be FDIC-insured to the
legal maximum of $250,000 for each ownership category.
For more information, visit:
     http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                     BANK OF NEVADA
Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.

===============================================================================
                BUSINESS MONEY MARKET ACCOUNT 120061872
===============================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ........................... | | | 10/31/12 | 32,008.72 |
| CHECK # 343 | 500.00 | | 11/02/12 | 31,508.72 |
| INTEREST | | 1.30 | 11/30/12 | 31,510.02 |
| BALANCE THIS STATEMENT ........................... | | | 11/30/12 | 31,510.02 |

```
TOTAL CREDITS     (1)        1.30
TOTAL DEBITS      (1)      500.00
```

===============================================================================
                     YOUR CHECKS SEQUENCED
===============================================================================

DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

```
11/02    343      500.00
                  * * *  C O N T I N U E D  * * *
```

```
                                              PAGE:      2
                        ACCOUNT:         120061872  11/30/2012
                        DOCUMENTS:               1
```

FIRST STAR ASSOCIATES INC

```
==============================================================================
                 BUSINESS MONEY MARKET ACCOUNT 120061872
==============================================================================

      - - - - - - - - - - I N T E R E S T - - - - - - - - - - -

AVERAGE LEDGER BALANCE:       31,525.38  INTEREST EARNED:                1.30
AVERAGE AVAILABLE BALANCE:    31,525.38  DAYS IN PERIOD:                   30
INTEREST PAID THIS PERIOD:         1.30  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2012:               16.38

      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

****************************************************************
*                      |         TOTAL FOR   |       TOTAL       *
*                      |       THIS PERIOD   |   YEAR TO DATE    *
*----------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:   |        $.00      |        $.00       *
*----------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:  |     $.00      |        $.00       *
****************************************************************
```

```
                                                              PAGE:    1
                               ACCOUNT:          120061872  10/31/2012
                               DOCUMENTS:              1
```

```
      FIRST STAR ASSOCIATES INC                            30
      239 ESPARTO AVE                                       0
      PISMO BEACH CA  93449-1916                            1
```

```
==============================================================================
                             BANK OF NEVADA
     Effective 3/28/11, our funds availability policy has changed. Our policy
     to make funds from deposits available to you generally on the first
     business day after the date we receive your deposit has not changed.
     However, if we must postpone availability of funds you deposit by check,
     we have increased the amount that may be made available to you on the
     first business day after your deposit date from $100 to $200.
```

```
==============================================================================
                 BUSINESS MONEY MARKET ACCOUNT 120061872
==============================================================================
      DESCRIPTION           DEBITS      CREDITS   DATE         BALANCE

BALANCE LAST STATEMENT ............................. 09/28/12    44,086.94
TELEPHONE TRANSFER REQUEST C/S 4,000.00              10/09/12    40,086.94
CHECK # 342              8,080.00                    10/24/12    32,006.94
INTEREST                                     1.78 10/31/12       32,008.72
BALANCE THIS STATEMENT ............................. 10/31/12    32,008.72

TOTAL CREDITS      (1)          1.78
TOTAL DEBITS       (2)     12,080.00
```

```
==============================================================================
                         YOUR CHECKS SEQUENCED
==============================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

10/24    342    8,080.00
```

```
            - - - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:        39,340.27  INTEREST EARNED:              1.78
AVERAGE AVAILABLE BALANCE:     39,340.27  DAYS IN PERIOD:                 33
INTEREST PAID THIS PERIOD:          1.78  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2012:                15.08
                   * * *  C O N T I N U E D  * * *
```

```
                                                             PAGE:      2
                          ACCOUNT:          120061872  10/31/2012
                          DOCUMENTS:                 1
```

FIRST STAR ASSOCIATES INC

```
==============================================================================
                BUSINESS MONEY MARKET ACCOUNT 120061872
==============================================================================

     - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

*******************************************************************************
*                            |    TOTAL FOR    |      TOTAL         *
*                            |   THIS PERIOD   |   YEAR TO DATE      *
*-------------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:       |      $.00       |      $.00          *
*-------------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:   |      $.00       |      $.00          *
*******************************************************************************
```

```
                                         8021000PBA6       PAGE:      1
                                    ACCOUNT:      120061872  09/28/2012
                                    DOCUMENTS:           1
```

```
      FIRST STAR ASSOCIATES INC                          30
      239 ESPARTO AVE                                      0
      PISMO BEACH CA  93449-1916                           1
```

========================================================================
                         BANK OF NEVADA
      Effective 3/28/11, our funds availability policy has changed. Our policy
      to make funds from deposits available to you generally on the first
      business day after the date we receive your deposit has not changed.
      However, if we must postpone availability of funds you deposit by check,
      we have increased the amount that may be made available to you on the
      first business day after your deposit date from $100 to $200.

========================================================================
             BUSINESS MONEY MARKET ACCOUNT 120061872
========================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ........................... | | | 08/31/12 | 45,075.21 |
| CHECK # 341 | 990.00 | | 09/27/12 | 44,085.21 |
| INTEREST | | 1.73 | 09/28/12 | 44,086.94 |
| BALANCE THIS STATEMENT ........................... | | | 09/28/12 | 44,086.94 |

```
      TOTAL CREDITS      (1)        1.73
      TOTAL DEBITS       (1)      990.00
```

========================================================================
                      YOUR CHECKS SEQUENCED
========================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

09/27    341     990.00

- - - - - - - - - - I N T E R E S T - - - - - - - - - -

```
      AVERAGE LEDGER BALANCE:        45,004.49  INTEREST EARNED:                  1.73
      AVERAGE AVAILABLE BALANCE:     45,004.49  DAYS IN PERIOD:                     28
      INTEREST PAID THIS PERIOD:          1.73  ANNUAL PERCENTAGE YIELD EARNED:   .05%
      INTEREST PAID 2012:                13.30
                      * * * C O N T I N U E D * * *
```

```
                                                              PAGE:       2
                               ACCOUNT:        120061872   09/28/2012
                               DOCUMENTS:              1




     FIRST STAR ASSOCIATES INC

==================================================================
              BUSINESS MONEY MARKET ACCOUNT 120061872
==================================================================

      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

*****************************************************************
*                         |   TOTAL FOR   |     TOTAL        *
*                         |  THIS PERIOD  |  YEAR TO DATE     *
*------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:    |     $.00      |      $.00         *
*------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:|     $.00      |      $.00         *
*****************************************************************
```

# Exhibit F

TAB 3                                    Page 70

Entity Details - Secretary of State, Nevada                                    Page 1 of 2

Home | About Ross | Calendar | News | FAQ | Forms | Contact Us

Search...

| | | | | | |
|---|---|---|---|---|---|
| Home | Information Center | Election Center | Business Center | Licensing Center | Securities Center | Online Services |

My Data Reports   Commercial Recordings   Licensing

# FIRST STAR ASSOCIATES, INC.

| New Search | Printer Friendly | Calculate Reinstatement Fees |
|---|---|---|

**Business Entity Information**

| | | | |
|---|---|---|---|
| Status: | Revoked | File Date: | 3/10/1997 |
| Type: | Domestic Corporation | Entity Number: | C4844-1997 |
| Qualifying State: | NV | List of Officers Due: | 3/31/2010 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV19971121930 | Business License Exp: | |

**Registered Agent Information**

| | | | |
|---|---|---|---|
| Name: | LOREN MILLER | Address 1: | 11356 MERCADO PEAK DRIVE |
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89135 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

View all business entities under this registered agent

**Financial Information**

| | | | |
|---|---|---|---|
| No Par Share Count: | 25,000.00 | Capital Amount: | $ 0 |
| No stock records found for this company | | | |

**Officers**                                    ☒ Include Inactive Officers

**President - LOREN C MILLER**

| | | | |
|---|---|---|---|
| Address 1: | 11356 MERADO PEAK DRIVE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89135 | Country: | |
| Status: | Active | Email: | |

**Secretary - LOREN C MILLER**

| | | | |
|---|---|---|---|
| Address 1: | 11356 MERADO PEAK DRIVE | Address 2: | |
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89135 | Country: | |
| Status: | Active | Email: | |

Exhibit F                                    Page 53

TAB 3                                    Page 71

# PROOF OF SERVICE OF DOCUMENT

⌐⌐I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **OPPOSITION OF JEREMY W. FATIH, CHAPTER 7 TRUSTEE, TO DEBTOR LOREN MILLER'S MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF TEXAS; REQUEST FOR HEARING; AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 10, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Howard Camhi    hcamhi@ecjlaw.com, kanthony@ecjlaw.com
Mark D Estle    mark.estle@buckleymadole.com
Jeremy W. Faith (TR)    jfaith@7trustee.net, C118@ecfcbis.com;Helen@MarguliesFaithLaw.com;leedowding@gmail.com
Robert E Hurlbett    bob@hurlbettlaw.com, reed@hurlbettlaw.com
Craig G Margulies    craig@marguliesfaithlaw.com,
staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
Faye C Rasch    frasch@ecjlaw.com, kanthony@ecjlaw.com
Vaughn C Taus    tauslawyer@gmail.com
Meghann A Triplett    Meghann@MarguliesFaithlaw.com,
Helen@MarguliesFaithLaw.com;MF_ecf@ecf.inforuptcy.com;Marta@MarguliesFaithLaw.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On December 10, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Robin L. Riblet, U.S. Bankruptcy Judge, 1415 State Street, Santa Barbara, CA 93101
Debtor: Loren Miller and Sarah Miller, 702 Whitecap Drive, Seabrook, TX 77586
Debtor: Loren Miller 600 E. Medical Center Blvd. #1509. Webster, TX

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 10, 2013 | Helen Cardoza | /s/ Helen Cardoza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

TAB 3                    Page 72

TAB 4

1 | CRAIG MARGULIES (State Bar No. 185925)
MEGHANN TRIPLETT (State Bar No. 268005)
2 | **MARGULIES FAITH, LLP**
16030 Ventura Blvd., Suite 470
3 | Encino California 91436
Telephone: (818) 705-2777
4 | Facsimile:  (818) 705-3777
Email:  Craig@MarguliesFaithLaw.com
5 | Email:  Meghann@MarguliesFaithLaw.com

6 | Attorneys for Jeremy W. Faith, Chapter 7 Trustee

7 |

8 | **UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
9 | **NORTHERN DIVISION**

10 |

11 | In re                                    Case No.:  9:13-bk-10313-RR

12 | LOREN MILLER and SARAH MILLER,           Chapter:  7

13 |                            Debtors.

14 |                                          **OPPOSITION OF JEREMY W. FAITH,
CHAPTER 7 TRUSTEE, TO DEBTOR
15 |                                          LOREN MILLER'S MOTION TO CONVERT
CASE TO CHAPTER 11; REQUEST FOR
16 |                                          HEARING; AND DECLARATIONS IN
SUPPORT THEREOF**

17 |                                          <u>Hearing</u>
Date:      TBD
18 |                                          Time:      TBD
Place:     Courtroom 201
19 |                                                     1415 State Street
                                                     Santa Barbara, CA 93101
20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

TAB 4                                                          Page 73

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   RELEVANT BACKGROUND .............................................................................2

   A.   341(a) Meeting of Creditors.............................................................................3

   B.   Debtor's First Conversion Motion (Chapter 13) ............................................3

   C.   Trustee's Turn Over Motion ...........................................................................3

   D.   Trustee's Complaint to Deny Debtor's Discharge...........................................5

   E.   Turn Over of Undisclosed Stock ...................................................................6

III.  LEGAL ANALYSIS .............................................................................................9

   A.   The Motion Is Not Brought In Good Faith......................................................9

   B.   Conversion Would Constitute An Abuse Of Process .....................................10

V.    CONCLUSION ...................................................................................................11

DECLARATION OF JEREMY W. FAITH ..................................................................12

i

TAB 4                                    Page 74

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Page**

Marrama v. Citizens Bank,
   549 U.S. 365, 373-74 (2007) ...................................................................9, 10


**STATUES**                                                                                        **Page**

11 U.S.C. § 101 *et seq.* ...........................................................................2

11 U.S.C. § 105 .........................................................................................10

11 U.S.C. § 109(e) ................................................................................3, 13

11 U.S.C. § 341(a) ..........................................................................1, 3, 9, 13

11 U.S.C. § 706(a) .....................................................................................9

11 U.S.C. § 706 .........................................................................................10

11 U.S.C. § 706(d) .....................................................................................9

11 U.S.C. § 727 *et seq.* ........................................................................5, 15

11 U.S.C. § 1112(a) ...............................................................................8, 18

28 U.S.C. § 1412 ...................................................................................8, 18

Federal Rule of Bankruptcy Procedure 1014 ....................................8, 18

ii

TAB 4                                                           Page 75

1  **TO THE HONORABLE ROBIN L. RIBLET, UNITED STATES BANKRUPTCY JUDGE;**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTORS; AND ALL**

3  **PARTIES IN INTEREST:**

4       Jeremy W. Faith, Chapter 7 Trustee herein (the "Trustee") hereby submits this

5  opposition to the motion of Loren Miller, Chapter 7 debtor[1] (the "Debtor") in the above-

6  captioned case (the "Case") to Convert the Debtors' Chapter 7 Case to a Case under

7  Chapter 11 (the "Motion," Dkt. No. 79).

8                                                    **I.**

9                                          **INTRODUCTION**

10      Debtor Loren Miller's request to convert chapter 7 to chapter 11 is yet another bad

11  faith tactic by Debtors in this Case.  There is no evidence in support of the skeletal form

12  Motion and there appears to be no purpose to the Motion other than Debtor's desire to

13  avoid cooperating with the Trustee in the administration of this Case.

14      For more than ten months, Debtors have engaged in a pattern of delay,

15  interference, and bad faith in this Case, including a prior attempt at conversion of the

16  Case to Chapter 13.  The Trustee has substantial evidence that the Debtors have

17  concealed, depleted, and intentionally undervalued assets of the Estate and are not

18  eligible to be debtors in possession.  To date, among other things, the Debtors have

19  failed to fully comply with the Court's Order on the Trustee's Motion for Turnover

20  ("Turnover Order," Dkt. No. 54). The Trustee was also forced to obtain a court order

21  compelling the Debtors to appear at their section 341(a) meeting of creditors and

22  recently Debtor improperly failed to appear at a continued 341(a) meeting, failed to file

23  complete and accurate bankruptcy schedules, failed to provide the Trustee with certain

24  requested documents, and intentionally concealed property of the Estate.  Moreover, the

25  Trustee is informed that the Debtors are now separated and that co-debtor Sarah Miller

26  is not a signatory to the Motion and that she opposes the Motion and requests that it be

27  denied.

28  _____
[1] Co-Debtor Sarah Miller is not a signatory to the Motion.

1    Based upon the foregoing and as further detailed below, the Motion should be

2    denied.

3                                                    II.

4                                    **RELEVANT BACKGROUND**

5            The Debtors commenced their bankruptcy case by filing a voluntary petition for

6    relief under Chapter 7 of 11 U.S.C. § 101 *et seq.* of the United States Code (the

7    "Bankruptcy Code") on February 7, 2013 ("Petition Date").  Jeremy W. Faith was

8    subsequently appointed as the duly qualified and acting trustee of the Debtors'

9    bankruptcy estate in which capacity he continues to serve.

10           The Case has been pending for more than ten months before this Court and the

11   Trustee has engaged in significant work to recover assets on behalf of the Estate

12   including the recovery of over $212,286.59 in cash for the benefit of creditors.

13           The Trustee continues, through the assistance of counsel, to recover additional

14   assets on behalf of the Estate, including but not limited to, the continued investigation of

15   undisclosed personal property assets, recovery of transferred cash, and the liquidation of

16   the Debtors' non-exempt interest in certain life insurance policies held by Principal

17   Financial Life Insurance.

18           On the Petition Date, Debtors only filed a "Skeletal Petition" and failed to file any

19   schedules or other documents.  On February 21, 2013, Debtors filed their Summary of

20   Schedules, Statistical Summary of Certain Liabilities, Schedules A-J, Small Business

21   Monthly Operating Report for filing period, Declaration concerning debtors' schedules,

22   Statement of Financial Affairs, Disclosure of Compensation of Attorney for Debtor,

23   Declaration of attorneys limited scope of appearance, Debtor's Certification of

24   Employment Income, Chapter 7 Statement of Current Monthly Income and Means Test

25   Calculation - Form 22A, Statement of Intent, verification of creditor matrix and Statement

26   of related cases (Dkt. No. 11).

27           The Debtors' Original Schedule B disclosed $182,000 in cash on hand held by the

28   Debtors as of the Petition Date (the "Cash").

**A. 341(a) Meeting of Creditors**

Debtors' initial Section 341(a) meeting of creditors was held on March 18, 2013. Debtors failed to appear for their examination. Debtors failed to appear at four additional continued Section 341(a) meetings on April 8, 2013, April 29, 2013, May 20, 2013, and June 10, 2013. In fact, Debtors have never voluntarily appeared for a single Section 341(a) meeting of creditors, or produce any documents to the Trustee.

Ultimately, the Court issued an Order requiring the appearances of the Debtors at the July 20, 2013 meeting of creditors and all further continued meetings of creditors (Dkt. No. 54). Debtors appeared and were examined at the July 20, 2013 meeting ("July 20 Meeting"). However, Debtor Loren Miller has again failed to appear at a required meeting of creditors on November 18, 2013 in violation of this Court's Order.[2]

**B. Debtor's First Conversion Motion (Chapter 13)**

On April 4, 2013, the Trustee sent Debtors a letter demanding turnover of the nonexempt Cash in the Debtors' possession. In response, on April 5, 2013, the Debtors filed a Motion to Convert the Chapter 7 Case to a Chapter 13 Case ("Motion to Convert to Chapter 13"). On April 10, 2013, the Trustee filed his *Opposition and Request for Hearing on Debtors' Motion to Convert Case to Chapter 13; Declaration of Jeremy W. Faith in Support Thereof* ("Opposition," Dkt. No. 18). The Debtors were not ineligible for relief under Chapter 13 pursuant to 11 U.S.C. § 109(e). The Trustee also highlighted the fact that the Motion to Convert to Chapter 13 was filed in bad faith as a delay tactic. The Trustee was forced to file the Opposition, and on June 4, 2013, less than one week prior to the scheduled hearing date, the Debtors filed a Notice of Withdrawal of the Motion to Convert to Chapter 13 (Dkt. No. 40).

**C. Trustee's Turn Over Motion**

On May 9, 2013, Trustee's counsel sent another letter requesting turnover of the Cash but again received no response. On May 15, 2013, the Trustee was forced to file

---

[2] Co-Debtor Sarah Miller reached an agreement with the Trustee prior to the continued November 18, 2013 meeting and her appearance was excused by the Trustee.

1    a Motion for Turnover of the Cash; and Directing Debtors to Appear at the Meeting of

2    Creditors (the "Turnover Motion," Dkt No. 31).  A hearing on the Turnover Motion was

3    held on June 11, 2013.  On June 18, 2013, the Court entered an Order granting the

4    Turnover Motion in its entirety (the "Turnover Order," Dkt No. 54).  A true and correct

5    copy of the Turnover Order is attached hereto as **Exhibit A** and incorporated herein by

6    this reference.

7           The Turnover Order required that the Debtors on or before June 23, 2013, turn

8    over to the Trustee the $182,000 in Cash as listed on Schedule B.  Although specifically

9    directed by the Court to comply with the Trustee's requests pursuant to the Turnover

10   Order, Debtors refused for many months to fully comply with the turnover.

11          On July 12, 2013, eighteen days after the deadline set forth in the Turnover Order

12   and numerous demands[3] for turnover by Trustee's counsel, the Trustee received a

13   cashier's check in the amount of $101,731.00 from the Debtors along with a one page

14   accounting (the "Accounting") of how they used up $68,000 of the Cash in the

15   approximate five months since the Petition Date.  A true and correct copy of the letter

16   from Mr. Taus on behalf of Debtors dated July 11, 2013 and attached one-page

17   Accounting is attached hereto as **Exhibit B** and incorporated herein by this reference.

18          The Accounting reflects payments for the following during the period of January

19   2013 through March 2013 from the $182,000 in Cash ordered to be turned over by the

20   Court:

21   - $12,040 – Mortgage payments on Debtors' Las Vegas home
     - $7,200 – Rent for their home in California
22   - $5,025 – Rent and Deposit for Debtors' new home in Texas
     - $13,984.00 – Paid to Moving Company for move from California to Texas
23   - $3,000 – Moving travel expenses
     - $2,232 – Medical insurance premiums
24   - $2,000 – Food and gas
     - $145 – Car registration California
25   - $207 – Car registration Texas
     - $976 – Cell phones
26   - $949 – Replace water heater in Las Vegas Home
     - $440 – Replace refrigerator module

27   ───────────────────────────

28   [3] True and correct copies of the demand letters relating to the turnover sent by Trustee's counsel to the
     Debtors are attached hereto as **Exhibit C** and incorporated herein by this reference.

- $585 – Car insurance
- $800 – Utilities (average $200 month)
- $5,800 – payments to Lawyer Taus
- $3,800 – payments to Lawyer Sachs
- $10,000 – Car purchase (daughter)

Subtotal: $68,863.00

*See* Exhibit B.   Other than the "Accounting," the Debtors failed to provide any bank records or documentary evidence to support these unauthorized expenditures from the Cash.   These expenditures were unauthorized and do not excuse the Debtors from complying with this Court's Turnover Order in its entirety and returning the full $182,000 to the Estate.

On August 9, 2013, Debtors filed Amended Schedules B, C and Statement of Financial Affairs ("Amended SOFA") (Dkt. No. 64).   The Amended SOFA at paragraph 18, listed the Debtors' interest in three previously undisclosed limited liability companies.

On August 26, 2013, counsel for the Trustee sent Debtors, through their counsel Vaughn C. Taus, a renewed demand for full compliance with the Turnover Order and requiring turnover of the remaining $80,269 from the Debtors.   A true and correct copy of the August 26, 2013 letter is attached hereto as **Exhibit C** and incorporated herein by this reference.

As detailed below, just recently in November 2013, co-Debtor Sarah Miller, by and through communications with her new counsel, has sought to cooperate with the Trustee and she has turned over certain cash items.   Co-Debtor Loren Miller still remains recalcitrant and refusing to comply with Court orders, duties under the Bankruptcy Code, or any requests by the Trustee and his counsel.

**D. Trustee's Complaint to Deny Debtors' Discharge**

On or about August 15, 2013, the Trustee filed a Complaint against Debtors for Denial of Discharge under 11 U.S.C. § 727 *et seq.*, Adversary Proceeding No. 9:13-ap-01133-RR (the "Discharge Adversary Proceeding").

1       On October 16, 2013, Debtors filed an Answer to the Discharge Adversary

2   Proceeding denying the allegations therein.  The Discharge Adversary Proceeding is set

3   for a pre-trial conference on February 25, 2014 at 11:00 a.m.

4       As provided above, on or about November 5, 2013, Co-Debtor Sarah Miller

5   retained new counsel in the Discharge Adversary Proceeding and entered into

6   discussions regarding cooperation with the Trustee in the administration of this Case and

7   possible settlement of outstanding issues in the Case and Discharge Adversary

8   Proceeding as to Sarah Miller.

9   **E.  <u>Turn Over of Undisclosed Stock</u>**

10      On or about November 15, 2013, Sarah Miller disclosed to the Trustee (through

11  her new counsel) a stock account not previously disclosed by the Debtors.  The Trustee

12  and Sarah Miller (by and through counsel) arranged for the liquidation and turnover of

13  this undisclosed stock holdings account at the Bank of Montreal, Quebec (the "Stock

14  Holdings").  The value of the Stock Holdings as of November 12, 2013 was $31,269.35.

15  Sarah Miller agreed to and has now liquidated and turned over the liquidated balance of

16  the Stock Holdings account to the Trustee.

17      Co-Debtor Sarah Miller also holds a joint bank account with Debtors' minor

18  daughter Zoe Miller at JSC Federal Credit Union, Account No. Ending in 5193 ("Zoe

19  Miller Bank Account").  The balance of the Zoe Miller Bank Account as of November 13,

20  2013 was $76,145.45. The funds in the Zoe Miller Bank Account were transferred from a

21  pre-petition bank account at Wells Fargo and were listed on Debtors Original Schedule

22  B.  The funds in the Zoe Miller Bank Account were also ordered by the Court to be

23  turned over to the Trustee as part of the Cash pursuant to the Turnover Order.  On or

24  about November 18, 2013, pursuant to the Trustee's communications with Sarah Miller

25  through her new counsel in the Discharge Adversary Proceeding, the Trustee received a

26  wire transfer of $76,145.45.[4]

27  _____
    [4] Although the recent turnover of the approximate $76,145.45 by co-debtor Sarah Miller from the Zoe

28  Miller Bank Account technically provides the remaining Cash disclosed on Debtors' Original Schedule B
    and required to be turned over by this Court's Turnover Order, there is no explanation for the additional

1   The Trustee's investigation has also revealed that the Debtors knowingly

2 significantly undervalued their personal property on their bankruptcy schedules in an

3 apparent attempt to "sneak by" in a Chapter 7 and discharge their debts while avoiding

4 the liquidation of their assets for the benefit of creditors.  Notably, the Debtors failed to

5 disclose all entities in which they have an ownership interest, including but not limited

6 to First Star Associates, Inc ("First Star").

7   On July 29, 2013, in response to the Trustee's request for documents and

8 additional information on First Star which was brought to light at the July 20 Meeting, Mr.

9 Taus, on behalf of Debtors, sent a letter to the Trustee, detailing the Debtors' interest in

10 First Star among other allegedly defunct corporate entities of the Debtors.  A true and

11 correct copy of the July 29, 2013 letter is attached hereto as **Exhibit D** and is

12 incorporated herein by this reference.  The July 29th letter provides as follows:

> d.  First Star Associates, Inc.  – Status Revoked – Owned
> 50% -- Services only corporation that never owned anything.
> Closed after Las Vegas real estate collapse.  No tax returns
> (more than 5 years old). `

15  First Star is not listed as an asset on the Debtors' amended bankruptcy schedules

16 (Dkt. No. 64).

17   On or about October 17, 2013, the Trustee received copies of the First Star bank

18 statements and cancelled checks from Bank West of Nevada in response to a subpoena

19 issued by the Trustee after it was discovered that an active bank account existed for

20 First Star and that Debtor Loren Miller was writing checks from this account for his own

21 personal benefit.  True and correct copies of the First Star bank records received by the

22 Trustee pursuant to his subpoena are attached hereto as **Exhibit E** (the "First Star Bank

23 Records").

24 ///

25 ///

26

27 $68,863.00 in pre-petition Cash spent by the Debtors as detailed above which was never turned over to
the Trustee.  Furthermore, the Trustee is still in the process of obtaining all of Debtors bank records to
28 confirm all pre-petition cash and bank accounts were disclosed and accounted for.

1       The First Star Bank Records reflect that Mr. Miller has been using a bank account

2    in the name of First Star solely for his own personal benefit for at least the two years

3    preceding the Petition Date.  Furthermore, the First Star Bank Records show that the

4    account had at least $24,612.63 in it as of the Petition Date and had as much as

5    $44,086.94 in September 2012.  The Trustee believes that these funds are additional

6    undisclosed monies, which are separate from the Cash disclosed on Schedule B and

7    ordered by the Court to be turned over to the Trustee.  The First Star Bank Records also

8    reflect that the Debtors changed the address on the bank account to their new personal

9    address in Texas.  This is directly at odds with the Debtors' testimony at the July 20

10    Meeting that Debtors did not have knowledge of any monies in the First Star Bank

11    Account and did not control the account.  Furthermore, the Nevada corporate records for

12    First Star do not show any other members or offices and reflect that the capital amount

13    for the corporation's 25,000 shares was $0.00.  A true and correct copy of the First Star

14    business entity detail from the Nevada Secretary of State Website is attached hereto as

15    **Exhibit F.**

16       On November 26, 2013, Debtor Loren Miller (pro se) filed the instant form Notice

17    of Motion and Motion to Convert Case to Chapter 11 pursuant to 11 U.S.C. § 1112(a)

18    ("Motion," Dkt. Nos. 79 and 80).

19       Mr. Miller also filed Motions to Transfer Venue – Rule 1014; 28 U.S.C. § 1412 to

20    the Southern District of Texas, Houston Division in both the Case ("Transfer Motion,"

21    Dkt. No. 78) and a Motion to Transfer Venue to the Southern District of Texas, Houston

22    Division in the Discharge Adversary Proceeding ("Adv. Transfer Motion," Adv. Dkt. No.

23    16).  The Trustee is concurrently filing an Opposition to the Transfer Motions.

24       Co-Debtor Sarah Miller is not a signatory to the instant Motion, or the Transfer

25    Motions.  The Trustee is informed and believes that Sarah Miller opposes both of these

26    motions.

27    ///

28    ///

III.

**LEGAL ANALYSIS**

**A.      The Motion Is Not Brought In Good Faith**

The language of section 706(a) is qualified by "may" and thus, does not mandate the conversion of Debtors' case to Chapter 11.  The Supreme Court has determined that the right to covert is not absolute, and a motion to convert can be denied if it is found that conversion is based on the debtor's fraudulent conduct, or if conversion would be an abuse of process.  *Marrama v. Citizens Bank*, 549 U.S. 365, 373-74 (2007).[5]

In this Case, Mr. Miller's unilateral attempt to convert was made both in bad faith and qualifies as an abuse of process.  As outlined above, the Trustee has diligently worked for the past ten months, against the total lack of cooperation and deliberate interference by the Debtors to recover assets in this Case for the benefit of creditors of the Estate.  The Supreme Court in *Marrama* recognized that "[t]he text of § 706(d) . . . provides adequate authority for the denial of [a] motion to convert [on the grounds of bad faith]." *Id.* at 374.  Given the lack of cooperation with the Trustee, the evidence of undisclosed and concealed assets, the Debtors' failure to appear for multiple Section 341(a) meetings, the failure to timely comply with the Court's Turnover Order and the Debtor Loren Miller's steadfast refusal to cooperate with the Trustee in the administration of this Case, it is clear that the Motion was filed in bad faith.  Accordingly, the Court should deny the Motion as there is substantial evidence that the Motion was not brought in "good faith" – a required assertion under the form motion.

Notwithstanding the Debtors' total lack of compliance in this Case and bad faith as detailed above, the Motion to Convert is also an unsupported skeletal one-page form motion.  The Debtor has not even provided a declaration in support of the Motion and there is no explanation or evidence that the Debtors will (or are able to) perform any of

---

[5] While the Court in *Marrama* dealt with a request to convert from Chapter 7 to Chapter 13, rather than to Chapter 11, the language of Section 706(a) applies the same whether the chosen chapter for conversion is chapter 11 or chapter 13.  *See Levesque v. Shapiro (In re Levesque)*, 473 B.R. 311, 339 (B.A.P. 9th Cir. 2012).

1   the required duties of a debtor-in-possession.  For all the reasons described above, it is

2   clear that these Debtors cannot be trusted as debtors-in-possession" ("DIP") and are

3   ineligible for relief under Chapter 11.

4         **B.    <u>Conversion Would Constitute An Abuse of Process</u>**

5         The Trustee also submits that conversion of the Case would constitute an abuse

6   of process and only serve to delay the administration of the Estate to the harm and

7   detriment of the unsecured creditors who stand to receive a dividend from the

8   administration of the Cash and liquidation of the personal property assets by the

9   Trustee.  The Court in *Marrama* also emphasized "the broad authority granted to

10  bankruptcy judges to take any action that is necessary or appropriate 'to prevent an

11  abuse of process' described in § 105(a) of the Code . . . is . . . adequate to authorize an

12  immediate denial of a motion to convert filed under § 706 in lieu of a conversion order

13  that merely postpones the allowance of equivalent relief and may provide a debtor with

14  an opportunity to take action prejudicial to creditors." *Id.* at 375.  As detailed above, the

15  Debtors admittedly concealed assets and failed to turnover personal property of the

16  Estate.

17        Because Debtors cannot be trusted to perform their duties as a DIP for the benefit

18  of creditors in a Chapter 11 case, conversion in this instance would constitute an abuse

19  of process and the creditors are better served with the Trustee administering the Estate.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## IV.

## CONCLUSION

Based upon the foregoing, the Trustee respectfully requests that this Court deny the Motion to Convert the Debtors' Chapter 7 Case to a Case under Chapter 11, and enter any other and further relief that the Court deems just and proper.

DATED: December 10, 2013

MARGULIES FAITH, LLP

By: _/s/ Meghann Triplett_
Craig G. Margulies
Meghann Triplett
Attorneys for Jeremy W. Faith, Chapter 7 Trustee

11

TAB 4                    Page 86

## DECLARATION OF JEREMY W. FAITH

I, Jeremy W. Faith, declare as follows:

1.      I am the duly appointed, qualified and acting Chapter 7 trustee for the bankruptcy estate of Loren Miller and Sarah Miller (the "Debtors").  I have personal knowledge of the matters set forth herein and if called as a witness could and would testify competently thereto.  This declaration is submitted in support of the foregoing *Opposition and Request for Hearing on Debtor Loren Miller's Motion to Convert Case to Chapter 11* (the "Opposition").  Defined terms in the Opposition shall have the same meaning herein.

2.      I believe that the Motion and Debtor's request to convert from Chapter 7 to 11 is yet another bad faith tactic by Mr. Miller in a misguided attempt to avoid complying with his statutory duties under the bankruptcy code.

3.      Since the February 7, 2013 Petition Date, the Debtors have engaged in a pattern of delay, interference, and bad faith in this Case and it is clear to me that the Debtors are utilizing the bankruptcy process in a fraudulent manner at the expense and harm to the unsecured creditors of this Estate.  I have substantial evidence that the Debtors have concealed, depleted, and intentionally undervalued assets of the Estate.

4.      The Case has been pending for more than ten months before this Court and my counsel and I have engaged in significant work to recover assets on behalf of the Estate including the recovery of over $212,286.59 in cash for the benefit of creditors. I continue, to investigate and recover additional assets on behalf of the Estate, including but not limited to, the continued investigation of undisclosed personal property assets, recovery of transferred cash, and the liquidation of the Debtors' non-exempt interest in certain life insurance policies held by Principal Financial Life Insurance.

5.      On the Petition Date, Debtors only filed a "Skeletal Petition" and failed to file any schedules or other documents.  On February 21, 2013, Debtors filed their Summary of Schedules, Statistical Summary of Certain Liabilities, Schedules A-J, Small Business Monthly Operating Report for filing period, Declaration concerning debtors'

1    schedules, Statement of Financial Affairs, Disclosure of Compensation of Attorney for

2    Debtor, Declaration of attorneys limited scope of appearance, Debtor's Certification of

3    Employment Income, Chapter 7 Statement of Current Monthly Income and Means Test

4    Calculation - Form 22A, Statement of Intent, verification of creditor matrix and Statement

5    of related cases (Dkt. No. 11).

6            6.      The Debtors' Original Schedule B disclosed $182,000 in cash on hand held

7    by the Debtors as of the Petition Date (the "Cash").

8            7.      Debtors' initial Section 341(a) meeting of creditors was held on March 18,

9    2013.  Debtors failed to appear for their examination.  Debtors failed to appear at four

10   additional continued Section 341(a) meetings on April 8, 2013, April 29, 2013, May 20,

11   2013, and June 10, 2013.  In fact, Debtors have never voluntarily appeared for a single

12   Section 341(a) meeting of creditors, or produce any documents to me or my counsel.

13           8.      Ultimately, the Court issued an Order requiring the appearances of the

14   Debtors at the July 20, 2013 meeting of creditors and all further continued meetings of

15   creditors (Dkt. No. 54).  Debtors appeared and were examined at the July 20, 2013

16   meeting ("July 20 Meeting").  However, Debtor Loren Miller has again failed to appear at

17   a required meeting of creditors on November 18, 2013 in violation of this Court's Order.

18   Prior to the continued November 18 meeting, I reached an agreement with Co-Debtor

19   Sarah Miller in exchange for turnover of certain assets as detailed in the Opposition and

20   I excused her appearance.

21           9.      On April 4, 2013, I sent Debtors a letter demanding turnover of the

22   nonexempt Cash in their possession.  In response, on April 5, 2013, the Debtors filed a

23   Motion to Convert the Chapter 7 Case to a Chapter 13 Case ("Motion to Convert to

24   Chapter 13").  On April 10, 2013, through counsel, I filed an *Opposition and Request for*

25   *Hearing on Debtors' Motion to Convert Case to Chapter 13; Declaration of Jeremy W.*

26   *Faith in Support Thereof* ("Opposition," Dkt. No. 18).  The Debtors were not ineligible for

27   relief under Chapter 13 pursuant to 11 U.S.C. § 109(e).  The Opposition also highlighted

28   the fact that the Motion to Convert to Chapter 13 was filed in bad faith as a delay tactic.  I

1  was forced to file the Opposition, and on June 4, 2013, less than one week prior to the

2  scheduled hearing date, the Debtors filed a Notice of Withdrawal of the Motion to

3  Convert to Chapter 13 (Dkt. No. 40).

4         10.    On May 9, 2013, my counsel sent another letter requesting turnover of the

5  Cash but again received no response.  On May 15, 2013, I was forced to file a Motion for

6  Turnover of the Cash; and Directing Debtors to Appear at the Meeting of Creditors (the

7  "Turnover Motion," Dkt No. 31).  A hearing on the Turnover Motion was held on June 11,

8  2013.  On June 18, 2013, the Court entered an Order granting the Turnover Motion in its

9  entirety (the "Turnover Order," Dkt No. 54).  A true and correct copy of the Turnover

10 Order is attached hereto as **Exhibit A** and incorporated herein by this reference.

11        11.    The Turnover Order required that the Debtors on or before June 23, 2013,

12 turn over to the Trustee the $182,000 in Cash as listed on Schedule B.  Although

13 specifically directed by the Court to comply with my requests pursuant to the Turnover

14 Order, Debtors refused for many months to fully comply with the turnover.

15        12.    On July 12, 2013, eighteen days after the deadline set forth in the Turnover

16 Order and numerous demands for turnover by my counsel, I received a cashier's check

17 in the amount of $101,731.00 from the Debtors along with a one page accounting (the

18 "Accounting") of how they used up $68,000 of the Cash in the approximate five months

19 since the Petition Date.  A true and correct copy of the letter from Mr. Taus on behalf of

20 Debtors dated July 11, 2013 and attached one-page Accounting is attached hereto as

21 **Exhibit B** and incorporated herein by this reference.

22        13.    The Accounting reflects payments for the following during the period of

23 January 2013 through March 2013 from the $182,000 in Cash ordered to be turned over

24 by the Court:

25  - $12,040 – Mortgage payments on Debtors' Las Vegas home
    - $7,200 – Rent for their home in California
26  - $5,025 – Rent and Deposit for Debtors' new home in Texas
    - $13,984.00 – Paid to Moving Company for move from California to Texas
27  - $3,000 – Moving travel expenses
    - $2,232 – Medical insurance premiums
28  - $2,000 – Food and gas

- $145 – Car registration California
- $207 – Car registration Texas
- $976 – Cell phones
- $949 – Replace water heater in Las Vegas Home
- $440 – Replace refrigerator module
- $585 – Car insurance
- $800 – Utilities (average $200 month)
- $5,800 – payments to Lawyer Taus
- $3,800 – payments to Lawyer Sachs
- $10,000 – Car purchase (daughter)

Subtotal: $68,863.00

*See* Exhibit B.   Other than the "Accounting," the Debtors failed to provide any bank records or documentary evidence to support these unauthorized expenditures from the Cash.   These expenditures were unauthorized and do not excuse the Debtors from complying with this Court's Turnover Order in its entirety and returning the full $182,000 to the Estate.

14.   On August 9, 2013, Debtors filed Amended Schedules B, C and Statement of Financial Affairs ("Amended SOFA") (Dkt. No. 64).   The Amended SOFA at paragraph 18, listed the Debtors' interest in three previously undisclosed limited liability companies.

15.   On August 26, 2013, my counsel sent Debtors, through their counsel Vaughn C. Taus, a renewed demand for full compliance with the Turnover Order and requiring turnover of the remaining $80,269 from the Debtors.   A true and correct copy of the August 26, 2013 letter is attached hereto as **Exhibit C** and incorporated herein by this reference.

16.   As detailed below, just recently in November 2013, Co-Debtor Sarah Miller, by and through communications with her new counsel, has sought to cooperate with me and she has turned over certain cash items.   Co-Debtor Loren Miller still remains recalcitrant and refusing to comply with Court orders, duties under the Bankruptcy Code, or any requests by me or my counsel.

17.   On or about August 15, 2013, I filed a Complaint against Debtors for Denial of Discharge under 11 U.S.C. § 727 *et seq.*, Adversary Proceeding No. 9:13-ap-01133-RR (the "Discharge Adversary Proceeding").

///

18.     On October 16, 2013, Debtors filed an Answer to the Discharge Adversary Proceeding denying the allegations therein.  The Discharge Adversary Proceeding is set for a pre-trial conference on February 25, 2014 at 11:00 a.m.

19.     As provided above, on or about November 5, 2013, Co-Debtor Sarah Miller retained new counsel in the Discharge Adversary Proceeding and entered into discussions regarding cooperation with me in the administration of this Case and possible settlement of outstanding issues in the Case and Discharge Adversary Proceeding as to Sarah Miller.

20.     On or about November 15, 2013, Sarah Miller disclosed to me (through her new counsel) a stock account not previously disclosed by the Debtors.  Sarah Miller and I (by and through counsel) arranged for the liquidation and turnover of this undisclosed stock holdings account at the Bank of Montreal, Quebec (the "Stock Holdings").   The value of the Stock Holdings as of November 12, 2013 was $31,269.35.  Sarah Miller agreed to and has now liquidated and turned over the liquidated balance of the Stock Holdings account to me.

21.     Co-Debtor Sarah Miller also holds a joint bank account with Debtors' minor daughter Zoe Miller at JSC Federal Credit Union, Account No. Ending in 5193 ("Zoe Miller Bank Account").  The balance of the Zoe Miller Bank Account as of November 13, 2013 was $76,145.45. The funds in the Zoe Miller Bank Account were transferred from a pre-petition bank account at Wells Fargo and were listed on Debtors Original Schedule B.  The funds in the Zoe Miller Bank Account were also ordered by the Court to be turned over to me as part of the Cash pursuant to the Turnover Order.  On or about November 18, 2013, pursuant to my counsel's communications with Sarah Miller through her new counsel in the Discharge Adversary Proceeding, I received a wire transfer of $76,145.45.

22.     Although the recent turnover of the approximate $76,145.45 by co-debtor Sarah Miller from the Zoe Miller Bank Account technically provides the remaining Cash disclosed on Debtors' Original Schedule B and required to be turned over by this Court's

1   Turnover Order, there is no explanation for the additional $68,863.00 in pre-petition

2   Cash spent by the Debtors as detailed above which was never turned over to the

3   Trustee. Furthermore, I am still in the process of obtaining all of Debtors bank records to

4   confirm all pre-petition cash and bank accounts were disclosed and accounted for.

5       23.    My investigation has also revealed that the Debtors knowingly significantly

6   undervalued their personal property on their bankruptcy schedules in an apparent

7   attempt to "sneak by" in a Chapter 7 and discharge their debts while avoiding the

8   liquidation of their assets for the benefit of creditors.   Notably, the Debtors failed to

9   disclose all entities in which they have an ownership interest in, including but not limited

10  to First Star Associates, Inc ("First Star").

11      24.    On July 29, 2013, in response to my request for documents and additional

12  information on First Star which was brought to light at the July 20 Meeting, Mr. Taus, on

13  behalf of Debtors, sent a letter to me, detailing the Debtors' interest in First Star among

14  other allegedly defunct corporate entities of the Debtors.   A true and correct copy of the

15  July 29, 2013 letter is attached hereto as **Exhibit D** and is incorporated herein by this

16  reference.  The July 29th letter provides as follows:

17              d. First Star Associates, Inc.  – Status Revoked – Owned
                50% -- Services only corporation that never owned anything.
18              Closed after Las Vegas real estate collapse.  No tax returns
                (more than 5 years old).
19

20      25.    First Star is not listed as an asset on the Debtors' amended bankruptcy

21  schedules (Dkt. No. 64).

22      26.    On or about October 17, 2013, I received copies of the First Star bank

23  statements and cancelled checks from Bank West of Nevada in response to a subpoena

24  issued by my office after it was discovered that an active bank account existed for First

25  Star and that Debtor Loren Miller was writing checks from this account for his own

26  personal benefit.  True and correct copies of the First Star bank records received by the

27  Trustee pursuant to his subpoena are attached hereto as **Exhibit E** (the "First Star Bank

28  Records").

27.   The First Star Bank Records reflect that Mr. Miller has been using a bank account in the name of First Star solely for his own personal benefit for at least the two years preceding the Petition Date.  Furthermore, the First Star Bank Records show that the account had at least $24,612.63 in it as of the Petition Date and had as much as $44,086.94 in September 2012.  I believe that these funds are additional undisclosed monies, which are separate from the Cash disclosed on Schedule B and ordered by the Court to be turned over to me.

28.   The First Star Bank Records also reflect that the Debtors changed the address on the bank account to their new personal address in Texas.  This is directly at odds with the Debtors' testimony at the July 20 Meeting that Debtors did not have knowledge of any monies in the First Star Bank Account and did not control the account.  Furthermore, the Nevada corporate records for First Star do not show any other members or offices and reflect that the capital amount for the corporation's 25,000 shares was $0.00.  A true and correct copy of the First Star business entity detail from the Nevada Secretary of State Website is attached hereto as **Exhibit F.**

29.   On November 26, 2013, Debtor Loren Miller (pro se) filed the instant form Notice of Motion and Motion to Convert Case to Chapter 11 pursuant to 11 U.S.C. § 1112(a) ("Motion to Convert," Dkt. Nos. 79 and 80).

30.   Mr. Miller also filed motions to Transfer Venue – Rule 1014; 28 U.S.C. § 1412 to the Southern District of Texas, Houston Division in the Case ("BK Transfer Motion," Dkt. No. 78) and a Motion to Transfer Venue to the Southern District of Texas, Houston Division in the Discharge Adversary Proceeding ("Adv. Transfer Motion," Adv. Dkt. No. 16) (collectively, referred to herein as the "Transfer Motion").  I am concurrently filing oppositions to the Transfer Motions.

31.   Co-Debtor Sarah Miller is not a signatory to the instant Transfer Motion or the Motion to Convert.  I am informed and believe that Sara Miller opposes both of these motions.

///

18

TAB 4                                                              Page 93

1    32.    Based on the foregoing Opposition, the Debtor Loren Miller's Motion to

2  convert the Case to Chapter 11 should be denied.

3        I declare under penalty of perjury under the laws of the United States of America

4  that the foregoing is true and correct and that this declaration was executed on

5  December 10, 2013 at Encino, California.

6

7                                        JEREMY W. FAITH

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

TAB 4                                                    Page 94

# Exhibit A

TAB 4                                    Page 95

1  CRAIG G. MARGULIES (State Bar No. 185925)
   MEGHANN TRIPLETT (State Bar No. 268005)
2  **MARGULIES FAITH, LLP**
   16030 Ventura Blvd., Suite 470
3  Encino, California 91436
   Telephone: (818) 705-2777
4  Facsimile:  (818) 705-3777
   Email:  Craig@MarguliesFaithLaw.com
5  Email:  Meghann@MarguliesFaithlaw.com

6  Attorney for Jeremy W. Faith, Chapter 7 Trustee

7

8

9

10

```
FILED & ENTERED

      JUN 18 2013

CLERK U.S. BANKRUPTCY COURT
 Central District of California
BY RUST     DEPUTY CLERK
```

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### NORTHERN DIVISION

11  In re                                    Case No.:  9:13-bk-10313-RR

12  LOREN MILLER AND SARAH MILLER,           Chapter:  7

13                                  Debtor.   **ORDER GRANTING CHAPTER 7**
14                                            **TRUSTEE'S MOTION FOR TURNOVER**
                                              **OF PROPERTY OF THE ESTATE AND**
15                                            **ORDER DIRECTING DEBTORS TO**
                                              **APPEAR AT CONTINUED 11 U.S.C. §**
16                                            **341(a) MEETINGS OF CREDITORS**

17
                                              Hearing Date:
18                                            Date:     June 11, 2013
                                              Time:     10:00 am
19                                            Place:    Courtroom  201

20

21

22

23

24

25

26

27

28

1    At the above date and time, the hearing on the Trustee's Motion for order

2    compelling the above-captioned debtors Loren Miller And Sarah Miller (collectively, the

3    "Debtors") to turn over property of the Bankruptcy Estate pursuant to 11 U.S.C. §§ 521,

4    541, and 542, and for an order directing the Debtors to appear at their 11 U.S.C. §

5    341(a) Meetings of Creditors (the "Motion," Dkt. No. 31) was held before the Honorable

6    Robin L. Riblet, United States Bankruptcy Judge, in Courtroom 201of the United States

7    Bankruptcy Court, 1415 State Street, Santa Barbara, California.  Meghann Triplett, Esq.

8    of Margulies Faith, LLP appeared on behalf of the Trustee, and all other appearances

9    were as stated on the record at the hearing.

10    The Court, having read and considered the moving papers, no opposition having

11    been filed, and the Court finding that Notice of the Motion was proper, and for the

12    reasons stated on the record at the hearing on the Motion and good cause appearing,

13    **IT IS HEREBY ORDERED THAT:**

14    1.    The Motion is granted;

15    2.    The Debtors are directed to immediately, but no later than five (5) days

16    after entry of this Order, turn over to the Trustee, by and through his counsel Margulies

17    Faith, LLP ("MF"), $182,000, the amount listed in the Debtors' Schedule B filed on

18    February 21, 2013 (Dkt. No.11) by way of a Cashier's Check made payable to "Jeremy

19    W. Faith, Chapter 7 Trustee."

20    3.    The Debtors are directed to immediately, but no later than five (5) days

21    after entry of this Order, turn over to the Trustee by and through his counsel MF, copies

22    of all monthly bank statements and canceled checks (front and back sides), including

23    documentation for all bank records and financial statements, for the two years preceding

24    the Petition Date through the date of the hearing on the Motion (i.e., June 11, 2013) for

25    all bank accounts existing in the Debtors' name, including all individual and joint-

26    accounts.  Specifically, the Debtors are required to provide monthly bank statements and

27    cancelled checks (front and back sides) for the time period described in this paragraph

28    above.

1

1          4.      The Debtors are directed to immediately, but in no event later than five (5)

2    days after entry of this Order, turn over to the Trustee by and through his counsel MF,

3    copies of Debtors' 2010, 2011, and 2012 State and Federal Tax Returns.

4          **IT IS FURTHER ORDERED** that:

5          5.      The Debtors are ordered to appear and testify under oath at their 11 U.S.C.

6    § 341(a) Meeting of Creditors on July 15, 2013, at 2:30 p.m. at the Office of the United

7    States Trustee, 128 E. Carrillo Street, Santa Barbara, California and are also required to

8    appear at any and all additional continued § 341(a) Meeting of Creditors until the Trustee

9    has concluded the Section 341(a) Meeting of Creditors in this Case.

10

11

12

13    ###

14

15

16

17

18

19

20

21

22

23

24    Date: June 18, 2013

*Robin Riblet*

Robin L. Riblet
United States Bankruptcy Judge

25

26

27

28

Case 9:13-bk-10313-RR    Doc 54    Filed 06/18/13    Entered 06/18/13 15:10:23    Desc
Main Document    Page 4 of 4

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR TURNOVER OF PROPERTY OF THE ESTATE AND ORDER DIRECTING DEBTORS TO APPEAR AT CONTINUED 11 U.S.C. § 341(A) MEETINGS OF CREDITORS** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of <u>June 13, 2013</u>, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Howard Camhi    hcamhi@ecjlaw.com, kanthony@ecjlaw.com
Jeremy W. Faith (TR)    jfaith@7trustee.net, C118@ecfcbis.com;Helen@MarguliesFaithLaw.com;leedowding@gmail.com
Craig G Margulies    craig@marguliesfaithlaw.com,
staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
Faye C Rasch    frasch@ecjlaw.com, kanthony@ecjlaw.com
Vaughn C Taus    tauslawyer@gmail.com
Meghann A Triplett    Meghann@MarguliesFaithLaw.com, Helen@MarguliesFaithLaw.com;MF_ecf@ecf.inforuptcy.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2.   SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Debtors: Loren and Sarah Miller, 702 Whitecap Drive, Seabrook, TX 77586

☐ Service information continued on attached page

**3.   TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                      **F 9021-1.1.NOTICE.ENTERED.ORDER**

# Exhibit B

TAB 4                                      Page 100

**VAUGHN C. TAUS**
ATTORNEY AT LAW
1042 Pacific Street, Suite D
San Luis Obispo, CA 93401
tauslawyer@gmail.com

Telephone 805-542-0155

Facsimile 805-542-0234

July 11, 2013

Craig Margulies
Margulies Faith LLP
16030 Ventura Boulevard, Suite 470
Encino, CA 91436

Re: Loren and Sarah Miller 9:13-bk-10313-RR

Dear Mr. Margulies:

I attach a variety of documents responsive to Mr. Faith's request. My clients have purchased airplane tickets from their home in Texas to appear at the §341a meeting in Santa Barbara on July 15, 2013.

I attach my clients' cashier's check in the sum of $101,731.00, which is the balance of money in my clients' accounts. I also attach an accounting created by my clients reflecting their expenditures since the filing of the bankruptcy case. Mr. Miller was unemployed and had no income through April, 2013. The Millers had to move to Texas for Mr. Miller to start his new job.

The accounting reflects initial balances totaling $170,594. These were the actual balances at the time the emergency petition was filed in this case. I am having my clients obtain documentation evidencing the accurate balance in accounts at the time the case was filed. Once I have that evidence I will provide it to you and I will file amended schedules on my clients' behalf.

My clients' banking was conducted exclusively on line for the two years preceding the filing of the bankruptcy case. They do not have statements. However, they are attempting to obtain information concerning the accounts that is responsive to the court's order and the trustee's inquiry.

I also include complete state and federal tax returns for Mr. and Mrs. Miller, for the years 2010, 2011 and 2012.

If additional responsive information becomes available before the hearing, I will provide that information, either in advance or at the hearing, itself.

Craig Margulies
Re: Loren and Sarah Miller
July 11, 2013
Page 2 of 2

If you have any questions or comments, please do not hesitate to communicate with me.

Yours Very Truly,

Vaughn C. Taus

Enclosures
CC: Clients

| Date | Description | | Amount | |
|---|---|---|---|---|
| Jan-13 | Sarah Account | | $ 100,000.00 | |
| Jan-13 | Zoe Account | | $ 70,594.00 | |
| | | Subtotal | $ 170,594.00 | |
| | | | | |
| Jan - Apr | Mortgage - LV Home | | $ 12,040.00 | |
| Jan - Apr | Rent - CA | | $ 7,200.00 | |
| Mar - Apr | Rent & Deposit - TX | | $ 5,025.00 | |
| Mar | Moving - CA to TX | | $ 13,984.00 | Moving company |
| Mar | Moving - Travel | | $ 3,000.00 | Personal Moving Costs |
| Jan - Apr | Medical Insurance Premiums | | $ 2,332.00 | |
| Jan - Apr | Food & Gas | | $ 2,000.00 | |
| Feb | Car Registration - CA | | $ 145.00 | |
| Mar | Car Registration - TX | | $ 207.00 | |
| Jan - Apr | Cell Phones | | $ 976.00 | |
| Mar | Replace Water Heater - LV | | $ 949.00 | |
| Mar | Replace Refrigerator Module | | $ 440.00 | |
| Jan - Apr | Car Insurance | | $ 585.00 | |
| Jan - Apr | Utilities (Average $200 Month) | | $ 800.00 | |
| Feb | Lawyer (Taus) | | $ 2,880.00 | |
| Mar | Lawyer (Taus) | | $ 2,500.00 | |
| Mar | Lawyer (Sachs) | | $ 3,800.00 | |
| Mar | Car Purchase (Daughter) | | $ 10,000.00 | |
| | | Subtotal | $ 68,863.00 | |
| | | | | |
| | | Total | $ 101,731.00 | Balance |

**NOTE: Unemployed from September 2012
through April 2013.  No Income during this period.**

Exhibit C

TAB 4                                    Page 104



MARGULIES FAITH LLP

AUGUST 26, 2013
Meghann@MarguliesFaithlaw.com

**Sent VIA U.S. Mail & Email**
Vaughn C. Taus
Law Offices of Vaughn C. Taus
1042 Pacific Street, Suite D
San Luis Obispo, CA 93401
Email: tauslawyer@gmail.com
Fax: (805) 542-0234

Re:   In re Loren Miller and Sarah Miller, Case No. 9:13-bk-10313-RR

Dear Mr. Taus:

As you know, this firm is counsel to Jeremy W. Faith, Chapter 7 Trustee ("Trustee"), in regard to the above-referenced bankruptcy case (the "Case") of Loren and Sarah Miller ("Debtors").

This letter constitutes a demand for turnover of the remaining $68,863 from the Debtors pursuant to the Turnover Order entered by the Court on June 18, 2013. As you are aware, the Debtors were required to turn over to my office on behalf of the Trustee $182,000 in cash, the amount listed on original Schedule B no later than five (5) days after entry of the Turnover Order or on or before June 23, 2013.

On July 11, 2013, we received a cashier's check from your office on behalf of the Debtors in the amount of $101,731 along with a one page accounting prepared by the Debtors for their improper use of pre-petition Cash ordered to be turned over to the Trustee. The accounting includes various unauthorized expenditures from Estate funds including payments to your office in the total amount of $5,300, which were specifically ordered to be returned to the Trustee as set forth in a separate letter sent concurrently with this correspondence; $3,800 to an attorney "Sachs"; $10,000 for the purchase of a vehicle as well as other purported living and moving expenses totaling $68,863. These funds are assets of the Bankruptcy Estate and were required to be returned to the Trustee pursuant to the Court's Turnover Order.

To date, your clients have failed to make any effort and/or arrangements to turnover the remaining $68,863 pursuant to the Court's Turnover Order. Debtors must return the $68,863 immediately to the bankruptcy estate pursuant to their obligations under the Turnover Order or the Trustee will be left with no alternative but to move the Court to hold the Debtors in contempt.

Please contact me immediately in response to the above compliance. Thank you.

Very truly yours,

*Meghann Triplett*

Meghann Triplett

cc:  Jeremy W. Faith, Chapter 7 Trustee

Exhibit C
TAB 4

Page 27
Page 105

# Exhibit D

TAB 4                                      Page 106

**VAUGHN C. TAUS**
ATTORNEY AT LAW
1042 Pacific Street, Suite D
San Luis Obispo, CA 93401
tauslawyer@gmail.com

Telephone 805-542-0155                                                                    Facsimile 805-542-0234

July 29, 2013

Jeremy Faith
21550 Oxnard Street
Woodland Hills, Ca 91367

Re: Loren and Sarah Miller: Case No. 13-10313

Dear Mr. Faith:

At the Miller's §341 meeting of creditors you requested substantial additional
information from the debtors. This letter responds to those requests. Mr. Miller has
diligently attempted to gather whatever responsive documents he could. The
documents you requested often had to do with entities that have been out of business
for quite a while. For example, Mr. Miller testified about his involvment with a number
of corporate entities. These companies have, in many cases, been defunct for many
years.

Additionally, the debtors testified about their recent move to Texas so that Mr. Miller
could be re-employed, after many months of un-employment. As necessitated by such
a move, documents were either packed or if the documents were old, thrown out.

With respect to the corporate entities, Mr. Miller performed a search for information at
the office of the Nevada Secretary of State and was able to obtain the information for
each company reflected on the first attachment to this letter. In addition, Mr. Miller
provides the following narrative with respect the various entities:

a. Molinos Properties, LLC – Status Default – Owned 100% by debtor-Entity owned a
portion of Hills Center Office 1, LLC that was bankrupted by Andrew Geller in 2008.
The final tax return is attached;

b. Winmill Development, Inc. –Status Revoked – Owned 100% by debtor-Services only
corporation that never owned anything. Closed after Las Vegas real estate collapse.
The final tax return is attached;

c. Hills Center Office 1, LLC – Status Dissolved – Molinos Properties owned 21% - Hills
Center Office 1, LLC was bankrupted by Andrew Geller in 2008. Geller would have tax
returns;

Jeremy Faith
Re: Loren and Sarah Miller
July 29, 2013
Page 2 of 3

d. First Star Associates, Inc. – Status Revoked – Owned 50% - Services only corporation that never owned anything.  Closed after Las Vegas real estate collapse. No Tax returns (more than 5 years old);

e. Mohave Minerals & Mining, LLC – Status Permanently Revoked – Mining company closed over 9 years ago.  No Tax returns (more than 5 years old);

F. Flamingo Cambridge, LLC – Status Permanently Revoked – Owned 33% - Sold real estate back in 2004 and closed permanently – No Tax returns (more than 5 years old)

g. Luxin Limited – Status Revoked – Resident Agent only – Did not own any position.

Next, I forward documents from Mr. Miller that refer to six Wells Fargo accounts and three Bank of America accounts.  The statement for Mr. Miller's Nevada Wells Fargo Bank account ending in 0403 is separated out.

Next, I attach, as a group, statements for: Mrs. Miller's Wells Fargo Bank accounts ending in 4710 and 8753; and Zoe Miller's Wells Fargo Bank account ending in 2685. Next in the group, Mr. Miller only had correspondence from Wells Fargo Bank that I attach, for the California accounts in his name ending in 9591 and 8548.  In addition, I provide correspondence for Mr. Miller's Bank of America accounts ending in 5983, 3794 and 0765.  As indicated on the letters, these accounts were drained by Mr. Geller and were closed after the levy.

I next attach as a packet the complete application by debtors for re-imbursement for damages caused by Mayflower Moving Company.

I next attach policy summaries for three Principal Life Insurance Policies insuring the lives of Mr. Miller, Mrs. Miller and Zoe Miller.

The information in this letter and the attachments provide the most complete response the Millers are able to provide to your inquiries, at this time.  Mr. Miller will continue to search for additional responsive material, as they continue to unpack.

In the mean time, now that I have this additional information, I am preparing amended schedules, statement of financial affairs and a business income and expense statement for the Nevada house rented out by the Millers.

As Mrs. Miller made emotionally clear, it is a very substantial hardship both financially and in their lives, for the Millers to come out to California.  This is particularly so on relatively short notice.  Therefore, it is my hope that once you have reviewed this

Jeremy Faith
Re: Loren and Sarah Miller
July 29, 2013
Page 3 of 3

response, you will be able to excuse the Millers from a further appearance.  If this is not possible, I urge you to continue the next scheduled meeting for more than thirty days, to at least allow the Millers to purchase airplane tickets at a reasonable price.

Thank you in advance for your consideration in this matter.

If you have any questions or comments please do not hesitate to communicate with me.

Yours Very Truly,

Vaughn C. Taus

Enclosures

CC: Clients.

# Exhibit E

TAB 4                                    Page 110

```
                                                         PAGE:      1
                                  ACCOUNT:       120061872  09/30/2013
                                  DOCUMENTS:             0
```

```
         FIRST STAR ASSOCIATES INC                            30
         702 WHITECAP DR                                       0
         EL LAGO TX  77586-5918                                0
```

Effective December 2, 2013, the Wire Transfer fee for outbound
international wires will decrease to $40.00 per transaction.
For questions, please contact your customer service representative.

BUSINESS MONEY MARKET ACCOUNT 120061872

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................ | | | 08/30/13 | 3,010.96 |
| INTEREST | | .13 | 09/30/13 | 3,011.09 |
| BALANCE THIS STATEMENT ............................ | | | 09/30/13 | 3,011.09 |

```
TOTAL CREDITS     (1)        .13
TOTAL DEBITS      (0)        .00
```

- - - - - - - - - - I N T E R E S T - - - - - - - - - -

```
AVERAGE LEDGER BALANCE:        3,010.96  INTEREST EARNED:                 .13
AVERAGE AVAILABLE BALANCE:     3,010.96  DAYS IN PERIOD:                   31
INTEREST PAID THIS PERIOD:          .13  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2013:                6.49
```

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
*********************************************************************
*                         |   TOTAL FOR   |     TOTAL        *
*                         |  THIS PERIOD  |  YEAR TO DATE     *
*-------------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:    |     $.00      |      $.00         *
*-------------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:|     $.00      |      $.00         *
*********************************************************************
```

```
                                  000                      PAGE:      1
                              ACCOUNT:        120061872  08/30/2013
                              DOCUMENTS:          1




            FIRST STAR ASSOCIATES INC                        30
            702 WHITECAP DR                                   0
            EL LAGO TX  77586-5918                            1



==================================================================
              BUSINESS MONEY MARKET ACCOUNT 120061872
==================================================================
        DESCRIPTION          DEBITS      CREDITS    DATE        BALANCE

BALANCE LAST STATEMENT ............................ 07/31/13   18,010.53
CHECK # 350               15,000.00                 08/16/13    3,010.53
INTEREST                                     .43    08/30/13    3,010.96
BALANCE THIS STATEMENT ............................ 08/30/13    3,010.96

TOTAL CREDITS      (1)            .43
TOTAL DEBITS       (1)      15,000.00

==================================================================
                    YOUR CHECKS SEQUENCED
==================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

08/16    350   15,000.00

        - - - - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:       10,510.53  INTEREST EARNED:                 .43
AVERAGE AVAILABLE BALANCE:    10,510.53  DAYS IN PERIOD:                   30
INTEREST PAID THIS PERIOD:         .43   ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2013:               6.36

        - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

*************************************************************
*                          |   TOTAL FOR   |     TOTAL       *
*                          |  THIS PERIOD  |  YEAR TO DATE   *
*--------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:     |     $.00      |     $.00        *
*--------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES: |     $.00      |     $.00        *
*************************************************************
```

```
                                    000               PAGE:       1
                          ACCOUNT:         120061872  07/31/2013
                          DOCUMENTS:               0
```

```
       FIRST STAR ASSOCIATES INC                         30
       702 WHITECAP DR                                    0
       EL LAGO TX  77586-5918                             0
```

```
==================================================================
                 BUSINESS MONEY MARKET ACCOUNT 120061872
==================================================================
       DESCRIPTION           DEBITS      CREDITS   DATE       BALANCE

BALANCE LAST STATEMENT ............................ 06/28/13   18,009.72
INTEREST                                     .81 07/31/13   18,010.53
BALANCE THIS STATEMENT ............................ 07/31/13   18,010.53

TOTAL CREDITS      (1)           .81
TOTAL DEBITS       (0)           .00

        - - - - - - - - I N T E R E S T - - - - - - - -

AVERAGE LEDGER BALANCE:        18,009.72  INTEREST EARNED:             .81
AVERAGE AVAILABLE BALANCE:     18,009.72  DAYS IN PERIOD:               33
INTEREST PAID THIS PERIOD:           .81  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2013:                 5.93
```

```
        - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

        ********************************************************
        *                    |   TOTAL FOR    |     TOTAL     *
        *                    |  THIS PERIOD   |  YEAR TO DATE *
        *-------------------------------------------------------*
        * TOTAL OVERDRAFT FEES:    |     $.00      |     $.00    *
        *-------------------------------------------------------*
        * TOTAL RETURNED ITEM FEES:  |     $.00      |     $.00    *
        ********************************************************
```

```
                                    ACCOUNT    000000        PAGE:      1
                                    ACCOUNT:        120061872  06/28/2013
                                    DOCUMENTS:              0
```

```
         FIRST STAR ASSOCIATES INC                    30
         702 WHITECAP DR                               0
         EL LAGO TX  77586-5918                        0
```

```
=================================================================
              BUSINESS MONEY MARKET ACCOUNT 120061872
=================================================================
      DESCRIPTION            DEBITS        CREDITS   DATE            BALANCE

BALANCE LAST STATEMENT  ............................ 05/31/13      18,009.03
INTEREST                                   .69 06/28/13            18,009.72
BALANCE THIS STATEMENT  ............................ 06/28/13      18,009.72

TOTAL CREDITS      (1)          .69
TOTAL DEBITS       (0)          .00

        - - - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:       18,009.03  INTEREST EARNED:               .69
AVERAGE AVAILABLE BALANCE:    18,009.03  DAYS IN PERIOD:                 28
INTEREST PAID THIS PERIOD:          .69  ANNUAL PERCENTAGE YIELD EARNED: .05%
INTEREST PAID 2013:                5.12

      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

  ********************************************************************
  *                          |     TOTAL FOR   |      TOTAL       *
  *                          |   THIS PERIOD   |   YEAR TO DATE   *
  *--------------------------------------------------------------*
  * TOTAL OVERDRAFT FEES:     |       $.00      |       $.00       *
  *--------------------------------------------------------------*
  * TOTAL RETURNED ITEM FEES: |       $.00      |       $.00       *
  ********************************************************************
```

```
                           000000              PAGE:     1
                           ACCOUNT:   120061872  05/31/2013
                           DOCUMENTS:         1
```

```
        FIRST STAR ASSOCIATES INC                    30
        702 WHITECAP DR                               1
        EL LAGO TX  77586-5918                        0
```

```
==============================================================
    Effective June 1, 2013, the following fee change will apply to
    Business Accounts: The Non-Sufficient Funds (NSF) paid/returned
    item fee will increase to $35 from $32.50. Also the daily overdraft
    fee will apply only on business days (weekends and state/federal
    holidays are not considered business days).
==============================================================
```

### BUSINESS MONEY MARKET ACCOUNT 120061872

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................. | | | 04/30/13 | 17,615.03 |
| DEPOSIT | | 393.25 | 05/20/13 | 18,008.28 |
| INTEREST | | .75 | 05/31/13 | 18,009.03 |
| BALANCE THIS STATEMENT ............................. | | | 05/31/13 | 18,009.03 |

```
TOTAL CREDITS    (2)     394.00
TOTAL DEBITS     (0)        .00
```

```
        - - - - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:        17,767.25  INTEREST EARNED:                    .75
AVERAGE AVAILABLE BALANCE:     17,767.25  DAYS IN PERIOD:                      31
INTEREST PAID THIS PERIOD:           .75  ANNUAL PERCENTAGE YIELD EARNED:   .05%
INTEREST PAID 2013:                 4.43
```

```
        - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

****************************************************************
*                           |   TOTAL FOR   |     TOTAL        *
*                           |  THIS PERIOD  |  YEAR TO DATE     *
*---------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:      |     $.00      |     $.00         *
*---------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:  |     $.00      |     $.00         *
****************************************************************
```

```
                                         000 000
                                  ACCOUNT:              120061872  04/30/2013
                                  DOCUMENTS:                     0
```

```
        FIRST STAR ASSOCIATES INC                        30
        702 WHITECAP DR                                   0
        EL LAGO TX  77586-5918                            0
```

=================================================================================
Effective June 1, 2013, the following fee change will apply to
Business Accounts: The Non-Sufficient Funds (NSF) paid/returned
item fee will increase to $35 from $32.50. Also the daily overdraft
fee will apply only on business days (weekends and state/federal
holidays are not considered business days).

=================================================================================
                    BUSINESS MONEY MARKET ACCOUNT 120061872
=================================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................. | | | 03/29/13 | 17,614.26 |
| INTEREST | | .77 | 04/30/13 | 17,615.03 |
| BALANCE THIS STATEMENT ............................. | | | 04/30/13 | 17,615.03 |

| | | |
|---|---|---|
| TOTAL CREDITS | (1) | .77 |
| TOTAL DEBITS | (0) | .00 |

- - - - - - - - - I N T E R E S T - - - - - - - - - -

| | | | |
|---|---|---|---|
| AVERAGE LEDGER BALANCE: | 17,614.26 | INTEREST EARNED: | .77 |
| AVERAGE AVAILABLE BALANCE: | 17,614.26 | DAYS IN PERIOD: | 32 |
| INTEREST PAID THIS PERIOD: | .77 | ANNUAL PERCENTAGE YIELD EARNED: | .05% |
| INTEREST PAID 2013: | 3.68 | | |

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
***************************************************************
*                        |   TOTAL FOR    |     TOTAL        *
*                        |  THIS PERIOD   |  YEAR TO DATE    *
*------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:  |     $.00       |     $.00         *
*------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES: |  $.00        |     $.00         *
***************************************************************
```

```
                                  000            PAGE:        1
                              ACCOUNT:      120061872  03/29/2013
                              DOCUMENTS:         1
```

```
     FIRST STAR ASSOCIATES INC                    30
     702 WHITECAP DR                               0
     EL LAGO TX  77586-5918                        1
```

================================================================
NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
transaction account ( including an IOLTA/IOLA ) will no longer receive
unlimited deposit insurance coverage, but will be FDIC-insured to the
legal maximum of $250,000 for each ownership category.
For more information, visit:
     http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                    BANK OF NEVADA
Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.

================================================================
            BUSINESS MONEY MARKET ACCOUNT 120061872
================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................ | | | 02/28/13 | 20,113.51 |
| CHECK # 349 | 2,500.00 | | 03/15/13 | 17,613.51 |
| INTEREST | | .75 | 03/29/13 | 17,614.26 |
| BALANCE THIS STATEMENT ............................ | | | 03/29/13 | 17,614.26 |

```
TOTAL CREDITS      (1)           .75
TOTAL DEBITS       (1)      2,500.00
```

================================================================
                    YOUR CHECKS SEQUENCED
================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

```
03/15      349   2,500.00
                  * * *  C O N T I N U E D  * * *
```

```
                                  0000000011        PAGE:    2
                          ACCOUNT:        120061872  03/29/2013
                          DOCUMENTS:              1
```

FIRST STAR ASSOCIATES INC

```
========================================================================
               BUSINESS MONEY MARKET ACCOUNT 120061872
========================================================================

        - - - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:        18,820.40  INTEREST EARNED:               .75
AVERAGE AVAILABLE BALANCE:     18,820.40  DAYS IN PERIOD:                 29
INTEREST PAID THIS PERIOD:           .75  ANNUAL PERCENTAGE YIELD EARNED: .05%
INTEREST PAID 2013:                 2.91
```

```
        - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

******************************************************************
*                        |       TOTAL FOR   |      TOTAL       *
*                        |      THIS PERIOD   |   YEAR TO DATE   *
*-----------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:       |       $.00    |       $.00        *
*-----------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:   |       $.00    |       $.00        *
******************************************************************
```

```
                                  PAGE:      1
               ACCOUNT:           120061872  02/28/2013
               DOCUMENTS:              4
```

FIRST STAR ASSOCIATES INC                                    30
239 ESPARTO AVE                                               0
PISMO BEACH CA  93449-1916                                    4

================================================================
NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
transaction account ( including an IOLTA/IOLA ) will no longer receive
unlimited deposit insurance coverage, but will be FDIC-insured to the
legal maximum of $250,000 for each ownership category.   -
For more information, visit:
      http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                          BANK OF NEVADA
Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.

================================================================
            BUSINESS MONEY MARKET ACCOUNT 120061872
================================================================

        DESCRIPTION          DEBITS      CREDITS    DATE        BALANCE

BALANCE LAST STATEMENT ........................... 01/31/13    29,012.63
CHECK # 345                  2,400.00               02/05/13    26,612.63
CHECK # 346                  2,000.00               02/07/13    24,612.63
CHECK # 347                  3,000.00               02/07/13    21,612.63
CHECK # 348                  1,500.00               02/26/13    20,112.63
INTEREST                                      .88   02/28/13    20,113.51
BALANCE THIS STATEMENT ........................... 02/28/13    20,113.51

TOTAL CREDITS      (1)            .88
TOTAL DEBITS       (4)       8,900.00

================================================================
                    YOUR CHECKS SEQUENCED
================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

02/05     345    2,400.00 02/07     347    3,000.00
02/07     346    2,000.00 02/26     348    1,500.00
                    * * * C O N T I N U E D * * *
```

```
                                                          PAGE:      2
                                ACCOUNT:          120061872  02/28/2013
                                DOCUMENTS:               4
```

FIRST STAR ASSOCIATES INC

```
=======================================================================
                  BUSINESS MONEY MARKET ACCOUNT 120061872
=======================================================================
```

          - - - - - - - - - I N T E R E S T - - - - - - - - - -

```
AVERAGE LEDGER BALANCE:      22,866.20  INTEREST EARNED:                .88
AVERAGE AVAILABLE BALANCE:   22,866.20  DAYS IN PERIOD:                  28
INTEREST PAID THIS PERIOD:         .88  ANNUAL PERCENTAGE YIELD EARNED: .05%
INTEREST PAID 2013:               2.16
INTEREST PAID 2012:              17.71
```

      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
  *****************************************************************
  *                       |    TOTAL FOR    |     TOTAL        *
  *                       |   THIS PERIOD   |  YEAR TO DATE    *
  *-----------------------|-----------------|------------------*
  * TOTAL OVERDRAFT FEES: |      $.00       |      $.00        *
  *-----------------------|-----------------|------------------*
  * TOTAL RETURNED ITEM FEES: |  $.00       |      $.00        *
  *****************************************************************
```

```
                                                        PAGE:      1
                              000 Page 01
                              ACCOUNT:        120061872  01/31/2013
                              DOCUMENTS:           1
```

```
FIRST STAR ASSOCIATES INC                               30
239 ESPARTO AVE                                          0
PISMO BEACH CA  93449-1916                               1
```

===========================================================================

NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
transaction account ( including an IOLTA/IOLA ) will no longer receive
unlimited deposit insurance coverage, but will be FDIC-insured to the
legal maximum of $250,000 for each ownership category.
For more information, visit:
    http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                        BANK OF NEVADA
Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.

===========================================================================
             BUSINESS MONEY MARKET ACCOUNT 120061872
===========================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................ | | | 12/31/12 | 30,511.35 |
| CHECK # 344 | 1,500.00 | | 01/25/13 | 29,011.35 |
| INTEREST | | 1.28 | 01/31/13 | 29,012.63 |
| BALANCE THIS STATEMENT ............................ | | | 01/31/13 | 29,012.63 |

| | | | |
|---|---|---|---|
| TOTAL CREDITS | (1) | 1.28 | |
| TOTAL DEBITS | (1) | 1,500.00 | |

===========================================================================
                  YOUR CHECKS SEQUENCED
===========================================================================

DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

01/25    344    1,500.00
                  * * * C O N T I N U E D * * *

```
                                                               PAGE:        2
                                     ACCOUNT:      120061872   01/31/2013
                                     DOCUMENTS:            1
```

FIRST STAR ASSOCIATES INC

```
=================================================================
          BUSINESS MONEY MARKET ACCOUNT 120061872
=================================================================

          - - - - - - - - I N T E R E S T - - - - - - - - -

AVERAGE LEDGER BALANCE:      30,172.64  INTEREST EARNED:                1.28
AVERAGE AVAILABLE BALANCE:   30,172.64  DAYS IN PERIOD:                   31
INTEREST PAID THIS PERIOD:        1.28  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2013:               1.28
INTEREST PAID 2012:              17.71

      - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

*****************************************************************
*                      |   TOTAL FOR  |    TOTAL     |  PREVIOUS   *
*                      | THIS PERIOD  | YEAR TO DATE | YEAR TOTAL  *
*----------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:    |      $.00 |       $.00 |      $.00 *
*----------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:  |    $.00 |       $.00 |      $.00 *
*****************************************************************
```

```
                                                                    PAGE:     1
                              000             ACCOUNT:    120061872  12/31/2012
                                              DOCUMENTS:          0
```

```
FIRST STAR ASSOCIATES INC                                       30
239 ESPARTO AVE                                                  0
PISMO BEACH CA  93449-1916                                       0
```

================================================================
NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
transaction account ( including an IOLTA/IOLA ) will no longer receive
unlimited deposit insurance coverage, but will be FDIC-insured to the
legal maximum of $250,000 for each ownership category.
For more information, visit:
    http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                        BANK OF NEVADA
Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.

================================================================
              BUSINESS MONEY MARKET ACCOUNT 120061872
================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................ | | | 11/30/12 | 31,510.02 |
| TELEPHONE TRANSFER REQUEST C/S | 1,000.00 | | 12/28/12 | 30,510.02 |
| INTEREST | | 1.33 | 12/31/12 | 30,511.35 |
| BALANCE THIS STATEMENT ............................ | | | 12/31/12 | 30,511.35 |

| | | |
|---|---|---|
| TOTAL CREDITS | (1) | 1.33 |
| TOTAL DEBITS | (1) | 1,000.00 |

- - - - - - - - - - I N T E R E S T - - - - - - - - - -

| | | | |
|---|---|---|---|
| AVERAGE LEDGER BALANCE: | 31,380.98 | INTEREST EARNED: | 1.33 |
| AVERAGE AVAILABLE BALANCE: | 31,380.98 | DAYS IN PERIOD: | 31 |
| INTEREST PAID THIS PERIOD: | 1.33 | ANNUAL PERCENTAGE YIELD EARNED: | .05% |
| INTEREST PAID 2012: | 17.71 | | |

                * * * C O N T I N U E D * * *

```
                                    00000131            PAGE:       2
                        ACCOUNT:            120061872   12/31/2012
                        DOCUMENTS:                  0



    FIRST STAR ASSOCIATES INC

================================================================
            BUSINESS MONEY MARKET ACCOUNT 120061872
================================================================

    - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

***************************************************************
*                      |  TOTAL FOR    |    TOTAL           *
*                      |  THIS PERIOD  |  YEAR TO DATE      *
*----------------------------------------------------------- *
* TOTAL OVERDRAFT FEES:     |    $.00    |      $.00        *
*----------------------------------------------------------- *
* TOTAL RETURNED ITEM FEES: |    $.00    |      $.00        *
***************************************************************
```

```
                                     BEF 000 Page              PAGE:      1
                                     ACCOUNT:        120061872  11/30/2012
                                     DOCUMENTS:            1
```

```
FIRST STAR ASSOCIATES INC                              30
239 ESPARTO AVE                                         0
PISMO BEACH CA  93449-1916                              1
```

```
============================================================================
NOTICE: By federal law, as of 1/1/2013, funds in a noninterest-bearing
  transaction account ( including an IOLTA/IOLA ) will no longer receive
  unlimited deposit insurance coverage, but will be FDIC-insured to the
  legal maximum of $250,000 for each ownership category.
For more information, visit:
      http://www.fdic.gov/deposit/deposits/unlimited/expiration.html
                          BANK OF NEVADA
Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.
```

```
============================================================================
             BUSINESS MONEY MARKET ACCOUNT 120061872
============================================================================
        DESCRIPTION             DEBITS      CREDITS   DATE       BALANCE

BALANCE LAST STATEMENT .............................. 10/31/12   32,008.72
CHECK # 343                      500.00               11/02/12   31,508.72
INTEREST                                       1.30   11/30/12   31,510.02
BALANCE THIS STATEMENT .............................. 11/30/12   31,510.02

TOTAL CREDITS        (1)             1.30
TOTAL DEBITS         (1)           500.00
```

```
============================================================================
                  YOUR CHECKS SEQUENCED
============================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

11/02    343     500.00
                 * * * C O N T I N U E D * * *
```

```
                                       000              PAGE:       2
                                       ACCOUNT:    120061872  11/30/2012
                                       DOCUMENTS:         1




         FIRST STAR ASSOCIATES INC

    ================================================================
              BUSINESS MONEY MARKET ACCOUNT 120061872
    ================================================================

          - - - - - - - - - I N T E R E S T - - - - - - - - - -

   AVERAGE LEDGER BALANCE:      31,525.38  INTEREST EARNED:               1.30
   AVERAGE AVAILABLE BALANCE:   31,525.38  DAYS IN PERIOD:                 30
   INTEREST PAID THIS PERIOD:        1.30  ANNUAL PERCENTAGE YIELD EARNED: .05%
   INTEREST PAID 2012:              16.38

        - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

   *******************************************************************
   *                         |      TOTAL FOR  |      TOTAL        *
   *                         |    THIS PERIOD  |   YEAR TO DATE    *
   *-----------------------------------------------------------------*
   * TOTAL OVERDRAFT FEES:    |       $.00      |      $.00         *
   *-----------------------------------------------------------------*
   * TOTAL RETURNED ITEM FEES:|       $.00      |      $.00         *
   *******************************************************************
```

```
                                        00000         PAGE:      1
                            ACCOUNT:        120061872  10/31/2012
                            DOCUMENTS:              1
```

```
        FIRST STAR ASSOCIATES INC                        30
        239 ESPARTO AVE                                   0
        PISMO BEACH CA  93449-1916                        1
```

==================================================================

BANK OF NEVADA

Effective 3/28/11, our funds availability policy has changed. Our policy
to make funds from deposits available to you generally on the first
business day after the date we receive your deposit has not changed.
However, if we must postpone availability of funds you deposit by check,
we have increased the amount that may be made available to you on the
first business day after your deposit date from $100 to $200.

==================================================================

BUSINESS MONEY MARKET ACCOUNT 120061872

==================================================================

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ........................... | | | 09/28/12 | 44,086.94 |
| TELEPHONE TRANSFER REQUEST C/S 4,000.00 | | | 10/09/12 | 40,086.94 |
| CHECK # 342 | 8,080.00 | | 10/24/12 | 32,006.94 |
| INTEREST | | 1.78 | 10/31/12 | 32,008.72 |
| BALANCE THIS STATEMENT ........................... | | | 10/31/12 | 32,008.72 |

| TOTAL CREDITS | (1) | 1.78 |
|---|---|---|
| TOTAL DEBITS | (2) | 12,080.00 |

==================================================================

YOUR CHECKS SEQUENCED

==================================================================

DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

10/24    342    8,080.00

- - - - - - - - - - - I N T E R E S T - - - - - - - - - -

| AVERAGE LEDGER BALANCE: | 39,340.27 | INTEREST EARNED: | 1.78 |
|---|---|---|---|
| AVERAGE AVAILABLE BALANCE: | 39,340.27 | DAYS IN PERIOD: | 33 |
| INTEREST PAID THIS PERIOD: | 1.78 | ANNUAL PERCENTAGE YIELD EARNED: | .05% |
| INTEREST PAID 2012: | 15.08 | | |

* * * C O N T I N U E D * * *

```
                                   000 0031            PAGE:      2
                          ACCOUNT:        120061872   10/31/2012
                          DOCUMENTS:              1


    FIRST STAR ASSOCIATES INC

==================================================================
          BUSINESS MONEY MARKET ACCOUNT 120061872
==================================================================

    - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

*******************************************************************
*                        |   TOTAL FOR    |      TOTAL          *
*                        |  THIS PERIOD   |   YEAR TO DATE      *
*------------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:   |     $.00       |      $.00           *
*------------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES: |   $.00       |      $.00           *
*******************************************************************
```

```
                                         PAGE:        1
                                000
                      ACCOUNT:        120061872  09/28/2012
                      DOCUMENTS:              1
```

```
    FIRST STAR ASSOCIATES INC                       30
    239 ESPARTO AVE                                  0
    PISMO BEACH CA  93449-1916                       1
```

```
==================================================================
                      BANK OF NEVADA
    Effective 3/28/11, our funds availability policy has changed. Our policy
    to make funds from deposits available to you generally on the first
    business day after the date we receive your deposit has not changed.
    However, if we must postpone availability of funds you deposit by check,
    we have increased the amount that may be made available to you on the
    first business day after your deposit date from $100 to $200.
==================================================================
             BUSINESS MONEY MARKET ACCOUNT 120061872
==================================================================
```

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................. | | | 08/31/12 | 45,075.21 |
| CHECK # 341 | 990.00 | | 09/27/12 | 44,085.21 |
| INTEREST | | 1.73 | 09/28/12 | 44,086.94 |
| BALANCE THIS STATEMENT ............................. | | | 09/28/12 | 44,086.94 |

```
    TOTAL CREDITS     (1)        1.73
    TOTAL DEBITS      (1)      990.00
```

```
==================================================================
                      YOUR CHECKS SEQUENCED
==================================================================
DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT DATE...CHECK #......AMOUNT

09/27    341      990.00

         - - - - - - - - - I N T E R E S T - - - - - - - - - -

AVERAGE LEDGER BALANCE:        45,004.49  INTEREST EARNED:                 1.73
AVERAGE AVAILABLE BALANCE:     45,004.49  DAYS IN PERIOD:                    28
INTEREST PAID THIS PERIOD:          1.73  ANNUAL PERCENTAGE YIELD EARNED:  .05%
INTEREST PAID 2012:                13.30
                  * * *  C O N T I N U E D  * * *
```

```
                                    PAGE:      2
                        ACCOUNT:   120061872   09/28/2012
                        DOCUMENTS:           1




      FIRST STAR ASSOCIATES INC

======================================================================
              BUSINESS MONEY MARKET ACCOUNT 120061872
======================================================================

        - - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

      *********************************************************************
      *                          |    TOTAL FOR    |     TOTAL      *
      *                          |  THIS PERIOD    |  YEAR TO DATE  *
      *--------------------------------------------------------------*
      * TOTAL OVERDRAFT FEES:     |      $.00       |      $.00      *
      *--------------------------------------------------------------*
      * TOTAL RETURNED ITEM FEES: |      $.00       |      $.00      *
      *********************************************************************
```

# Exhibit F

TAB 4                                    Page 131

Home  |  About Ross  |  Calendar  |  News  |  FAQ  |  Forms  |  Contact Us

Search…

| Home | Information Center | Election Center | Business Center | Licensing Center | Securities Center | Online Services |

My Data Reports   Commercial Recordings   Licensing

# FIRST STAR ASSOCIATES, INC.

| New Search | | Printer Friendly | | Calculate Reinstatement Fees |

**Business Entity Information**

| Status: | Revoked | File Date: | 3/10/1997 |
|---|---|---|---|
| Type: | Domestic Corporation | Entity Number: | C4844-1997 |
| Qualifying State: | NV | List of Officers Due: | 3/31/2010 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV19971121930 | Business License Exp: | |

**Registered Agent Information**

| Name: | LOREN MILLER | Address 1: | 11356 MERCADO PEAK DRIVE |
|---|---|---|---|
| Address 2: | | City: | LAS VEGAS |
| State: | NV | Zip Code: | 89135 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | |
| Mailing Zip Code: | | | |
| Agent Type: | Noncommercial Registered Agent | | |

View all business entities under this registered agent

**Financial Information**

| No Par Share Count: | 25,000.00 | Capital Amount: | $ 0 |
|---|---|---|---|
| No stock records found for this company | | | |

**Officers**                                          ☒ Include Inactive Officers

**President - LOREN C MILLER**

| Address 1: | 11356 MERADO PEAK DRIVE | Address 2: | |
|---|---|---|---|
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89135 | Country: | |
| Status: | Active | Email: | |

**Secretary - LOREN C MILLER**

| Address 1: | 11356 MERADO PEAK DRIVE | Address 2: | |
|---|---|---|---|
| City: | LAS VEGAS | State: | NV |
| Zip Code: | 89135 | Country: | |
| Status: | Active | Email: | |

Exhibit F                                         Page 51

TAB 4                                             Page 132

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **OPPOSITION OF JEREMY W. FAITH, CHAPTER 7 TRUSTEE, TO DEBTOR LOREN MILLER'S MOTION TO CONVERT CASE TO CHAPTER 11; REQUEST FOR HEARING; AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 10, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Howard Camhi    hcamhi@ecjlaw.com, kanthony@ecjlaw.com
Mark D Estle    mark.estle@buckleymadole.com
Jeremy W. Faith (TR)    jfaith@7trustee.net, C118@ecfcbis.com;Helen@MarguliesFaithLaw;leedowding@gmail.com
Robert E Hurlbett    bob@hurlbettlaw.com, reed@hurlbettlaw.com
Craig G Margulies    craig@marguliesfaithlaw.com,
staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
Faye C Rasch    frasch@ecjlaw.com, kanthony@ecjlaw.com
Vaughn C Taus    tauslawyer@gmail.com
Meghann A Triplett    Meghann@MarguliesFaithlaw.com,
Helen@MarguliesFaithlaw.com;MF_ecf@ecf.inforuptcy.com;Marta@MarguliesFaithLaw.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On December 10, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Robin L. Riblet, U.S. Bankruptcy Judge, 1415 State Street, Santa Barbara, CA 93101
Debtor: Loren Miller and Sarah Miller, 702 Whitecap Drive, Seabrook, TX 77586
Debtor: Loren Miller 600 E. Medical Center Blvd. #1509, Webster, TX
☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 10, 2013 | Helen Cardoza | /s/ Helen Cardoza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

TAB 5

1   Howard I. Camhi (SBN 149194)
    **ERVIN, COHEN & JESSUP LLP**
2   9401 Wilshire Boulevard, Ninth Floor
    Beverly Hills, California 90212-2974
3   Telephone  (310) 273-6333
    Facsimile  (310) 859-2325
4   hcamhi@ecjlaw.com

5   Attorneys for Andrew D. Geller and
    Andrew D. Geller and Eileen B. Geller,
6   Trustees of the Geller Trust dated September 2, 1987

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                          **NORTHERN DIVISION**

11  In re                          ) Case No. 9:13-bk-10313-RR
                                    )
12  LOREN MILLER AND SARAH MILLER,  ) Chapter 7
                                    )
13            Debtors.              ) **PRELIMINARY OPPOSITION TO**
                                    ) **DEBTOR'S MOTION TO CONVERT CASE**
14                                  )
                                    ) **HEARING REQUESTED PURSUANT TO**
15                                  ) **LOCAL BANKRUPTCY RULE 9013-1(o)**
                                    )
16                                  ) Date:
                                    ) Time:
17                                  ) Place:  Courtroom 201
                                    )         1415 State Street
18  _____)         Santa Barbara, California

19       **TO THE HONORABLE ROBIN RIBLET, UNITED STATES BANKRUPTCY**

20  **JUDGE; DEBTORS LOREN AND SARAH MILLER AND ALL OTHER PARTIES IN**

21  **INTEREST:**

22

23       Creditors Andrew D. Geller and Andrew D. Geller and Eileen B. Geller, Trustees of the

24  Geller Trust dated September 2, 1987 (collectively referred to herein as "the Gellers") hereby file

25  their Preliminary Opposition to the Debtor's Motion to Convert Case (hereinafter, the "Motion")

26  and request a hearing on the Motion pursuant to Local Bankruptcy Rule 9013-1(o).  In support of

27  this Preliminary Opposition, the Gellers respectfully submit as follows:

28

Ervin, Cohen
& Jessup LLP   13954.10:1924867.1

                    OPPOSITION TO MOTION TO CONVERT CASE

TAB 5                                Page 134

1   As a preliminary matter, it is unclear as to which of the joint Debtors in this case are

2   seeking conversion to Chapter 11. Notably, both Debtors' names are in the caption of the Motion,

3   but the Motion does not appear to be signed by Debtor Sarah Miller. Debtor Loren Miller is not

4   an attorney and thus cannot represent Sarah Miller. Notwithstanding, the Gellers oppose the

5   Motion as to both of the Debtors. In addition, the Motion fails to support the Debtors' conversion

6
7   request with any facts or law indicating how they will fund and ultimately confirm a Chapter 11

8   plan. The Motion is nothing more than a "check the box" attempt to convert which provides no

9   legal or factual basis that supports conversion.

10   The Gellers are aware of the general policy of allowing honest Chapter 7 debtors to

11   convert to Chapter 11 in a good faith effort to repay debts. Here, however, as the record in the

12   main case and the two pending adversaries[1] demonstrate, these are not honest debtors. These

13
14   Debtors are not acting in good faith. For example, these Debtors were ordered by this Court to

15   appear at their 341(a) meeting (which they did after numerous non-appearances) and to turn over

16   to the Trustee $182,000.00 scheduled as property of the estate. See Docket #54 The Debtors have

17   failed to do so. The debtors have testified under oath at their 341(a) meeting that they did not, and

18   cannot, comply with this Court's Order because they used much of that estate money for their own

19   post-petition personal purposes, such as moving to Texas.

20
21   In addition, the Debtors have filed documents in this Court indicating they are in dire

22   financial straits and even a single appearance at their 341(a) meeting caused a great financial

23   hardship on them. Based on their admitted financial situation, it appears that the Debtors will

24   never be able to fund a Chapter 11 case and cannot confirm any plan of reorganization.

25   \ \ \

26

27   _____
[1] The Trustee has sued the Debtors objecting to their discharge and the Gellers have filed an
28           adversary proceeding pursuant to 11 U.S.C. 523 and 727.

Ervin, Cohen
& Jessup LLP

13954.10:1924867.1                                      2
                           OPPOSITION TO MOTION TO CONVERT CASE

TAB 5                                Page 135

**A.     This Court Has The Power To Deny The Motion**

Section 706 authorizes a Chapter 7 debtor to convert a case to another chapter so long as he is eligible for relief and the case has not previously been converted. Courts have held that Section 706 does not confer upon the debtor an absolute right to convert if those two conditions are met. Bankruptcy Courts are permitted to deny a debtor's motion to convert where the Court determines the debtor engaged in bad faith conduct. See, i.e., *In re: Marrama*, 430 F.3d 474 (1st Cir. 2005), *aff'd*, 549 U.S. 365, 127 S.Ct. 1105. In addition, a Bankruptcy Court does not abuse its discretion in denying a debtor's motion to convert their case to Chapter 11 where the record shows that the Debtor did not tell the truth and signed things under oath and penalty of perjury that were not true. *In re Levesque*, 2012 WL 2400886 (9th Cir. B.A.P. 2012).

Based on the foregoing authorities, it is clear this Court has the power to deny the Motion. Based on the Debtors' bad faith conduct including their failure to comply with direct Orders of this Court, coupled with the clear intent of the Debtors to attempt to convert in an effort to avoid the adversary proceedings against them, the Court should exercise its discretion to deny the Motion.

Alternatively, if this Court is not inclined to deny the Motion without a hearing, the Gellers respectfully request this Court set a hearing on the Motion along with a briefing schedule to enable the Gellers to more fully apprise the Court of the facts and circumstances that militate against conversion of this case to Chapter 11.

DATED: December 9, 2013          ERVIN COHEN & JESSUP LLP

By: _____
    Howard I. Camhi
    Attorneys for Andrew D. Geller and
    Andrew D. Geller and Eileen B. Geller,
    Trustees of the Geller Trust dated September 2,
    1987

Ervin, Cohen
& Jessup LLP

13954.10:1924867.1

3

OPPOSITION TO MOTION TO CONVERT CASE

TAB 5                              Page 136

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

9401 Wilshire Blvd., 9th Floor, Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*):

PRELIMINARY OPPOSITION TO DEBTOR'S MOTION TO CONVERT CASE

HEARING REQUESTED PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(o)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 9, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On December 9, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 9, 2013 | KIMBERLY ANTHONY | /s/Kimberly Anthony |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

13954.10:1781102.1 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

TAB 5                                    Page 137

# SERVICE LIST

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Mark D Estle    mark.estle@buckleymadole.com
- Jeremy W. Faith (TR)    jfaith@7trustee.net,
  C118@ecfcbis.com;Helen@MarguliesFaithLaw.com;leedowding@gmail.com
- Robert E Hurlbett    bob@hurlbettlaw.com, reed@hurlbettlaw.com
- Craig G Margulies    craig@marguliesfaithlaw.com,
  staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
- Craig G Margulies    craig@marguliesfaithlaw.com,
  staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
- Vaughn C Taus    tauslawyer@gmail.com
- Meghann A Triplett    Meghann@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;MF_ecf@ecf.inforuptcy.com;Marta@MarguliesFaithLaw.com
- Meghann A Triplett    Meghann@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;MF_ecf@ecf.inforuptcy.com;Marta@MarguliesFaithLaw.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**:

Hon. Robin L. Riblet
U.S. Bankruptcy Court
1415 State St., 2$^{nd}$ Floor
Santa Barbara, CA 93101

Debtors

Sarah Miller
702 Whitecap Dr.
Seabrook, TX 77586

Loren Miller
600 E. Medical Center Blvd. #1509
Webster, TX 77598

Attorneys for Sarah Miller
Robert E. Hurlbett
Reed H. Olmstead
Hurlbett & Olmstead
3324 State St. Ste. O
Santa Barbara, CA 93105

13954.10:1781102.1 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

TAB 5                                    Page 138

TAB 6

1   Howard I. Camhi (SBN 149194)
    **ERVIN, COHEN & JESSUP LLP**
2   9401 Wilshire Boulevard, Ninth Floor
    Beverly Hills, California 90212-2974
3   Telephone  (310) 273-6333
    Facsimile  (310) 859-2325
4   hcamhi@ecjlaw.com

5   Attorneys for Andrew D. Geller and
    Andrew D. Geller and Eileen B. Geller,
6   Trustees of the Geller Trust dated September 2, 1987

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                         **NORTHERN DIVISION**

11  In re                          ) Case No. 9:13-bk-10313-RR
                                    )
12  LOREN MILLER AND SARAH MILLER,  ) Chapter 7
                                    )
13           Debtors.              ) **PRELIMINARY OPPOSITION TO**
                                    ) **DEBTOR'S MOTION TO TRANSFER**
14                                  ) **VENUE**
                                    )
15                                  ) **HEARING REQUESTED PURSUANT TO**
                                    ) **LOCAL BANKRUPTCY RULE 9013-1(o)**
16                                  )
                                    ) **Date:**
17                                  ) **Time:**
                                    ) **Place:**  Courtroom 201
18  _____ )            1415 State Street
                                                 Santa Barbara, California
19

20       **TO THE HONORABLE ROBIN RIBLET, UNITED STATES BANKRUPTCY**

21  **JUDGE; DEBTORS LOREN AND SARAH MILLER AND ALL OTHER PARTIES IN**

22  **INTEREST:**

23          Creditors Andrew D. Geller and Andrew D. Geller and Eileen B. Geller, Trustees of the

24  Geller Trust dated September 2, 1987 (collectively referred to herein as "the Gellers"), the largest

25  creditors of this estate, hereby file their Preliminary Opposition to the Debtor's Motion to Transfer

26  Venue (hereinafter, the "Motion") and request a hearing on the Motion pursuant to Local

27  Bankruptcy Rule 9013-1(o).  In support of this Preliminary Opposition, the Gellers respectfully

28

Ervin, Cohen
& Jessup LLP

13954.10:1924983.1

OPPOSITION TO MOTION TO TRANSFER VENUE

TAB 6                                    Page 139

submit as follows:

    As a preliminary matter, it is unclear as to which of the joint Debtors in this case are seeking conversion to Chapter 11. Notably, both Debtors' names are in the caption of the Motion, but the Motion does not appear to be signed by Debtor Sarah Miller. Debtor Loren Miller is not an attorney and thus cannot represent Sarah Miller. Notwithstanding, the Gellers oppose the Motion as to both of the Debtors.

    It is apparent that the Debtors are trying to leave this Court and avoid their Chapter 7 Trustee and the Gellers, who are their largest creditors, because both the Trustee and the Gellers have objected to the Debtors receiving a discharge and both are currently litigating these issues before this Court. Moreover, this Court has previously ordered turnover of approximately $180,000.00 and the Debtors have testified they have not done so and, having spent much of that money for post-petition personal needs, cannot comply with this Court's orders.

    In addition, the Gellers have objected to the dischargeability of their debt in a separate but currently pending adversary proceeding. The Debtors have also failed to produce all of the documents requested by the Trustee. Accordingly, and although the Motion is couched as being in the interests of justice and for the convenience of the parties, the only parties that would benefit from a transfer would be the Debtors.

    Moreover, the Motion misstates facts in attempt to convince this Court to transfer the case to Texas, where apparently the Debtors now reside. For example, the Motion argues that the Debtors are "unaware of any other party in interest with either domicile or principal place of business within this court's district." Motion at page 2, ¶ 4. This is simply false and the Debtors know it. They have scheduled the Gellers' claim at their residence which is within this judicial district. The Trustee and his counsel also are located in Los Angeles. Moreover, the Motion represents that the Debtors have terminated the services of their bankruptcy attorney, Mr. Taus, a

1  few weeks ago. The Motion, however, fails to remind this Court that a local attorney, Robert

2  Hurlbett, has substituted into the adversary proceedings in this case on behalf of at least one of the

3  Debtors.

4      Aside from the Debtors' misrepresentations, it is clear that the interests of justice require

5  denial of the Motion. While the case has been pending before this Court, the Trustee and the

6  Gellers (the largest creditors of this estate) have employed counsel who have familiarized

7  themselves with the Debtors' misconduct. Counsel for the Gellers is also uniquely qualified to

8

9  represent the Gellers in this matter due to their longstanding representation of the Gellers against

10  the Millers. Accordingly, the interests of justice would be served by denial of the Motion.

11      A.      **Debtors Fail To Present Any Evidence In Support Of Their Motion**

12      The Motion, which seeks to transfer venue of this case and presumably the two pending

13  adversary proceedings[1], presents no evidence, admissible or otherwise, to this Court in support of

14  the Debtors' request to move this case to Texas. Pursuant to 28 U.S.C. § 1412, the analysis of the

15  combination of the interests of justice and convenience of the parties is inherently factual and

16

17  entails the exercise of discretion. See, *In re: Donald*, 328 B.R. 192, 204 (9th Cir. BAP 2005).

18      The Debtors' Motion fails to present to this Court any evidence that would tend to support

19  transfer of these cases. In fact, the Debtors fail to present any evidence at all. The Motion appears

20  to be nothing more that ramblings from the Debtors attempting to pay lip service to the issue of

21  whether to transfer this case. The Motion should be denied on this basis alone.

22

23  \ \ \

24  \ \ \

25

26  [1] The Motion is unclear as to the requested relief because the Motion deals only with "the [main]
   case" whereas footnote 2 indicates that a Court can transfer an action related to a
27  bankruptcy proceeding. Either way, the Gellers oppose transfer of the main case or the
   two adversary proceedings.
28

Ervin, Cohen
& Jessup LLP

13954.10:1924983.1

3

OPPOSITION TO MOTION TO TRANSFER VENUE

TAB 6                                    Page 141

B.      **Courts Consider Interests of Justice and Convenience of the Parties In
Determining Whether to Transfer Venue**

Even if this Court were to accept as true that the Debtors have moved to Texas, such fact

alone does not require transfer of these cases.  Court look to "Interests of Justice" and

"Convenience of the Parties" in order to make a determination whether cases should be

transferred.  See, i.e., *In re Cytodyne of New Mexico, Inc.*, 374 B.R. 733 (Bankr. C.D. Cal. 2007).

1.      **Convenience Of The Parties Dictates That These Cases Should Remain
Before This Court.**

In the instant case, the Debtors elected to file their case in Santa Barbara.  They have

moved to Texas and their post-petition move is the <u>only</u> connection these cases have to Texas.  No

witnesses live there aside from the Debtors and no counsel involved in this case are from Texas.

On the other hand, the Gellers are the largest creditors of this case and live in Los Angeles.  The

Trustee, Jeremy Faith, and his counsel have invested time and effort into investigating the assets

of this estate.  Such investigation includes, but is not limited to, obtaining Orders to compel

attendance at the Debtors' 341(a) meeting; for turnover of approximately $180,000.00 and,

further, filing an adversary proceeding against the Debtors objecting to their discharge.

The Trustee and his counsel are in Los Angeles and, along with the Gellers, would be

severely prejudiced if all matters were transferred to Texas.  In addition, one of the Debtor-

defendants, Sarah Geller, has obtained local counsel (Robert Hurlbett) to defend her in these

matters and counsel has offices located in Santa Barbara.  Accordingly, the "convenience of the

parties" supports denial of the Motion because only Loren Miller would benefit from a transfer

and, conversely, transfer would severely prejudice the Trustee and largest creditors of this estate.

\ \ \

\ \ \

Ervin, Cohen
& Jessup LLP

13954.10:1924983.1

4

OPPOSITION TO MOTION TO TRANSFER VENUE

TAB 6                                    Page 142

2.    **Interests of Justice Dictates That These Cases Should Remain Before**

**This Court.**

Courts have established certain factors to be considered in a Court's determination of

whether the "interests of justice" favor transfer of a case.  These factors include the location of the

pending bankruptcy; whether transfer promotes economic and efficient administration of the

estate; judicial economy; and, whether a plaintiff's original choice of forum should be disturbed.

In these cases, the interests of justice require denial of the Motion.

These cases have been pending before this Court and have been administered by the

Trustee for nearly a year.  Accordingly, the first factor favors denial of the Motion.  Moreover, the

Trustee and his counsel have expended time and resources in attempting to compel the Debtors to

comply with their responsibilities as Debtors in these cases.  To this end, the Trustee has filed an

adversary proceeding objecting to the Debtors' discharge.  In the event these cases were

transferred, a new Trustee would have to theoretically employ new counsel and bring them up to

speed thus creating double administrative expenses which would otherwise be avoided.  In

addition, transfer of the cases and new Trustee/counsel would certainly delay the administration of

these cases to the detriment of the creditors of this estate (the largest of which are the Gellers).  In

addition, the parties would have to hire new and/or additional counsel which would increase the

cost of pursuing the Debtors for their fraudulent conduct.

In addition, this Court has previously entered Orders compelling turnover of $180,000 and

the Debtors have failed to comply.  One can presume this Court has an interest in maintaining this

case to enforce its Order and thus the Motion should be denied.

C.    **Conclusion**

The foregoing is the Gellers' preliminary opposition to the Motion.  The Gellers submit

that this Court has sufficient information to deny the Motion at this juncture.  Alternatively, if this

1    Court is not inclined to deny the Motion, then the Gellers respectfully request this Court set a

2    hearing on the Motion along with a briefing schedule so they can more fully advise the Court of

3    the bases upon which transfer of these cases should be denied.

4

5

6    DATED:  December 9, 2013              ERVIN COHEN & JESSUP LLP

7

8                                         By: /s/Howard I. Camhi
9                                             Howard I. Camhi
                                              Attorneys for Andrew D. Geller and
10                                            Andrew D. Geller and Eileen B. Geller,
                                              Trustees of the Geller Trust dated September 2,
11                                            1987

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13954.10:1924983.1

6

OPPOSITION TO MOTION TO TRANSFER VENUE

TAB 6                                    Page 144

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

9401 Wilshire Blvd., 9th Floor, Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (specify):

PRELIMINARY OPPOSITION TO DEBTOR'S MOTION TO TRANSFER VENUE

HEARING REQUESTED PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(o)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 9, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On December 9, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 9, 2013 | KIMBERLY ANTHONY | /s/Kimberly Anthony |
|---|---|---|
| Date | Printed Name | Signature |

13954.10:1781102.1 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

TAB 6                                                                Page 145

# SERVICE LIST

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Mark D Estle    mark.estle@buckleymadole.com
- Jeremy W. Faith (TR)    jfaith@7trustee.net,
  C118@ecfcbis.com;Helen@MarguliesFaithLaw.com;leedowding@gmail.com
- Robert E Hurlbett    bob@hurlbettlaw.com, reed@hurlbettlaw.com
- Craig G Margulies    craig@marguliesfaithlaw.com,
  staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
- Craig G Margulies    craig@marguliesfaithlaw.com,
  staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
- Vaughn C Taus    tauslawyer@gmail.com
- Meghann A Triplett    Meghann@MarguliesFaithlaw.com,
  Helen@MarguliesFaithLaw.com;MF_ecf@ecf.inforuptcy.com;Marta@MarguliesFaithLaw.com
- Meghann A Triplett    Meghann@MarguliesFaithlaw.com,
  Helen@MarguliesFaithLaw.com;MF_ecf@ecf.inforuptcy.com;Marta@MarguliesFaithLaw.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**:

Hon. Robin L. Riblet
U.S. Bankruptcy Court
1415 State St., 2nd Floor
Santa Barbara, CA 93101

Debtors

Sarah Miller
702 Whitecap Dr.
Seabrook, TX 77586

Loren Miller
600 E. Medical Center Blvd. #1509
Webster, TX 77598

Attorneys for Sarah Miller
Robert E. Hurlbett
Reed H. Olmstead
Hurlbett & Olmstead
3324 State St. Ste. O
Santa Barbara, CA 93105

13954.10:1781102.1 This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

June 2012

TAB 6                                              Page 146

# TAB 7

(o)   **Motions and Matters Determined After Notice of Opportunity to Request Hearing.**

    (1)   <u>Matters That May Be Determined Upon Notice of Opportunity to Request Hearing</u>. Except as to matters specifically noted in subsection (o)(2) below, and as otherwise ordered by the court, any matter that may be set for hearing in accordance with LBR 9013-1(d) may be determined upon notice of opportunity to request a hearing.

        (A)   <u>Notice</u>.  When the notice of opportunity for hearing procedure is used, the notice must:

            (i)   Succinctly and sufficiently describe the nature of the relief sought and set forth the essential facts necessary for a party in interest to determine whether to file a response and request a hearing;

            (ii)   State that LBR 9013-1(o)(1) requires that any response and request for hearing must be filed with the court and served on the movant and the United States trustee within 14 days after the date of service of the notice; and

            (iii)   Be filed with the court and served by the moving party on all creditors and other parties in interest who are entitled to notice of the particular matter.

        (B)   <u>Motion</u>.  The motion and supporting documents must be filed with the notice, but must be served only on the United States trustee and those parties who are directly affected by the requested relief.

    (2)   <u>Matters that May Not be Determined Upon Notice of Opportunity to Request Hearing</u>.  Unless otherwise ordered by the court, the following matters may <u>not</u> be determined by the procedure set forth in subsection (o)(1) above:

        (A)   Objections to claims;

        (B)   Motions regarding the stay of 11 U.S.C. § 362;

        (C)   Motions for summary judgment and partial summary adjudication;

        (D)   Motions for approval of cash collateral stipulations;

        (E)   Motions for approval of postpetition financing;

        (F)   Motions for continuance;

        (G)   Adequacy of chapter 11 disclosure statements;

LBR 9013-1

(H) Confirmation of plans in chapter 9, chapter 11, chapter 12, and chapter 13 cases;

(I) Motions for orders establishing procedures for the sale of the estate's assets under LBR 6004-1(b);

(J) Motions for recognition of a foreign proceeding as either a main or a nonmain proceeding;

(K) Motions for the adoption of a chapter 15 administrative order;

(L) Motions for the adoption of a cross-border protocol;

(M) Motions to value collateral and avoid liens under 11 U.S.C. § 506 in chapter 11, 12, and 13 cases; and

(N) Motions for issuance of a TRO or preliminary injunction.

(3) <u>No Response and Request for Hearing</u>. If the response period expires without the filing and service of any response and request for hearing, the moving party must do all of the following:

(A) <u>File Declaration of Service and Non-response</u>. Promptly file a declaration attesting that no timely response and request for hearing was served upon the moving party. A copy of the motion, notice, and proof of service of the notice and motion must be attached as exhibits to the declaration. No service is required prior to filing the declaration.

(B) <u>Lodge Proposed Order</u>. Lodge a proposed order in accordance with LBR 9021-1 and the <u>Court Manual</u>, except that the proposed order need not be served prior to lodging, except as otherwise required in these rules.

(C) <u>Deliver Copies to Court</u>. Promptly deliver a judge's copy of the declaration as required by LBR 5005-2(d).

(4) <u>Response and Request for Hearing Filed</u>. If a timely response and request for hearing is filed and served, within 14 days from the date of service of the response and request for hearing the moving party must schedule and give not less than 14 days notice of a hearing to those responding and to the United States trustee. If movant fails to obtain a hearing date, the court may deny the motion without prejudice, without further notice or hearing.

# TAB 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED & ENTERED

DEC 12 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY zick        DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

In re:                          ) Case No.: 9:13-10313
                                )
Loren Miller and Sarah Miller,  ) Chapter 7
                                )
            Debtors.            ) ORDER DENYING MOTION
                                ) TO TRANSFER VENUE
                                )
                                )
                                )
                                )
                                )
                                )
                                )
                                )

    The voluntary Chapter 7 petition in this case was filed on

February 7, 2013.  The debtors listed their address as 239

Esparto Avenue, Pismo Beach, CA 93449.

    On June 4, 2013, the debtors filed a Notice of Change of

Address, listing a new address of 702 Whitecap Drive, Seabrook,

TX 77586.

    Pursuant to 28 U.S.C. § 1408(1), venue of a bankruptcy case

is appropriate where "the domicile, residence, principal place

TAB 8                                    Page 149

of business in the United States, or principal assets in the

United States, of the person or entity that is the subject of

the case have been located for the one hundred and eighty days

immediately preceding [case] commencement . . . ."  Further,

Local Bankruptcy Rule 1071-1(a)(1) provides that the applicable

division for filing a bankruptcy case is determined by "the

location of the debtor's residence" at the time the petition was

filed.  Accordingly, venue of this bankruptcy case is

appropriate in the Northern Division of the U.S. Bankruptcy

Court for the Central District of California.

   **IT IS HEREBY ORDERED** that debtors' motion to transfer venue

of this case to the United States Bankruptcy Court for the

Southern District of Texas, Houston Division, is DENIED.

###

###

###

###

Date: December 12, 2013

*Robin Riblet*

Robin L. Riblet
United States Bankruptcy Judge

TAB 8                                    Page 150

**NOTE TO USERS OF THIS FORM:**
**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)** Category I. below: The United States trustee and case trustee (if any) will always be in this category.
**4)** Category II. below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)  ___*ORDER  DENYING DEBTORS'*
*MOTION TO TRANSFER VENUE* __ was entered on the date indicated as  "Entered" on the first page
of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** ʙ Pursuant to controlling
General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following
person(s) by the court via NEF and hyperlink to the judgment or order. As of ____12/12/13____
, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or
adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Howard Camhi    hcamhi@ecjlaw.com, kanthony@ecjlaw.com
- Howard Camhi    hcamhi@ecjlaw.com, kanthony@ecjlaw.com
- Mark D Estle    mark.estle@buckleymadole.com
- Jeremy W. Faith (TR)    jfaith@7trustee.net,
  C118@ecfcbis.com;Helen@MarguliesFaithLaw.com;leedowding@gmail.com
- Robert E Hurlbett    bob@hurlbettlaw.com, reed@hurlbettlaw.com
- Craig G Margulies    craig@marguliesfaithlaw.com,
  staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithla
  w.com
- Craig G Margulies    craig@marguliesfaithlaw.com,
  staci@marguliesfaithlaw.com;denisse@marguliesfaithlaw.com;fahim@marguliesfaithla
  w.com
- Faye C Rasch    frasch@ecjlaw.com, kanthony@ecjlaw.com
- Vaughn C Taus    tauslawyer@gmail.com
- Meghann A Triplett    Meghann@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;MF_ecf@ecf.inforuptcy.com;Marta@MarguliesFaithLa
  w.com
- Meghann A Triplett    Meghann@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;MF_ecf@ecf.inforuptcy.com;Marta@MarguliesFaithLa
  w.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

TAB 8                                                      Page 151

II. **SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Loren Miller**
Sarah Miller
702 Whitecap Dr
Seabrook, TX 77586

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                      **F 9021-1.1.NOTICE.ENTERED.ORDER**

TAB 8                                                      Page 152